**Keith S. Dubanevich**, OSB No. 975200
Email: kdubanevich@stollberne.com
**Joshua L. Ross,** OSB No. 034387
Email:  jross@stollberne.com
**Nadine A. Gartner**, OSB No. 103864
Email:  ngartner@stollberne.com
STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.
209 SW Oak Street, 5th Floor
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:  (503) 227-6840

**Megan E. Glor**, OSB No. 930178
Email: megan@meganglor.com
MEGAN E. GLOR ATTORNEYS AT LAW
621 SW Morrison Street, Suite 900
Portland, OR 97205
Telephone:     (503) 223-7400
Facsimile:     (503) 227-2530

**Attorneys for Plaintiffs**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIVISION OF PORTLAND

| | |
|---|---|
| A.F., by and through his parents and guardians, Brenna Legaard and Scott Fournier; and A.P.,by and through his parents and guardians, Lucia Alonso and Luis Partida, and on behalf of similarly situated individuals,<br><br>       Plaintiffs,<br><br>   v.<br><br>Providence Health Plan,<br><br>       Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(Violation of Employee Retirement Income Security Act 29 USC §1001 et seq.) |

Plaintiffs, A.F., by and through his parents and guardians, Brenna Legaard and Scott

Fournier; and A.P., by and through his parents and guardians, Lucia Alonso and Luis Partida

{SSBLS Main Documents\8381\001\00384018-5 }

Page 1 -   CLASS ACTION COMPLAINT

(hereinafter, together, referred to as "Plaintiffs") bring this class action complaint against Providence Health Plan (hereinafter referred to as "Defendant" or "Providence") on behalf of themselves and all other similarly situated individuals in Oregon who now subscribe, have subscribed or will subscribe to a health insurance plan issued in Oregon by Providence that contains an exclusion which as applied denies coverage for Applied Behavior Analysis ("ABA") therapy for treatment of autism-related spectrum disorder ("autism").

This civil action is brought under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 USC §1001 et seq. for the purpose of compelling Defendant to provide certain healthcare benefits to autistic children required by law, for injunctive relief, and recovery of damages, costs, and attorney fees incurred as a consequence of Defendant's violations of U.S. and Oregon law.

Upon information and belief, as well as the investigation of counsel, Plaintiffs allege that at all times material:

## <u>INTRODUCTION, PARTIES AND JURISDICTION</u>

### 1.

Plaintiffs are natural persons residing in Multnomah County, Oregon.   Plaintiffs are and were, at all relevant times, "participants," and their minor children are and were, at all relevant times, "beneficiaries," within the meaning of ERISA.

### 2.

A.F. is insured as a dependant-beneficiary under a group health insurance plan issued in Oregon by Defendant to A.F.'s parent's employer.  A.P. is insured as a dependant-beneficiary under a group health insurance plan issued in Oregon by Defendant to A.P.'s grandparent's employer.  The policies issued by Defendant are employee benefit plans subject to ERISA ("the Plans").

{SSBLS Main Documents\8381\001\00384018-5 }

Page 2 -   CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

3.

ERISA requires Providence to process claims and administer the Plans it insures in a manner that includes the requirements of non-preempted state insurance mandates, such as ORS 743A.168 and 743A.190.

4.

Defendant is an Oregon nonprofit corporation and authorized health insurance carrier engaged in the business of insurance in Oregon.  Additionally, Defendant acts as an insurer and/or third-party claims administrator that determined the eligibility of Plaintiffs' claims and those similarly situated to them for certain health insurance benefits during the periods for which these claims for benefits accrued.  At all relevant times Defendant has acted as a "fiduciary" as defined by ERISA, as it was responsible for determining eligibility of participants for benefits under the Plans under 29 USC § 1002(21)(A).

5.

This Court has original jurisdiction over the subject matter of this action pursuant to 28 USC §1331 and §§1711-1715, and 29 USC § 1132(e)(1) and (f).

6.

Venue is proper in this District pursuant to 28 USC §1391 and 29 USC § 1132(e)(2) because Defendant resides in or may be found in this District.

7.

In a manner common to all class members, Defendant has wrongfully refused to provide coverage under the Plans for a treatment known as ABA, which provides significant benefits to children and families suffering from autism.  By failing to do so, Providence systemically and uniformly fails to properly process claims and administer the Plans it insures.  The Plans fail to receive all of the benefits of the insurance coverage which have been purchased from Providence for the purpose of providing benefits to the beneficiaries, and the beneficiaries do not receive the benefits they are entitled to under the Plans.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

8.

Defendant has established and carried out a deliberate company-wide policy to deny all claims for ABA treatment in violation of U.S. and Oregon law.

9.

Defendant's refusal to provide coverage for ABA under the Plans is in violation of the Plans and constitutes a violation of its fiduciary duties to Plaintiffs and a class of persons similarly situated to fairly and properly construe and interpret the Plans' language for the "exclusive purpose of providing benefits to participants and beneficiaries" as is required of claims administrators, insurers, and fiduciaries under ERISA, 29 USC §1104(A).

10.

By applying illegal plan exclusions to the claims of Plaintiffs and members of the class, Providence is wrongfully denying health care claims totaling many thousands if not millions of dollars as well as dissuading parents from seeking treatment for their children.

11.

Defendant's refusal to provide certain healthcare benefits to a child who suffers from autism affects the entire family who must bear the emotional and mental strain of caring for an autistic child without the valuable benefit of ABA therapy, and many of these families also bear the financial strain of paying for the essential and important therapy which can cost tens of thousands of dollars per year.

12.

Defendant's actions have also led to an identifiable disparity of care.  For example, Providence Group Health Plan members who have the means or ability to pay for ABA therapy receive treatment by paying for the services out of their own pockets whereas those Providence Group Health Plan members who cannot afford ABA therapy go without care.  This means that ABA treatment is being denied to certain autistic children along socioeconomic lines, despite the

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

fact that all of the affected children have Providence Group Health Plan coverage and/or are participants or beneficiaries in Providence administered Plans.

