# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **A.F., by and through his parents and guardians, Brenna Legaard and Scott Fournier; and A.P., by and through his parents and guardians, Lucia Alonso and Luis Partida, and on behalf of similarly situated individuals**, | Case No. 3:13-cv-00776-SI |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **PROVIDENCE HEALTH PLAN**, | |
| Defendant. | |

Keith S. Dubanevich, Joshua L. Ross, and Nadine A. Gartner, Stoll Stoll Berne Lokting & Shlacheter, P.C., 209 S.W. Oak Street, Suite 500, Portland, OR 97204; Megan E. Glor, Megan E. Glor, Attorneys at Law P.C., 621 S.W. Morrison Street, Suite 900, Portland, OR 97205. Attorneys for Plaintiffs.

William F. Gary, Arden J. Olson, and Aaron Landau, Harrang Long Gary Rudnick, P.C., 360 East 10th Avenue, Suite 300, Eugene, OR 97401; Aaron T. Bals, Harrang Long Gary Rudnick, P.C., 1001 S.W. Fifth Avenue, Suite 1650, Portland, OR 97204. Attorneys for Defendant.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiffs A.F. and A.P. (collectively "Plaintiffs") bring this putative class action against Defendant Providence Health Plan ("Providence"). Plaintiffs claim that Providence illegally denied coverage to Plaintiffs as members of Providence-issued group health plans in Oregon of the therapeutic technique of Applied Behavior Analysis ("ABA"). Plaintiffs move to certify a class under Fed. R. Civ. P. 23(b)(2). Dkt. 36. Plaintiffs seek injunctive and declaratory relief, asking the Court to enjoin Providence from denying coverage based on its Developmental Disability Exclusion and to issue a declaration stating that the Developmental Disability Exclusion violates applicable law. For the reasons discussed below, Plaintiffs' motion for class certification is GRANTED.

## BACKGROUND

Plaintiffs A.F. and A.P. are both insured as dependent-beneficiaries under group health plans in Oregon provided by Providence. A.F. and A.P. have both been diagnosed with Autism Spectrum Disorder and prescribed ABA therapy by their treating physicians. ABA therapy is an intensive behavior therapy that measures and evaluates observable behaviors. Evidence shows that ABA therapy may help autistic children with cognitive function, language skills, and adaptive behavior. Evidence also suggests that the benefits of ABA are significantly greater with early intervention for young autistic children. Providence currently denies all requests for coverage of ABA therapy.

In 2012, Providence denied a request by A.F.'s parents for reimbursement for the expenses of ABA therapy. A.F.'s parents appealed the initial denial, which Providence also denied. When A.F.'s parents appealed a second time, Providence denied the second appeal and provided this explanation:

> Under the language of the Oregon Group Member Handbook for
> Open Option Plans, services "related to developmental disabilities,
> developmental delays or learning disabilities" are specifically
> excluded from coverage under this plan. (See Group Member
> Handbook, at 43). There is no question that autism spectrum
> disorder is a "developmental disability" or involves
> "developmental delay," and PHP [Providence Health Plan] here
> has so interpreted it, in this case as it has in other cases seeking
> ABA services for autism spectrum disorder. Because ABA
> services are related to autism spectrum disorder, they are therefore
> not benefits covered under the plan.

Declatation of Joshua L. Ross ("Ross Decl.") Ex. C at 9. Dkt. 41-3.

Also in 2012, Providence denied the request by A.P.'s physician for authorization of

ABA therapy to treat A.P.'s autism. A.P.'s parents appealed Providence's denial, and Providence

denied the appeal. Providence provided the following explanation, almost identical to the

explanation provided to A.F., to A.P.'s parents:

> Under the language of the Oregon Group Member Handbook for
> Open Option Plans, mental health services "related to
> developmental disabilities, developmental delays or learning
> disabilities" are specifically excluded from coverage under this
> plan. (See Group Member Handbook, at 41). There is no question
> that autism spectrum disorder is a "developmental disability" or
> involves "developmental delay," and Providence as the plan
> administrator here has so interpreted it, in this case as it has in
> other cases seeking ABA services for autism spectrum disorder.
> Because ABA services are mental health services related to autism
> spectrum disorder, they are therefore not benefits covered under
> the plan.