## OVERVIEW OF AUTISM AND APPLIED BEHAVIOR ANALYSIS

### A.    Characteristics And Symptoms Of Autism

13.

Autism Spectrum Disorder is a complex developmental disability, which adversely affects, *inter alia*, verbal and nonverbal communication and social interactions, a child's educational performance, and the overall ability of a person who suffers from the condition to function in society. (Department of Defense, Report and Plan on Services to Military Dependent Children with Autism at 5-6 (July 2007))

14.

Without proper care, treatment, and therapy, autism can be a debilitating and entirely disabling condition, leading people to grow into adulthood without the ability to perform the most basic of human functions and activities of daily living.

15.

The medical community has recognized that autism is one of five pervasive developmental disorders.

16.

The *Diagnostic and Statistical Manual of Mental Disorders* (DSM) published by the American Psychiatric Association provides a common language and standard criteria for the classification of mental disorders.  The DSM is used in the United States and to various degrees around the world.  It is used or relied upon by clinicians, researchers, psychiatric drug regulation agencies, health insurance companies, pharmaceutical companies, and policy makers.  The current version is the DSM-IV-TR (fourth edition, text revision).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

17.

The DSM-IV-TR contains a section on Pervasive Developmental Disorders.  Specifically, code 299.00 describes the diagnostic criteria for autism. (Exhibit "A")

18.

Pervasive developmental disorders are a category of neurological disorders characterized by severe impairment in several areas of development, which generally result in abnormal social interaction and communication, severely restricted interests, and highly repetitive behavior. Autism is the most common of the pervasive developmental disorders.

19.

Autism begins manifesting itself during infancy or early childhood, and can manifest itself in a variety of ways.  The social impairments of autism usually become apparent in early childhood and continue through adulthood.

20.

The characteristic behavior of autistic individuals includes, *inter alia*, impaired social interaction, impaired communication abilities, restricted interests, repetitive behavior, stereotyped movements, resistance to environmental change or change in daily routines, obsessive attachment to objects, decreased motor skills, tantrums, apparent oversensitivity or under-sensitivity to pain, fearlessness, aloofness, and unusual responses to sensory experiences.

21.

Autistic individuals may display a number of forms of repetitive or restricted behavior. These behaviors may include, *inter alia*, the following:

    a.    Stereotyping: Apparently purposeless movement;
    b.    Compulsive behavior: Intentional, rule oriented behavior;
    c.    Sameness: Resisting change;
    d.    Ritualistic behavior: Performing daily activities the same way every time;
    e.    Restricted behavior: A limitation in focus or interests; and/or
    f.    Self-injury: Behavior that can injure the individual, such as biting.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

22.

Autistic individuals may exhibit the characteristic traits of autism in any combination, and in different degrees of severity.

23.

Socially abnormal behavior becomes more pronounced as autistic children become toddlers.  Young autistic children are less likely than non-autistic children to make eye contact, to have social understanding, communicate with others, or respond to emotions.

24.

Intellectual disabilities are much more prevalent among autistic individuals than neurotypical individuals.

25.

Plaintiffs and all members of the class herein defined either have been diagnosed as having autism, or have or may have dependents who have been diagnosed as having autism.

B.      **Overview Of Applied Behavior Analysis ("ABA")**

26.

ABA is a scientifically valid, medically accepted, and mainstream treatment for Autism Spectrum Disorder.

27.

ABA helps autistic people to perform functions that they would not otherwise be able to accomplish and trains people with autism in social, motor, and verbal behaviors, as well as reasoning skills.

28.

ABA treatment uses, among other things, intensive behavior therapy.

29.

ABA is an objective discipline, focusing on the reliable measurement and evaluation of observable behavior.

{SSBLS Main Documents\8381\001\00384018-5 }

Page 7 -   CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

30.

ABA uses methods that yield convincing, reproducible, and conceptually sensible demonstrations of how to achieve specific behavior changes.

31.

ABA aids autistic children in leading more independent and active lives. This is especially true for children who receive early intervention, which, with respect to the class of persons represented in this suit, is impeded by Providence's application of an invalid contract exclusion.

32.

The positive benefits of ABA are less likely if the child does not receive early intervention.

33.

Studies show that ABA treatment is the most effective approach for treating children with autism. For example, the United States Surgeon General has said that 30 years of research has "demonstrated the efficacy of applied behavioral methods in reducing inappropriate behavior and in increasing communication, learning and appropriate social behavior."

34.

The New York State Department of Health Early Intervention Program recommends that ABA is an essential element of any intervention program for young autistic children.

35.

The Association for Science in Autism Treatment endorses ABA as the only treatment modality with scientific evidence supporting its effectiveness.

36.

The State of Michigan's Insurance Commissioner has held, based on independent medical examinations, that ABA is a reasonable, safe, and necessary treatment for children with autism.

{SSBLS Main Documents\8381\001\00384018-5 }

Page 8 -   CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

37.

Intense behavior intervention for children with autism is the standard of care recommended by the American Academy of Pediatrics and is an appropriate therapeutic management of autism.  Numerous studies indicate that ABA should be initiated at an early age, for a minimum of 20 to 40 hours a week, and for two to four years.  (William J. Barbaresi, *et al.*, *Autism: A Review of the State of the Science for Pediatric Primary Health Care Clinicians*, 160 Archives of Pediatrics & Adolescent Medicine 1167, 1171 (AMA 2006); Howard Cohen, *et al.*, *Early Intensive Behavioral Treatment*: *Replication of the UCLA Model In A Community Setting*, 27 J. Developmental and Behavioral Pediatrics 145 (2006); O. Ivar Lovaas, *Behavioral Treatment and Normal Educational and Intellectual Functioning in Young Autistic Children*, 55 J. Consulting and Clinical Psychology 3 (1987); Svein Eikeseth, *et al.*, *Outcome for Children With Autism Who Began Intensive Behavioral Treatment Between Ages 4 and 7*, 31 Behavior Modification 264 (2007))

38.