Ross Decl. Ex. D at 8. Dkt. 41-4.

Thus, in both cases, Providence denied coverage of ABA therapy because it is a service

"related to developmental disabilities, developmental delays or learning disabilities." *Id.* This

exclusion (hereinafter, "the Developmental Disability Exclusion") is included in all of the group

plan insurance contracts issued by Providence after 2007. The Developmental Disability

PAGE 3 – OPINION AND ORDER

Exclusion is listed in the member handbook given to all members that describes the governing terms of the insurance plans.

Providence issues two types of plans: "self-insured" group plans and "insured" group plans. Under a "self-insured" plan, the employer carries the risk of coverage. Under an "insured" plan, Providence carries the risk of coverage. Both the "self-insured" and "insured" plans are subject to Oregon law and the federal Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1000 et. seq. Plaintiff and all potential class members are members of "insured" group plans. Providence is both the administrator of the plans and a fiduciary to all plan members. Providence is obligated to apply exclusions consistently and uniformly.

Providence uses diagnosis codes and current procedural terminology ("CPT") codes to process members' claims. The diagnosis codes for Autism Spectrum Disorder all start with 299. There is no CPT code for ABA therapy.

Although Providence's group plans differ in terms of the specific benefits provided to group members, all of the group plan contracts issued after January 1, 2007 contain several identical provisions, including: (1) coverage for "Mental Health Services;" (2) a definition of "Mental Health Services" that includes coverage of autism; and (3) exclusion of coverage for "services related to developmental disabilities, developmental delays, or learning disabilities" (the Developmental Disabilities Exclusion). Providence denies coverage of ABA therapy under the Developmental Disabilities Exclusion for all group members under all group plans, regardless of whether the member seeks reimbursement for payments for ABA therapy or pre-authorization of coverage.

The Developmental Disabilities Exclusion is not the only exclusion Providence asserts it can rely on to deny coverage for ABA therapy. For example, Providence states that it also

intends to deny claims for ABA therapy on the ground that ABA therapy is investigational and experimental (hereinafter, "the Experimental Exclusion"). Providence, however, denied the ABA therapy claims of both A.F. and A.P. based solely on the Developmental Disability Exclusion. Providence asserts that its current position is to deny ABA therapy based on any and all potential bases for denial, including but not limited to, both the Developmental Disability Exclusion and the Experimental Exclusion.

Starting in 2007, Providence elected under Or. Rev. Stat. § 743.857(1) to be bound by an independent review organization ("IRO") with respect to the statutorily mandated external review of denial of coverage. The IRO review process allows plan members to appeal the denial of benefits to an independent physician outside of the Providence system, who reviews the denial under the four statutorily prescribed areas of review: (1) "whether a course or plan of treatment is medically necessary," (2) "whether a course or plan of treatment is experimental or investigational," (3) "whether a course or plan of treatment that an enrollee is undergoing is an active course of treatment for purposes of continuity of care," and (4) "whether a course or plan of treatment is delivered in an appropriate health care setting and with the appropriate level of care." Or. Rev. Stat. § 743.857(1). Twice since 2007, Providence members have appealed the denial of ABA therapy through the IRO process. Dkt. 46. In both instances, the independent physician found that ABA therapy was not experimental and that Providence must provide coverage for the therapy. *Id.* Notably, the Developmental Disability Exclusion is not reviewable through the IRO process. Therefore, if Providence denies coverage for ABA therapy based solely on the Developmental Disability Exclusion, as it did for A.F. and A.P., the plan member will not be able to appeal the denial through an IRO.

**STANDARDS**

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. A party

seeking class certification must satisfy each of the four requirements of Rule 23(a) and at least

one requirement of Rule 23(b). *Wang v. Chinese Daily News, Inc.*, --- F.3d---, 2013 WL

4712728, at *2 (9th Cir. Sept. 3, 2013). Rule 23 provides more than "a mere pleading standard,"

and the plaintiff "must be prepared to prove" that each of the Rule 23 requirements is satisfied.

*Wal-Mart Stores, Inc. v. Dukes*, ---U.S.---, 131 S. Ct. 2541, 2551 (2011). District courts have

broad discretion to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d

849, 871 n.28 (9th Cir. 2001).