ABA treatment is a scientifically valid component of behavior intervention.

39.

Reputable ABA treatment and training is available nationwide from facilities managed and staffed by clinicians with considerable education, certifications, and training in ABA techniques.  The programs offered by these facilities are by no means experimental or investigative.

40.

Based upon a thorough examination of the evidence, the Honorable U.S. Magistrate Judge Stewart concluded on January 5, 2010, "that the weight of the evidence demonstrates that ABA therapy is firmly supported by decades of research and application and is a well-established treatment modality of autism and other PDDs.  It is not an experimental or investigational

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

procedure." (*McHenry v PacificSource Health Plans, et, al*, Case No. 3:08-cv-00562-ST, Opinion and Order Doc. # 59 at 19)

41.

U.S. District Judge Stephen Murphy III recently ruled in *Potter v Blue Cross Blue Shield of Michigan*, 2:10-cv-14981, that "Defendant's characterization and exclusion of ABA therapy as experimental or investigative … was, and is, arbitrary and capricious." (Doc. #s 125, 126)

42.

ABA treatment programs provide autistic children with scientifically validated medical treatments tailored to the child's particular needs and diagnosed condition.

## OREGON LAW

43.

For more than twenty years Oregon has mandated that group health insurance policies include coverage for expenses arising from treatment for mental or nervous conditions. Testimony of Scott Kippler, September 16, 2008 (Exhibit "B" at page 2), Testimony of Teresa Miller, June 4, 2009 (Exhibit "C" at page 1), and 2009 Review of Coverage of Mental or Nervous Conditions and Chemical Dependency (Exhibit "D" at page 2). The 1989 version of ORS 743.556, now ORS 743A.168, states: "A group health insurance policy providing coverage for hospital or medical expenses shall provide coverage for expenses arising from treatment for chemical dependency including alcoholism and for mental or nervous conditions."

44.

Jim Swenson, Administrator for the Oregon Insurance Division, testified that "ORS 743.556 mandates that Oregon-based health insurance policies provide coverage for mental health services requiring they be subject to the same co-insurance and deductibles as other medical services, although they are subject to some internal limits." (Ex. "E" at page 3)

{SSBLS Main Documents\8381\001\00384018-5 }

Page 10 - CLASS ACTION COMPLAINT

45.

That Oregon law has long mandated coverage for treatment of mental or nervous conditions should be well known in the insurance industry.  Indeed, an "Analysis of Group Health Insurance Mandates Required By The Oregon Insurance Code," authored by the Oregon Insurance Pool Governing Board on March 12, 2004, states that ORS 743.556 is a "benefit mandate" and requires coverage of expenses arising from treatment for mental or nervous conditions. (Exhibit "F" at page 5)  The Oregon Psychological Association noted the mandate in its testimony to the Oregon Legislative Assembly on May 20, 2005.  (Exhibit "G" at page 1)

46.

Prior to 2007, the coverage mandate for treatment for mental or nervous conditions was subject to numerous limitations.  For example, the statute allowed a benefit limitation of $13,125 for adults and $15,625 for children.  *See* ORS 743.556 (10).  Senate Bill 1 was introduced in the 2005 Regular Session of the Oregon Legislative Assembly to address these limitations.

47.

Senate Bill 1 is commonly referred to as the Oregon Mental Health Parity Act.  As originally proposed and as adopted, Senate Bill 1 did not eliminate any preexisting coverage mandates.

48.

Senate Bill 1 prohibits group health insurers from imposing financial or treatment limitations for mental health and chemical dependency treatment services unless similar limitations are imposed on coverage of other medical conditions.  Written testimony of Oregon Senate President Peter Courtney, March 9, 2005 (Exhibit "H") and written testimony of Oregon Department of Human Services Health Services Administrator Robert Nikkel March 9, 2005, (Exhibit "I").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

49.

Senate Bill 1 requires that health insurance coverage for the treatment of mental health or nervous conditions and chemical dependency be in parity with other medical coverage. According to Oregon's insurance regulator, the Department of Consumer and Business Services, Insurance Division: "The legislation requires that group health insurance policies provide treatment benefits for chemical dependency and for mental or nervous conditions at the same level and subject to limitations no more restrictive than those imposed for treatment of other medical conditions." 2009 Review of Coverage of Mental or Nervous Conditions and Chemical Dependency (Exhibit D at p. 1).

50.

The OMHPA, Senate Bill 1, became effective on January 1, 2007 and is now codified at ORS 743A.168.

51.

The "mental or nervous conditions" that are required to be covered by ORS 743A.168 are defined in OAR 836-053-1404 as "All disorders listed in the 'Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, Fourth Edition, except for" certain specified diagnostic codes.

52.

The diagnostic codes excluded from the definition of "mental or nervous conditions" in OAR 836-053-1404 do not include the diagnostic code for autism, 299.00. That means autism is included in the mental or nervous conditions that are required to be covered by ORS 743A.168.

53.

In 2007, the Oregon Legislative Assembly passed House Bill 2918. The Legislative Fiscal Office described the bill as requiring "health benefit plans to cover treatment of pervasive developmental disorders subject to the same conditions as treatment of physical illness …"

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

(Exhibit "J" at page 1)  HB 2918 was codified at ORS 743A.190, along with other group health insurance mandates.

## UNITED STATES LAW

54.

In 2008 Congress enacted the Paul Wellston and Pete Domenici Mental Health Parity and Addiction Equity Act (hereinafter "Federal Mental Health Parity Act").

55.

The purpose of the Federal Mental Health Parity Act was to require equity in the provision of mental health and substance-related disorder benefits under group health plans.

56.