Under Rule 23(a), a district court may certify a class only if:

> (1) the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law and fact common to
> the class; (3) the claims or defenses of the representative parties
> are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a). In other words, the class must meet the requirements of numerosity,

commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*,

666 F.3d 581, 588 (9th Cir. 2012).

After all four of the requirements of Rule 23(a) are satisfied, the party seeking to

maintain a class action also must "satisfy through evidentiary proof at least one of the provisions

of Rule 23(b)." *Comcast Corp. v. Behrend*, ---U.S.---, 133 S. Ct. 1426, 1432 (2013). Rule 23(b)

states that the plaintiff must demonstrate either: (1) a risk of substantial prejudice from separate

actions; (2) "the party opposing the class has acted or refused to act on grounds that apply

generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole;" or (3) there are "questions of law or fact common to

class members [that] predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

The district court should engage in a "rigorous analysis" to ensure that the prerequisites of Rules 23(a) and (b) have been satisfied. *Wal-Mart*, 131 S. Ct. at 2551; *Comcast Corp.*, 133 S. Ct. at 1432. Although a court's class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, ---U.S.---, 133 S. Ct. 1184, 1194-95 (2013) (citation omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

## DISCUSSION

### A. The Proposed Class

Plaintiffs propose the following class (the "101 Class")[1] for injunctive relief:

> All individuals: (a) who are, or will be up to the date of class certification, beneficiaries of an ERISA health benefit plan (i) that is subject to Oregon law, (ii) that contains an Exclusion for services related to developmental disabilities, developmental delays, or learning disabilities, (iii) and that has been or will be issued for delivery, or renewed, on or after January 1, 2007 up to the date of class certification, in the state of Oregon, by Providence Health Plan or any affiliate of Providence Health Plan, its predecessors or successors and all subsidiaries or parent entities; (b) who either have been or will be diagnosed, up to the date of class certification, with any diagnosis code beginning with 299 contained in either the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR, Fourth Edition) or the International

---

[1] In the motion for certification before the Court, Plaintiffs seek certification for a declaratory and injunctive class (the 101 Class). Dkt. 43 at 11. In the First Amended Complaint, Plaintiffs indicated that they may, at a later date, move to certify a subclass (the 102 Class), and may seek monetary damages for that subclass. Dkt. 9 at 21.

Classification of Diseases, Ninth Edition (ICD-9); and (c) who are not (i) a parent, subsidiary, affiliate, or control person of Defendant, (ii) an officer, director, agent, servant or employee of Defendant, (iii) the immediate family member of any such person, or (iv) a class member who has previously released a claim for benefits under a settlement agreement.

Plfs' Redacted Memo. at 11. Dkt. 43.[2]

## B.  Rule 23(a)

Plaintiffs argue that the proposed class satisfies all of the elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Providence argues that Plaintiffs' proposed class does not satisfy any of the Rule 23(a) requirements. The Court addresses each requirement in turn.

### 1.  Numerosity

Rule 23(a)(1) requires that Plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)(1) provides no bright-line test or minimum number of class members necessary to meet the numerosity requirement; instead, the Court must evaluate the specific facts of each case. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). In general, classes of 15 members or less are too small, and classes of 16 to 39 members may or may not be sufficiently numerous, depending on the facts of the case. *See id.*; MOORE'S FEDERAL PRACTICE § 23-05 (2d ed. 1987). In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, ---F.R.D.---, 2013 WL 5774124, at *2 (D. Or. Oct. 22, 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); MCLAUGHLIN ON CLASS ACTIONS § 4:5 (9th ed.) ("The rule of thumb

---

[2] Section C of the proposed class definition can be found in paragraph 103 of the First Amendment Complaint. Dkt. 9.

adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement.").

Plaintiffs argue that the Court should define the class to include all current group plan members who have received a diagnosis of autism and all future group plan members who have received or will receive a diagnosis of autism through the date of class certification. Today, there are 259 current Providence group plan members who have submitted a claim for benefits associated with a diagnosis of autism. Plaintiffs argue that a class of 259 members clearly meets the numerosity requirement.