The Departments of Labor, Health and Human Services, and the Treasury promulgated interim final rules on February 2, 2010 to implement the provisions of the Federal Mental Health Parity Act.  The interim final rules generally became applicable to group health plans and group health insurance issuers for plan years beginning on or after July 1, 2010, which for calendar year plans, is January 1, 2011.

57.

The Federal Mental Health Parity Act requires that treatment limitations applicable to mental health or substance use disorder benefits be no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan and prohibits separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. ERISA § 712(a)(3), Public Health Service Act § 2726(a)(3), and Internal Revenue  Code § 9812(a)(3).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**DEFENDANT HAS ADOPTED A STANDARD AND UNIFORM GROUP HEALTH INSURANCE PLAN IN OREGON THAT PURPORTS TO COVER AUTISM BUT EFFECTIVELY EXCLUDES THE TREATMENT THAT IS THE STANDARD OF CARE THEREFOR**

58.

Defendant has issued group health plans in the state of Oregon which are subject to ERISA, the Federal Mental Health Parity Act and Oregon law.  Specifically, section 14.5 of the group Member Handbook states that Oregon law governs the interpretation of the contract and the administration of benefits.

59.

Defendant has advertised and represented that its Group Health Plan includes coverage for Mental Health Services.  Section 5.7.1.

60.

"Mental Health" is defined in the Group Member Handbook as "Services related to all disorders listed in the 'Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, Fourth Edition' except for" certain diagnostic codes specified therein.

61.

The DSM-IV-TR Diagnostic codes specifically excluded from the definition of Mental Heath do not include Autistic Disorder Diagnostic Code 299.00.  This means that autism is a covered diagnosis.

62.

Providence represents that its Plan "will cover medical services necessitated by Autism."

63.

However, the Providence Group Health Plan contains the following exclusion (hereinafter "the Exclusion"):

"Services related to developmental disabilities, developmental delays or learning disabilities, including but not limited to, education Services."

{SSBLS Main Documents\8381\001\00384018-5 }

Page 14 - CLASS ACTION COMPLAINT

64.

Even though autism is a covered diagnosis under the Providence Group Health Plan, Providence asserts that ABA treatment is a non-covered mental health service which it has excluded because "ABA services are mental health services related to autism spectrum disorder."

65.

The Providence Group Health Plan does not exclude the standard of care treatment for any health condition other than autism.  The Exclusion is not applied to medical or surgical conditions.

## LEAD PLAINTIFF ALLEGATIONS

66.

A.F. subscribes to Defendant's health insurance plan through his mother's employer.

67.

A.F. is a five-year-old boy who was diagnosed with autism by neurodevelopmental pediatrician Fulgencio Del Castillo, a medical professional with the Providence Neurodevelopmental Center for Children.  Dr. Del Castillo is an approved provider under Defendant's plan.  Dr. Del Castillo prescribed twenty to thirty hours per week of ABA therapy for A.F. and stated that such therapy was necessary to treat A.F.'s condition.

68.

A.F. has received ABA therapy from Marissa Lampros, an early childhood interventionist, since mid- 2012.  A.F.'s parents have paid for this therapy out-of-pocket.

69.

On or about August 16, 2012, A.F.'s parents submitted a claim to Defendant for reimbursement of the costs they incurred for A.F.'s ABA therapy.  On or about September 7, 2012, Defendant responded to A.F.'s parents by letter stating that additional information was needed before it could process the claim.  A.F.'s parents complied and on or about October 19, 2012, they resubmitted detailed invoices with all of the requested information.

{SSBLS Main Documents\8381\001\00384018-5 }

Page 15 - CLASS ACTION COMPLAINT

70.

On or about November 9, 2012, Defendant informed A.F.'s parents that the claim was forwarded "to P.B.H. for processing." A.F.'s parents subsequently received an "Explanation of Benefits" dated November 21, 2012 that stated:  "NOTE ID(S) LISTED BELOW ARE REFERENCED IN THE SERVICE DETAIL SECTION UNDER THE HEADING 'Notes ID' HD5 - (HD5) Claim denied due to both blank Billing and Rendering Provider NPI."  Defendant failed to define "Notes ID," "HD5," "blank Billing" or "Rendering Provider NPI."  The November 21, 2012 "Explanation of Benefits" failed to provide any explanatory information.

71.

On or about December 18, 2012, A.F.'s parents appealed the denial of their claim.

72.

On or about January 16, 2013, Defendant sent a letter to A.F.'s parents, stating that the denial is upheld on appeal, "though not for the insufficient document reasons stated in the PBH explanation of benefits dated November 21, 2012."  Defendant has never explained why the documents A.F. submitted were in any way insufficient.

73.

Defendant's January 16, 2013 letter stated that A.F.'s appeal was denied because services "related to developmental disabilities, developmental delays or learning disabilities" are excluded from A.F's health plan.

74.

On or about March 11, 2013, A.F.'s parents initiated a second level appeal.  A.F.'s parents pointed out the conflict between the covering statements, which indicate that coverage for autism is included, and the Exclusion for all services related thereto.  A.F.'s parents also cited U.S. and Oregon law as bases for compelling coverage of ABA therapy.

{SSBLS Main Documents\8381\001\00384018-5 }

Page 16 - CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

75.

On March 22, 2013, a hearing was held regarding A.F's second level appeal.  A.F.'s parents submitted additional information to the appeal committee and answered all questions asked of them of which there were few.  The appeal committee provided no information to A.F's parents nor did they explain the bases for the prior denials.

76.

Upon information and belief, no medical practitioner with experience treating children with autism was on the appeal committee.

77.

On April 30, 2013, Providence denied A.F.'s second level appeal.  Providence relied on the Exclusion as the basis for the denial decision.  Providence stated that the ABA services A.F. sought "are clearly related to 'developmental disability' and 'developmental delay,' so are specifically excluded by PEBB's language."

78.

Providence also asserted that its denial was in conformance with the Federal Mental Health Parity Act because in its view the Exclusion is not a treatment limitation and thus the Exclusion allows the plan to not cover "any mental health service related to developmental disability or developmental delay."