Providence responds by arguing that a significant portion of the proposed class has not yet suffered an actual injury. Providence asserts that the class should be limited to those plan members who have already requested and have been denied ABA services because these class members have experienced an actual injury. Only ten members, other than the two named Plaintiffs, have been denied ABA services. Providence asserts that only these 12 members meet the constitutional standing requirement under Article III, and therefore, the class is not numerous.

In the context of ERISA, other circuits "have drawn a distinction between constitutional standing to seek injunctive relief and constitutional standing to seek [money damages]." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 102 (2d Cir. 2011); *see also Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1148 (3d. Cir. 1993). Although the Ninth Circuit has not yet addressed this specific legal issue, the other circuits that have considered it all agree that "a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant." *Cent. Se. & Sw. Areas Health &*

PAGE 9 – OPINION AND ORDER

*Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005); *see also*

*Faber*, 648 F.3d at 102 (same); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456

(3d Cir. 2003) (finding that the plaintiff "need not demonstrate actual harm in order to have

standing to seek injunctive relief" under ERISA); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1171

(D.C. Cir. 1994) (holding that the plaintiff need not demonstrate actual harm in order to file suit

for breach of fiduciary duty under ERISA). Because Plaintiffs move only for class certification

of an injunctive class and seek injunctive relief under ERISA, no showing of individualized harm

of class members is required to establish Article III standing.[3]

Plaintiffs have met their burden of meeting the numerosity requirement of Rule 23(a). A

class of 259 members satisfies the 40-person "rough rule of thumb," and joinder would be

impracticable under the particular circumstances of this case.

### 2. Commonality

Rule 23(a)(2) states that class certification is only appropriate when the case presents

"questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In order to satisfy the

commonality requirement, Plaintiffs must show that the class members suffered the "same

injury." *Wal-Mart*, 131 S. Ct. at 2551 (citation and quotation marks omitted). In *Wal-Mart*, the

Supreme Court stated the test for commonality: "[The] common contention . . . must be of such a

nature that it is capable of classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

---

[3] Providence also argues that *Wal-Mart* changes the standing requirements under ERISA because the Supreme Court held in that case that a class representative must have the same injury as the class members. 131 S. Ct. at 2550. As Plaintiffs point out, however, the "same injury" standard comes from Supreme Court precedent dating back to 1977, and therefore, the ERISA case law was developed after the "same injury" standard. *See E. Tex. Motor Freight Sys., Inc. v. Rodriquez*, 431 U.S. 395, 403 (1977) (noting that the Supreme Court has "repeatedly held" that a class representative must "suffer the same injury" as the class members). Providence's argument that *Wal-Mart* alters the landscape of ERISA injunctive class actions is not persuasive.

PAGE 10 – OPINION AND ORDER

*Id.* Rather than requiring that every issue be common, however, for purposes of Rule 23(a)(2) "even a single [common] question will do." *Id.* at 2556 (alteration in original) (quotation marks omitted); *see also Mazza*, 666 F.3d at 589.

Plaintiffs assert that the claims of the injunctive class depend on a common contention— that the Developmental Disability Exclusion violates state and federal law. This common question, Plaintiffs argue, affects each class member, and the answer to the common question will resolve an issue central to the validity of each class member's claim.

Providence responds that the commonality requirement is not satisfied because A.F.'s and A.P.'s cases have questions of law and fact distinct from the rest of the class. Particularly, Providence asserts that in A.F.'s and A.P.'s cases, Providence *may* have waived the right to assert the *Experimental* Exclusion, but in the case of every other class member Providence has not waived the right to assert the Experimental Exclusion.