79.

In response to A.F.'s assertion that coverage was required under ORS 743A.168, Providence stated that "The OMHPA does not mandate coverage of mental health benefits, and the benefits you seek are not covered."

80.

In response to A.F.'s assertion that coverage was mandated under ORS 743A.190, Defendant stated that, although "ORS 743A.190 does mandate coverage" for all medically necessary "medical services" for the treatment of pervasive developmental disorders, the "ABA

{SSBLS Main Documents\8381\001\00384018-5 }

Page 17 - CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

services you seek in your appeal are not medical services, but specifically excluded mental health services."

81.

A.P. subscribes to Defendant's health insurance plan through his grandmother's employer.

82.

A.P. is a six-year-old boy who was diagnosed with autism on or about March 31, 2009, by Dr. Leigh Ann Chapman.  Dr. Chapman prescribed ABA therapy for A.P. and stated that such therapy was necessary to treat A.P.'s medical condition.

83.

For a limited time A.P. received ABA therapy for which A.P.'s parents paid with their own funds.  A.P. ceased to receive ABA therapy because his parents could no longer afford it.

84.

A.P.'s parents submitted a claim to Defendant for reimbursement of the costs they incurred for A.P.'s ABA therapy and requested authorization to continue such treatment.  On or about April 12, 2012, Defendant responded to A.P.'s parents by letter, denying their request. Defendant's basis for denial was that ABA therapy was "experimental and investigational."

85.

On or about May 27, 2012, A.P.'s parents appealed Defendant's denial.  In that appeal, A.P.'s parents listed a myriad of professional associations and government agencies that have formally endorsed ABA therapy as an appropriate and effective treatment for autism.

86.

On or about July 24, 2012, Defendant denied A.P.'s appeal, claiming that it "neither . . . overturn[s] nor . . . affirm[s] the decision on that basis [that ABA therapy is experimental and investigational]."  Instead, Providence came up with a new ground for denial.

{SSBLS Main Documents\8381\001\00384018-5 }

Page 18 - CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

87.

Defendant's July 24, 2012 denial asserted that "[b]ecause ABA services are related to autism spectrum disorder, they are therefore not benefits covered by the plan."  Defendant stated that services "'related to developmental disabilities, developmental delays or learning disabilities' are specifically excluded from coverage under this plan."

88.

On or about January 14, 2013, Dr. Chapman requested that Providence approve payment for ABA therapy for A.P.  Dr. Chapman said that "ABA therapy will improve his cognitive and social capacity in this crucial developmental stage and give A.P. the skills required to be independent and safe in a home and school environment.  Delaying this treatment for A.P. will significantly impact his safety as well as his cognitive, social and skill development."

89.

On January 30, 2013 Providence denied Dr. Chapman's January 14, 2013, request for authorization.  Providence claimed that "services 'related to developmental disabilities, developmental delays or learning disabilities' are specifically excluded from coverage."

90.

On or about February 5, 2013, A.P.'s parents submitted an appeal to Defendant.  In that appeal, they asserted that Defendant was obligated by Oregon law, specifically, ORS 743A.168 and ORS 743A.190, to provide coverage for ABA therapy.

91.

On or about February 26, 2013, Defendant denied A.P.'s February 5, 2013 appeal, stating that "mental health services 'related to developmental disabilities, developmental delays or learning disabilities are specifically excluded from coverage under this plan.'"

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

92.

In response to A.P.'s assertion that coverage was required under ORS 743A.168, Providence stated that "The OMHPA does not mandate coverage of mental health benefits, and the benefits you seek are not covered."

93.

In response to A.P.'s assertion that coverage was mandated under ORS 743A.190, Defendant stated that, although "ORS 743A.190 does mandate coverage" for all medically necessary "medical services" for the treatment of pervasive developmental disorders, the "ABA services you seek in your appeal are not medical services, but specifically excluded mental health services."

94.

Defendant also claimed that, "while the plan will cover medical services necessitated by autism, it does not cover ABA services."

## CLASS ACTION ALLEGATIONS

95.

Pursuant to FRCP 23, Plaintiffs bring this action on behalf of all persons similarly situated.

96.

During certain time periods on and after January 1, 2007, A.F., A.P. and members of the class have been or will be insured under employee welfare benefit plans with health benefits insured by Providence that are subject to the Employee Retirement Income Security Act of 1974, ERISA § 4, 29 USC § 1003.

97.

Since January 1, 2007, and continuing to the present, A.F., A.P. and other members of the class have been diagnosed with conditions that are defined as mental disorders under the diagnostic categories in the DSM IV-TR.

{SSBLS Main Documents\8381\001\00384018-5 }

Page 20 - CLASS ACTION COMPLAINT

98.

A.F., A.P. and members of the class have sought or may seek and have received or may receive treatment for these conditions from behavioral and neurodevelopmental therapists and/or other medical providers.  Providence, however, has refused to reimburse and/or authorize treatment for A.F., A.P. and other members of the class for neurodevelopmental and behavior therapies and/or other services to treat their conditions through the application of a uniform Exclusion, limitation, internal policies and/or practices.

99.

Because the application of the Exclusion, limitations, internal policies and/or practices has resulted, and continues to result, in the exclusion or limitation of coverage for services to treat conditions listed in the DSM-IV-TR, and because Providence has failed, and continues to fail, to provide and/or authorize such coverage, A.F., A.P. and members of the class have paid for treatment rendered by these providers out of their own pocket or face the imminent threat that they will have to do so in the near future because their Plans have not received all of the benefits promised and insured by Providence.  Other class members have been forced to forgo necessary treatment due to Providence's conduct.

100.

In light of the established public and published internal policies of Providence and the written representations by Providence to A.F., A.P. and other class members, any attempt by A.F., A.P. or other class members to pursue administrative remedies would have been futile. Nevertheless, A.F. and A.P., through their parents and guardians, pursued their administrative remedies with Providence, to no avail.