Putting aside whether Providence's strategic decision to deny A.F.'s and A.P.'s claims on a different basis than all other plan members' claims violates Providence's fiduciary duty under ERISA to treat all plan members similarly, Providence's argument does not defeat class certification under Rule 23(a)(2). Regardless of whether Providence can raise the specific Experimental Exclusion (or any other defense or exclusion) against certain class members but not others, all class members have in common the issue of whether the Developmental Disabilities Exclusion violates state or federal law. *See Z.D. v. Group Health Cooperative*, No. C-11-1119-RSL, 2012 WL 5033422, at *4 (W.D. Wash. Oct. 17, 2012) (holding that the issue of whether Defendant's policy of limiting coverage "on the basis of beneficiaries' ages amounted to a breach of their fiduciary duties" was a common issue); *Churchill v. Cigna Corp.*, No. 10-6911, 2011 WL 3563489, at *4 (E.D. Pa. Aug. 12, 2011) (holding that "[w]hile class members may be

entitled to different benefits, participate in different Cigna-administered plans, and have children

who would benefit from ABA in varying degrees, these differences are not significant enough in

this litigation to defeat commonality"); *In re Louisiana-Pacific Corp.*, No. Civ. 02-1023-KI,

2003 WL 23537936, at *4 (D. Or. Jan. 24, 2003) (holding that defendant's breach of fiduciary

duties under ERISA was a common issue despite other individual distinctions among class

members). Resolution of this common issue on a class-wide basis will settle this particular

question "in one stroke" for all putative class members. Thus, Plaintiffs have satisfied the

commonality requirement.

### 3. Typicality

In order to meet the typicality requirement, Plaintiffs must show that the named parties'

claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3).

Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if

they are reasonably co-extensive with those of absent class members; they need not be

substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The

purpose of the typicality requirement is to assure that the interest of the named representative

aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

Cir. 1992). In order to determine whether claims and defenses are typical, courts look to

"whether other members have the same or similar injury, whether the action is based on conduct

which is not unique to the named plaintiffs, and whether other class members have been injured

by the same course of conduct." *Id.* (quotation marks omitted); *see also Wolin v. Jaguar Land

Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Plaintiffs argue that A.F.'s and A.P.'s claims are typical of the unnamed class members

because Providence denies coverage for ABA therapy to all group plan members whose plans

contain the Developmental Disabilities Exclusion, and therefore, Providence's course of conduct

PAGE 12 – OPINION AND ORDER

in determining that the Developmental Disabilities Exclusion applies to ABA therapy in all instances affects all Plaintiffs similarly. Providence responds that the claims of the named Plaintiffs are not typical of the class because A.F. and A.P. have a unique defense. Specifically, Providence contends that if it later applies the Experimental Exclusion, A.F. and A.P. may have the unique defense that Providence waived its right to assert to do so. Providence argues this could be a major focus of the litigation as it continues. As such, Providence argues, there is a danger that the absent class members will suffer because their representatives will be preoccupied with issues unique to them.

The issue of whether Providence may have waived the Experimental Exclusion in A.F.'s and A.P.'s cases has no bearing on the question of whether the denial of ABA therapy based on the Developmental Disabilities Exclusion violates state or federal law. This is true irrespective of the fact that each individual class member may or may not have additional other exclusions that may or may not apply to their cases.[4] A.F.'s and A.P.'s claims are typical of the proposed injunctive class because they result from the same injurious course of conduct and because the requested injunction, if granted, would provide relief to all class members similarly situated. In other words, if Plaintiffs are correct on the merits, then Providence would no longer be able to deny coverage of ABA therapy based on the Developmental Disabilities Exclusion.

### 4. Adequacy of Representation

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ.

---

[4] Moreover, it is unclear whether the Experimental Exclusion will be a viable exclusion for Providence to use moving forward. Based on Providence's own disclosures in this litigation, the IRO process has consistently found that ABA therapy is *not* experimental. When this issue is addressed through litigation, courts have also consistently found that ABA therapy is not experimental. *See, e.g.*, *McHenry v. PacificSource Health Plans*, 679 F. Supp. 2d 1226, 1237-39 (D. Or. 2010).

P. 23(a)(4). This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class member;" and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of constitutional due process; as such, a court cannot bind absent class members if the representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon*, 150 F.3d at 1020.

Plaintiffs assert that the adequacy requirement is satisfied because the named Plaintiffs and their counsel have no conflicts with any members of the class and because Plaintiffs' counsel include experienced class action attorneys and experts on ERISA and health benefits law. Providence responds that Plaintiffs have not met the adequacy requirement for three reasons: (1) there is a conflict between the named Plaintiffs and the absent class members, (2) Plaintiffs have not demonstrated that Plaintiffs' counsel have the experience necessary to represent the class adequately, and (3) identified class counsel may not be a law firm, but must be specified individual lawyers.