101.

Providence has orchestrated a system-wide policy to unduly hamper the processing of claims in violation of their fiduciary obligations, Oregon law, the Federal Mental Health Parity Act, and regulations promulgated by the Department of Labor, *inter alia*, (A) Providence has

{SSBLS Main Documents\8381\001\00384018-5 }

Page 21 - CLASS ACTION COMPLAINT

issued a uniform policy statement that states that coverage for ABA treatment will be denied because it is "experimental or investigational," but still requires families to pursue their administrative remedies under ERISA Section 503, 29 USC §1133, despite no hope of ever having their claims approved. (B) Providence has eliminated from consideration any favorable medical evidence rebutting its own self-serving and self-generated opinions that ABA is experimental or investigative. (C) When pressed to explain its denial based on its experimental or investigative exclusion, Providence abandons that argument and instead asserts and relies upon the Exclusion that in effect denies payment for the medically necessary and appropriate treatment for a covered condition.

102.

Providence has implemented these policies knowing full well that parents caring for a disabled child often cannot fight the bureaucracy and are likely to simply drop their claims rather than exercise their rights under ERISA.

103.

Plaintiffs first seek certification of a declaratory and injunctive class defined as:

All individuals who have been, are, or will be beneficiaries of an ERISA health benefit plan that is subject to Oregon law that has been or will be issued for delivery, or renewed on or after January 1, 2007 in the state of Oregon, by Providence Health Plan or any affiliate of Providence Health Plan, its predecessors or successors and all subsidiaries or parent entities.

104.

Plaintiffs also seek certification of a subclass comprised of:

All individuals who have been, are, or will be beneficiaries of an ERISA health benefit plan that is subject to Oregon law that has been or will be, issued for delivery, or renewed on or after January 1, 2007 in the state of Oregon, by Providence Health Plan or any affiliate of Providence Health Plan, its predecessors or successors and all subsidiaries or parent entities, and have paid for neurodevelopmental or behavior therapy for the treatment of a pervasive developmental disorder and who Defendant has not reimbursed for those services.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

105.

Excluded from each class are Defendant, any parent, subsidiary, affiliate, or control person of Defendant, as well as officers, directors, agents, servants or employees of Defendant, and the immediate family member of any such person, and any class member who has previously released a claim for benefits under a settlement agreement.  Also excluded is any judge who may preside over this case.

106.

A class action is proper pursuant to FRCP 23(a) in that Plaintiffs believe that the class consists of over forty persons residing in Oregon who were, are, or will be beneficiaries of subject plans in Oregon and that the subclass consists of over forty persons who have received, require, or are expected to require neurodevelopmental or behaviol therapy for the treatment of a pervasive developmental disorder, and thus is so numerous that joinder of all members is impracticable.

107.

This action can be maintained as a class action under Rule 23(a) and (b) because there are questions of law and fact common to the class that predominate over questions affecting only individual members.  These common questions include, but are not limited to the following:

    (a)    Whether Defendant violated ORS 743A.168 and 743A.190;

    (b)    Whether Defendant violated the Federal Mental Health Parity Act, and

    (c)    Whether Defendant violated 29 USC 1001 et seq.

108.

Plaintiffs' claims are typical of the claims of the class and subclass.  Plaintiffs have no interests adverse to the other class members.

109.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the class and subclass.  Plaintiffs have retained competent counsel experienced in class action

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

and ERISA litigation to further insure such representation and protection of the class.  Plaintiffs and their counsel intend to prosecute this action vigorously.

110.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent class-wide adjudication, members of the class are without effective recourse.  Because of the relatively small monetary value of each individual class member's claim, few, if any, class members could afford to prosecute an individual action against Defendant.  Absent class treatment, Defendant's wrongdoing will go unabated, the ranks of class members will continue to swell, and no class member will be afforded the opportunity to seek judicial relief, whether for themselves, or for the public good generally.

111.

A class action is appropriate pursuant to Rule 23(b)(3) because the questions of law and fact regarding the nature and legality of Defendant's practices predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  In violating clear and established Oregon law and federal statutes regarding the provision of neurodevelopmental or behavior therapy for the treatment of a pervasive developmental disorder, Defendant has acted on grounds generally applicable to the class.

112.

A class action is superior to other available methods for the fair and efficient adjudication of the controversy for at least the following reasons:

(a)     The prosecution of separate actions creates a risk of inconsistent or varying adjudications;

(b)     The common questions of law and fact described above predominate over questions affecting only individual members;

{SSBLS Main Documents\8381\001\00384018-5 }

Page 24 - CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

(c)     Individual class members would have little interest in individually controlling the prosecution of separate actions because the amount of each individual claim is relatively small compared to the complexities of the issues and the expenses of litigation;

(d)     This is a desirable forum because this Court has significant experience managing class actions;

(e)     A class action will be an efficient method of adjudicating the claims of the class members; and

(f)     Class members have claims that are not significant in amount relative to the expense of the litigation, so separate actions would not afford adequate relief to the members of the class.

## DEFENDANT'S VIOLATIONS OF ERISA

### 113.

ERISA requires every employee benefit plan to provide for one or more named fiduciary who will have "authority to control and manage the operation and administration of the Plan" 29 USC § 1102(a)(1).

### 114.

The employers of A.F.'s parents, A.P.'s grandparents and class members delegated their fiduciary responsibilities for claims administration to Defendant.

### 115.

At all relevant times, Providence was a fiduciary within the scope of ERISA by virtue of its control and responsibility over the design, implementation, and administration of the Plans.

### 116.

As a matter of policy, Providence has wrongfully denied Plaintiffs, the class members, and their dependents coverage for ABA treatment.

{SSBLS Main Documents\8381\001\00384018-5 }

Page 25 - CLASS ACTION COMPLAINT

117.