Providence argues first that a conflict exists between the named Plaintiffs and the absent class members because of the Experimental Exclusion as discussed above. At oral argument Providence further asserted that absent class members would be disadvantaged by class certification because if the class lost on the merits, then the absent class members would be unable to go through the IRO process, where they might be more likely to succeed in receiving coverage for ABA therapy. The Court rejects this argument because, without delving into the merits, it is evident that the absent class members will be in the same position if Plaintiffs lose on the merits regardless of whether there is class certification. If the Court rules for Providence on the merits and the class is certified, Providence can deny class members' request for coverage of

PAGE 14 – OPINION AND ORDER

ABA therapy based solely on the Developmental Disability Exception and prevent absent class members from appealing through the IRO process. If the Court rules for Providence on the merits and the class is *not* certified, absent class members face the same result—Providence can deny class members' requests for coverage of ABA therapy based solely on the Developmental Disability Exception and still prevent absent class members from appealing through the IRO process because that exclusion is not part of the IRO review criteria. *See* Or. Rev. Stat. § 743.857(1). Thus, because a loss on the merits will negatively affect absent class members in the same way regardless of whether the class is certified, no conflict exists that would defeat the adequacy of representation.[5]

Moreover, Plaintiffs have presented sufficient evidence to demonstrate that Plaintiffs' counsel, both as individual lawyers and as a law firm, are qualified to represent the class. Plaintiffs' law firm Stoll Stoll Berne Lokting & Shlacheter includes lawyers who have been appointed lead counsel in numerous class action lawsuits. In addition, Plaintiffs' counsel Megan Glor has significant experience litigating health benefits claims and has expertise in ERISA law. Providence's argument that a law firm cannot be appointed lead counsel is unavailing, as federal courts in this district and others regularly appoint law firms rather than specific lawyers as lead class counsel. *See Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, No. 3:09-cv-00320-HU (D. Or. May 8, 2013); *Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-00960-ST, 2013 WL 1326538 (D. Or. April 1, 2013). For all of these reasons, Plaintiffs have made a sufficient showing to demonstrate adequacy of representation.

---

[5] At oral argument, Providence further argued that the three absent class members who already have appealed a denial of coverage for ABA therapy since the onset of this litigation would be prejudiced by class certification. *See* Dkt. 53. The Court rejects this argument as well. Class certification will have no effect on these three absent class members' ability to appeal their claims through the IRO process because Providence already has asserted both the Experimental Exclusion and the Developmental Disability Exclusion in denying their claims. *See* Dkt. 54.

### C.  Rule 23(b)(2)

Having satisfied the prerequisites of Federal Rule of Civil Procedure 23(a), Plaintiffs may

proceed on a class basis only if the class also meets the requirements of one of the subsections of

Federal Rule of Civil Procedure 23(b). Plaintiffs seek certification of the 101 Class under

Rule 23(b)(2).

#### 1.  Legal Standards

Rule 23(b)(2) permits class treatment when "the party opposing the class has acted or

refuses to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ.

P. 23(b)(2). "The fact that some class members may have suffered no injury or different injuries

from the challenged practice does not prevent the class from meeting the requirements of Rule

23(b)(2)." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009).

Additionally, the primary relief sought must be injunctive or declaratory. *Wang*, 2013

WL 4712728, at *4 (citing *Wal-Mart*, 131 S. Ct. at 2557-58). The principle undergirding this

requirement is that the "'indivisible nature of the injunctive or declaratory remedy'" justifies

certification because the "'conduct is such that it can be enjoined or declared unlawful only as to

all of the class members or as to none of them.'" *Wal-Mart*, 131 S. Ct. at 2557 (quoting Richard

A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132

(April 2009)). The Advisory Committee Notes explain that subdivision (b)(2) was intended to

reach situations where the final relief settles the "legality of the behavior with respect to the class

as a whole. . . ." Advisory Committee Notes to 1966 amendments to Rule 23(b)(2). Rule 23(b)(2)

does not authorize certification "when each individual class member would be entitled to a

*different* injunction or declaratory judgment against the defendant." *Wal-Mart*, 131 S. Ct. at

2557; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011) (same).