Providence initially wrongfully denied coverage on the bad faith basis that ABA treatment is "experimental" or "investigative," despite a multitude of studies showing the efficacy of ABA treatment, despite repeated rulings by State Insurance Commissioners that ABA is a reasonable, safe, necessary, and mainstream treatment for children with autism, and despite this Court's ruling in *McHenry v PacificSource Health Plans*.  Indeed, as recent as November 2012, Providence renewed a Health Plan Medical Policy and Criteria in which it asserted that ABA therapy is not covered because it is "considered experimental and investigational."

118.

Providence has failed to provide any unbiased explanation or evidence in support of its claim that ABA treatment is experimental or investigative.

119.

After initially denying claims on the basis that ABA treatment is experimental or investigational, Providence raises a new ground and asserts that "[b]ecause ABA services are related to autism spectrum disorder, they are therefore not benefits covered by [the] plan."

120.

When confronted with ORS 743A.168, Providence claims that "[t]he OMHPA does not mandate coverage of mental health benefits, and the benefits you seek are not covered."

121.

When confronted with the ORS 743A.190 mandate, Providence claims that only coverage for "medical services" are mandated, that ABA therapy is not a medical service, and thus according to Providence ABA is not a covered service.

122.

By administering the Plans in the manner described in this Class Action Complaint, Providence has failed to exercise the utmost loyalty and care of a prudent person engaged in similar activity under prevailing circumstances, in violation of ERISA.

{SSBLS Main Documents\8381\001\00384018-5 }

Page 26 - CLASS ACTION COMPLAINT

123.

Plaintiffs have exhausted all of their administrative remedies, and, given Defendant's policy and practice of denying coverage for ABA, it would be futile for the remainder of the class to exhaust their administrative remedies.

## FIRST CLAIM FOR RELIEF

**(Equitable Relief ERISA § 502(a)(3), 29 USC § 1132(a)(3))**
**On Behalf of Plaintiffs and All Members of the Class**

124.

Plaintiffs reallege all preceding paragraphs.

125.

Plaintiffs and their fellow class members have the right to a full and fair review and proper notice of the reasons for the denial of their claimed benefits under ERISA §503, 29 USC §1133.

126.

ERISA § 502(a)(3), 29 USC § 1132(a)(3) provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this title or the terms of the plan." Plaintiffs and the class seek to enjoin Providence from continuing to process and pay claims under its insured Plans in a manner that is inconsistent with the Federal Mental Health Parity Act and ORS 743A.168 and 743A.190, as incorporated into the terms of the Plans.  Plaintiffs and the class also seek to have Providence provide the class with corrective notice and information.

127.

Plaintiffs and their fellow class members were denied their right to a full and fair review of their claims for benefits in one or more of the following ways:

(a)      Defendant is operating with an inherent structural conflict of interest by acting as both administrator and insurer of certain Plan members' benefits and this has affected the unbiased decision making of the Defendant;

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

(b)     Defendant has repeatedly failed to abide by Department of Labor Regulations governing the administration of plans and claims by, among other things, issuing a standard policy designed to frustrate a claimant's ability to pursue their claims and unduly hamper the processing of claims;

(c)     Defendant has failed to comply with the Federal Mental Health Parity Act when it enacted and relies upon the Exclusion, and

(d)     Defendant has failed to comply with Oregon law, either ORS 743A.168, ORS 743A.190, or both, when it enacted and relies upon the Exclusion.

128.

Defendant's actions as set forth above are in violation of ERISA and the relevant Plans. Specifically, Providence has implemented a plan-wide system of denying coverage, without providing beneficiaries and participants a full and fair review, in violation of those duties imposed by ERISA, and have administered the Plan in such a manner as to unduly hamper the processing of valid claims.

129.

As a result of the breaches of their duties as described above, Plaintiffs and the class members have been harmed, continue to be harmed, and will be harmed in the future, due to the acts or omissions detailed above.

130.

Plaintiffs and the class members are entitled to: (1) a declaratory judgment that Defendant's Exclusion of ABA therapy violates applicable law and is void; (2) an order enjoining Defendant from denying coverage for ABA treatment on the basis of the Exclusion; (3) an order requiring Providence to comply with the Federal Mental Health Parity Act; (4) an order requiring Providence to comply with the provisions of ORS 743A.168 and ORS 743A.190; (5) an order requiring Providence to provide the class with corrective notice and information; and (6) an award of their reasonable attorney fees and costs under 29 USC 1132(g).

{SSBLS Main Documents\8381\001\00384018-5 }

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## SECOND CLAIM FOR RELIEF

**(Equitable Relief ERISA § 502(a)(3), 29 USC § 1132(a)(3))
On Behalf of Plaintiffs and All Members of the Subclass**

131.

Plaintiffs reallege all preceding paragraphs.

132.

ERISA § 502(a)(3), 29 USC § 1132(a)(3) provides that a participant or beneficiary may obtain appropriate equitable relief to redress violations of ERISA or enforce plan terms. Plaintiffs and the subclass seek equitable remedies including, without limitation, unjust enrichment, disgorgement, and restitution to redress Providence's failure to follow the requirements of the Federal Mental Health Parity Act as well as ORS 743A.168 and 743A.190.

133.

ERISA requires Defendant to discharge its fiduciary duties solely in the interest of the participants and beneficiaries and with utmost, undivided loyalty to their interests.

134.

By denying coverage for ABA services based on an Exclusion that conflicts with Oregon law and with the Federal Mental Health Parity Act, and refusing to engage in dialog with the plan participants, Providence has denied Plaintiffs and the subclass members a reasonable opportunity for a full and fair review of the decision denying them benefits in such a manner as to unduly hamper the processing of valid claims.

135.

Plaintiffs and the subclass members are entitled to appropriate equitable relief necessary to redress Defendant's violations and to enforce the law and the Plans including, without limitation, restoration to plaintiffs and members of the subclass of funds improperly in Defendant's possession as a result of Defendant's improper denial of claims for ABA therapy, unjust enrichment, disgorgement, and restitution, and an award of their reasonable attorney fees and costs under 29 USC 1132(g).