Moreover, claims for monetary relief that are "not incidental to the injunctive or declaratory relief" are ineligible for class certification under Rule 23(b)(2). *Wal-Mart*, 131 S. Ct. at 2557.

### 2. Discussion

Plaintiffs seek an injunction pursuant to Rule 23(b)(2), enjoining Providence's continued application of the Developmental Disability Exclusion in violation of Oregon law or ERISA. Plaintiffs contend that certification under Rule 23(b)(2) is appropriate because all class members belong to the Providence insured group plan, the group plan is subject to Oregon law and ERISA, and Providence applies the Developmental Disability Exclusion uniformly and without individualized consideration. Plaintiffs contend that if Providence's application of the Developmental Disability Exclusion is unlawful, then the conduct would be illegal as to all beneficiaries and the appropriate remedy would be to enjoin the alleged illegality as to all class members.

Providence raises two primary arguments against class certification under Rule 23(b)(2).[6] First, Providence argues that an injunction will provide "complete relief *only as to*" the named plaintiffs in this action. Def's Memo. at 31. Dkt. 44. Providence denied the ABA therapy claims as to the named plaintiffs only on the basis of the Developmental Disability Exclusion.

---

[6] At oral argument, Providence also argued that the 101 Class should be evaluated under Rule 23(c)(4) as an "issue class" rather than as an "injunctive class" under Rule 23(b)(2). Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Subdivision (c)(4) allows adjudication "as to particular issues only," such as permitting adjudication of a specific issue relating to liability. Advisory Committee Notes to 1966 amendments to Rule 23(c)(4). Plaintiffs have already bifurcated issues of liability and damages with the 101 Class and the 102 Class. If the Court were to issue declaratory and injunctive relief, then the class claim, as specified in the First Claim for Relief in the First Amended Class Action Allegation Complaint, would be resolved in its entirety. First Am. Compl. at ¶ 129-35. Dkt. 9. Although "[a] trial court can sever and try only certain issues" under Rule 23(c)(4), the Court finds that such an action is unnecessary in light of Plaintiffs' specific request for relief. *See In re N. Dist. of Cal., Daikon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982), *abrogated on other grounds in Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).

PAGE 17 – OPINION AND ORDER

Providence contends that it may resolve similar claims in the future by asserting all applicable plan exclusions, including denying claims as for ABA therapy services based on the Experimental Exclusion. *Id.*

Providence's attempt to distinguish the named plaintiffs and other putative class members is unavailing. An injunction would provide specific and meaningful relief to all named class members: no claim for ABA therapy services could be denied based on the Developmental Disability Exclusion. This remedy is squarely within the type of relief contemplated by Rule 23(b)(2). *See Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003) (certifying a class under Rule 23(b)(2) where the relief sought was a declaration that Xerox's actions were not in compliance with ERISA); *Z.D.*, 2012 WL 1977962, at *7 (certifying an injunctive class under Rule 23(b)(2) to determine whether a health plan met the requirements of Washington law and ERISA); *Zhu v. Fujitsu Group 401(K) Plan*, No. C-03-1148RMW, 2004 WL 3252573, at *7 (N.D. Cal. Mar. 3, 2004) (granting class certification under Rule 23(b)(2) where the plaintiffs sought declaratory relief that a 401(k) plan was illegal under ERISA). Each class member does not require a different injunction in order to resolve the legal question posed by the 101 Class. *Wal-Mart*, 131 S. Ct. at 2557. The fact that Providence may assert other defenses against some members of the class does not affect the availability of classwide relief under Rule 23(b)(2) to enjoin the assertion of one specific defense that, allegedly, is not legally permissible. *See Rodriguez*, 591 F.3d at 1125 (rejecting the argument that individual defenses can defeat Rule 23(b)(2) certification because the rule "does not require [a court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to them all").