{SSBLS Main Documents\8381\001\00384018-5 }

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## THIRD CLAIM FOR RELIEF

**(Recovery of Benefits Due and Declaration of Future Benefits ERISA § 502(a)(1)(B),
29 USC. § 1132(a)(1)(B))
On Behalf of Plaintiffs and All Members of the Subclass**

136.

Plaintiffs reallege all preceding paragraphs.

137.

ERISA § 502(a)(1)(B), 29 USC § 1132(a)(1)(B) provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

138.

Plaintiffs and the subclass they represent are entitled to recover benefits denied them due to the improper Exclusion cited above.  They are also entitled to a declaration of present and future rights to benefits for behavior and neurodevelopmental therapy under the Plans insured by Providence.

139.

Plaintiffs and members of the subclass are parents of or minors enrolled in a health benefit plan defined in ORS 743.730(17)(C), have been diagnosed with a mental or nervous condition, i.e. a pervasive developmental disorder--autism, and require services that are medically necessary.

140.

Defendant has offered and provides a "group health insurance policy" under ORS 743A.168.

141.

Defendant has refused to cover expenses arising from treatment for mental or nervous conditions at the same level as, and subject to limitations no more restrictive than, those imposed

{SSBLS Main Documents\8381\001\00384018-5 }

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

on coverage or reimbursement of expenses arising from treatment for other medical conditions, that are medically necessary for Plaintiffs and subclass members.

142.

Defendant has improperly retained funds by failing to pay benefits as required by law and is liable to restore to Plaintiffs and members of the subclass those funds improperly retained under ERISA § 502(a)(1)(B), 29 USC § 1132 (a)(1)(B), for its violation of ORS 743A.168.

143.

Defendant has offered and provides a "health benefit plan" under ORS 743A.190(1).

144.

Defendant has refused to cover all services that are medically necessary for Plaintiffs and subclass members.

145.

Defendant is liable to Plaintiffs and members of the subclass under ERISA § 502(a)(1)(B), 29 USC § 1132 (a)(1)(B), for its violation of ORS 743A.190(1).

146.

Defendant's Group Health plans are subject to the provisions of the Federal Mental Health Parity Act.

147.

Defendant has enacted an Exclusion that treats mental health conditions more restrictive than the predominant treatment limitations applied to substantially all medical or surgical benefits.

148.

Defendant is liable to Plaintiffs and members of the subclass under ERISA § 502(a)(1)(B), 29 USC § 1132 (a)(1)(B), for its violation of the Federal Mental Health Parity Act.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

149.

Plaintiffs have completed all steps required prior to the filing of this complaint under the Plan and ERISA, including all required requests for review of the denial of their claims pursuant to 29 USC § 1133.

150.

In connection with the above violations, Defendant has retained possession of funds that should have been reimbursed to Plaintiffs and members of the subclass for covered services, equal to the total amounts paid out-of-pocket for ABA and related therapies.  Under 29 USC §§ 1132 (a)(1)(B), 1132(g), Plaintiffs and members of the subclass are entitled to recover those losses and are also entitled to an award of reasonable attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on their own behalf and on behalf of the class pray for relief against Defendant as follows:

A.     That this Court certify the proposed class, subclass, and/or such other class or subclasses as the Court deems advisable, appoint Plaintiffs as representatives of the classes, appoint Plaintiffs' counsel as class counsel, and provide for appropriate notices to the class or subclass;

B.     On the First Claim for Relief that this Court issue: (1) a declaratory judgment that Defendant's Exclusion of ABA therapy violates applicable law and is void; (2) an order enjoining Defendant from denying coverage for ABA treatment on the basis of the Exclusion for services related to developmental disabilities, developmental delays or learning disabilities; (3) an order requiring Providence to comply with the Federal Mental Health Parity Act; (4) an order requiring Providence to comply with the provisions of ORS 743A.168 and 743A.190, (5) an order requiring Providence to provide the class with corrective notice and information, and (6) an order compelling all other appropriate equitable relief necessary to redress Defendant's

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

violations and to enforce the law and the Plans, and an award of the Plaintiffs' reasonable attorney fees and costs under 29 USC § 1132(g);

C.       On the Second Claim for Relief that this Court enter an order compelling all other appropriate equitable relief necessary to redress Defendant's violations and to enforce the law and the Plans including, without limitation, payment of all denied claims for ABA therapy, unjust enrichment, disgorgement, and restitution, and an award of the Plaintiffs' reasonable attorney fees and costs under 29 USC 1132(g);

D.       On the Third Claim for Relief that this Court Order Defendant to restore to Plaintiffs and all others similarly situated the total amounts spent by Plaintiffs and members of the subclass on ABA therapy; and an award of reasonable attorneys' fees and costs under 29 USC § 1132(g); and

E.       That this Court award such other relief as may be deemed just and proper.

DATED this 8th day of May, 2013.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By:  /s/ Keith S. Dubanevich
         **Keith S. Dubanevich**, OSB No. 975200
         **Joshua L. Ross,** OSB No. 034387
         **Nadine A. Gartner**, OSB No. 103864

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:       (503) 227-1600
Facsimile:       (503) 227-6840
Email:           kdubanevich@stollberne.com
                 jross@stollberne.com
                 ngartner@stollberne.com
-And-

**Megan E. Glor**, OSB No. 930178
MEGAN E. GLOR ATTORNEYS AT LAW
621 SW Morrison Street, Suite 900
Portland, OR 97205
Telephone:       (503) 223-7400
Facsimile:       (503) 227-2530
Email:           megan@meganglor.com

**Attorneys for Plaintiffs**

{SSBLS Main Documents\8381\001\00384018-5 }

Page 33 - CLASS ACTION COMPLAINT