PAGE 18 – OPINION AND ORDER

Second, Providence argues that its conduct towards the two named plaintiffs will not recur as to other putative class members in the future because Providence's policy has changed. In A.F.'s and A.P.'s case, Providence applied only the Developmental Disability Exclusion in denying coverage. Going forward, Providence intends on applying any applicable basis to deny ABA therapy, including both the Experimental Exclusion and the Developmental Disability Exclusion. The Developmental Disability Exclusion, however, will continue to be applied by Providence unless enjoined. As admitted by Providence, the issue raised by denying claims based on the Developmental Disability Exclusion is not moot as to other potential class members because Providence intends to continue its practice at least until January 1, 2015. Def's Memo. at 32. Providence's continued application of the Developmental Disability Exclusion distinguishes those cases where courts have denied class certification under Rule 23(b)(2) because a challenged policy had been abandoned entirely. *See, e.g.*, *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 466 (S.D. Cal. 2007) (denying certification under Rule 23(b)(2) in part because the defendant had ceased engaging in the challenged conduct); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *13 (N.D. Cal. 2009) (noting that certification under Rule 23(b)(2) can be difficult where there is a change in policy and the actual practice under the new policy is not factually established).

In short, although additional independent legal questions may be raised by Providence's stated policy to apply any potentially applicable exclusion to an ABA therapy claim, Plaintiffs may seek classwide relief to enjoin Providence from continuing to assert the Developmental Disability Exclusion. *See Lane*, 283 F.R.D. at 602 (explaining that injunctive relief that "focuses on defendants' conduct" and not on individual class members is consistent with Rule 23(b)(2) and *Wal-Mart*); *see also Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 588 (W.D. Wash. 2008)

PAGE 19 – OPINION AND ORDER

(certifying a class seeking "equitable relief in the form of an injunction prohibiting enforcement" of a plan's allegedly unlawful provisions under ERISA). Resolving the legal question posed by Plaintiffs provides complete relief as to the *specific* issue raised by the 101 Class, even if it does not ultimately address every class members' needs or issues.

The Court finds that Plaintiffs and all putative class members subscribe to Providence's group plan. The group plan contains an identical provision—the Developmental Disability Exclusion—that Providence concedes will continue to be applied to requests for ABA therapy going forward unless enjoined by this Court. All putative class members, therefore, have an interest in receiving an answer to the question of whether the Developmental Disability Exclusion is legal. Although there may be *additional* legal bases for Providence to deny any given claim for benefits, Providence's conduct regarding the Developmental Disability Exclusion "can be enjoined or declared unlawful only as to all the class members or as to none of them." *Wal-Mart*, 131 S. Ct. at 2557 (quotation marks and citation omitted). The 101 Class does not request an award of monetary damages. Furthermore, the relief requested does not require individualized injunctive relief. *See Wal-Mart*, 131 S. Ct. at 2557. Thus, certification under Rule 23(b)(2) is appropriate.

## CONCLUSION

The Court finds that Plaintiffs have satisfied all of the requirements of Rule 23(a) and Rule 23(b)(2). Accordingly, the Court GRANTS Plaintiffs' Motion to Certify the injunctive 101 Class. Dkt. 36. The class claim to be decided is whether Providence is violating ERISA or Oregon law by denying members coverage under the Developmental Disability Exclusion for ABA therapy services. The Court appoints Plaintiffs as class representatives, Stoll Stoll Berne Lokting & Shlacheter and Keith Dubanevich as lead class counsel, and Megan Glor as co-class counsel. The class is defined as follows:

PAGE 20 – OPINION AND ORDER

All individuals: (a) who are, or will be up to the date of class certification, beneficiaries of an ERISA health benefit plan (i) that is subject to Oregon law, (ii) that contains an Exclusion for services related to developmental disabilities, developmental delays, or learning disabilities, (iii) and that has been or will be issued for delivery, or renewed, on or after January 1, 2007 up to the date of class certification, in the state of Oregon, by Providence Health Plan or any affiliate of Providence Health Plan, its predecessors or successors and all subsidiaries or parent entities; (b) who either have been or will be diagnosed, up to the date of class certification, with any diagnosis code beginning with 299 contained in either the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR, Fourth Edition) or the International Classification of Diseases, Ninth Edition (ICD-9); and (c) who are not (i) a parent, subsidiary, affiliate, or control person of Defendant, (ii) an officer, director, agent, servant or employee of Defendant, (iii) the immediate family member of any such person, or (iv) a class member who has previously released a claim for benefits under a settlement agreement.

**IT IS SO ORDERED**.

DATED this 24th day of December, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge