# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| A.F., by and through his parents and guardians, Brenna Legaard and Scott Fournier; A.P., by and through his parents and guardians, Lucia Alonso and Luis Partida; S.W., by and through his parents and guardians, Kody Whipple and Jamie Whipple; S.S., by and through his parents and guardians, David Smith and Brooke Kennelley; I.F., by and through his parents and guardians, Bryan Fowler and Susan Rogers Fowler; and on behalf of similarly situated individuals, | Case No. 3:13-cv-00776-SI<br><br>**OPINION AND ORDER** |

Plaintiffs,

v.

**Providence Health Plan**,

Defendant.

Keith S. Dubanevich, Joshua L. Ross, and Nadine A. Gartner, STOLL STOLL BERNE LOKTING & SHLACHTER P.C., 209 S.W. Oak Street, Suite 500, Portland, OR 97204; Megan E. Glor, MEGAN E. GLOR ATTORNEYS AT LAW, 621 S.W. Morrison Street, Suite 900, Portland, OR 97205. Of Attorneys for Plaintiffs.

William F. Gary, Arden J. Olson, J. Aaron Landau, and Jens Schmidt, HARRANG LONG GARY RUDNICK P.C., 360 E. 10th Avenue, Suite 300, Eugene, OR 97401. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiffs A.F., A.P., S.W., S.S., and I.F (collectively, "Plaintiffs") bring this civil suit against Defendant Providence Health Plan ("Providence"). Plaintiffs are dependent-beneficiaries under group health insurance plans issued by Providence. Providence denied Plaintiffs ABA therapy coverage based on Providence's Developmental Disability Exclusion and denied S.W. and I.F. coverage on the additional basis of its Experimental Exclusion. On August 8, 2014, this Court ruled on cross-motions for summary judgment that Providence's Developmental Disability Exclusion violates the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act ("Federal Parity Act"), 29 U.S.C. § 1185a, and Oregon law and is therefore prohibited under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.

Plaintiffs' second amended class action complaint alleges three claims under ERISA: (1) injunctive relief under 29 U.S.C. § 1132(a)(3), prohibiting Providence from continuing to process and pay claims under its insured Plans in a manner that is inconsistent with the Federal Parity Act and Oregon law and requiring Providence to provide the class with corrective notice and information, on behalf of all named Plaintiffs and all members of the class ("First Claim");[1] (2) equitable relief under 29 U.S.C. § 1132(a)(3) sufficient to redress Providence's violations of its fiduciary duty, on behalf of all named Plaintiffs ("Second Claim"); and (3) recovery of benefits due and declaration of future benefits under 29 U.S.C. § 1132(a)(1)(B) on behalf of named Plaintiffs A.F., A.P., S.W., and I.F. ("Third Claim").[2] Plaintiffs move for summary judgment on their Third Claim, and Providence moves to dismiss Plaintiffs' Second Claim. The

---

[1] On December 24, 2013, the Court certified an injunctive class under Fed. R. Civ. P. 23(b)(2). Dkt. 56.

[2] Named Plaintiff S.S. does not seek relief in the Third Claim.

Court considers both motions in this Opinion and Order. For the reasons that follow, Plaintiffs'

motion for summary judgment is granted in part and denied in part, and Providence's motion to

dismiss is denied.

## STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th

Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of

the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

### B. Motion to Dismiss

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,

Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

Plaintiffs are insured as dependent-beneficiaries under group health plans in Oregon provided by Providence. Plaintiffs have been diagnosed with Autism Spectrum Disorder and prescribed ABA therapy by their treating physicians. Autism Spectrum Disorder is a pervasive developmental disorder that begins to appear during early childhood and is characterized by impairments in communication and social skills, severely restricted interests, and repetitive behavior. ABA therapy is an intensive behavior therapy that, among other things, measures and evaluates observable behaviors. Evidence shows that ABA therapy may help autistic children

with cognitive function, language skills, and adaptive behavior. Evidence also suggests that the benefits of ABA are significantly greater with early intervention for young autistic children.

Between January 2007 and January 2014, Providence denied requests for coverage for ABA therapy on the basis that its health plans exclude mental health services "related to developmental disabilities, developmental delays, or learning disabilities" from coverage (the "Developmental Disability Exclusion"). Dkt. 41-4 at 8. Providence did so regardless of whether the member sought reimbursement for payments for ABA therapy or pre-authorization of coverage. Providence also denied plan beneficiaries ABA therapy coverage on the basis that it was experimental and investigational (the "Experimental Exclusion"). These Exclusions are listed in the member handbook given to all members that describe the governing terms of their insurance plans.

Providence issues two types of plans: "self-insured" group plans and "insured" group plans. Under a "self-insured" plan, the employer carries the risk of coverage. Under an "insured" plan, Providence carries the risk of coverage. Both the "self-insured" and "insured" plans are subject to Oregon law and ERISA. Plaintiffs and all class members are members of "insured" group plans. Providence is both the administrator of these plans and a fiduciary to all plan members. As such, Providence is obligated to apply exclusions consistently and uniformly.

On May 8, 2013, A.P. and A.F. filed this class action lawsuit alleging that Providence's denial of ABA therapy coverage violated federal and state law. A.F. and A.P. moved to certify an injunctive class, which the Court granted. On August 8, 2014, the Court held that Providence's use of the Developmental Disability Exclusion violated the Federal Parity Act; the Oregon Mental Health Parity Act, Or. Rev. Stat. ("ORS") § 743A.168; and the Oregon

Mandatory Coverage for Minors with Pervasive Developmental Disorders Act, ORS § 743A.190; and was therefore prohibited under ERISA.[3]

On June 29, 2015, A.F. and A.P. filed a second amended class action complaint, naming S.W., S.S., and I.F. as additional plaintiffs. Plaintiffs A.F., A.P., S.W., and I.F. move for summary judgment on their Third Claim, seeking recovery of benefits due and a declaration of future benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B) ("Section 1132(a)(1)(B)"). Providence moves to dismiss Plaintiffs' Second Claim, which seeks equitable relief under ERISA, 29 U.S.C. § 1132(a)(3) ("Section 1132(a)(3)"). The Court sets forth the background facts relevant to each motion separately below.

## A. Motion for Summary Judgment (Third Claim)

Plaintiffs A.P., A.F., S.W., and I.F. all incurred out-of-pocket expenses for ABA therapy before January 2014.[4] In 2012, Providence denied A.P. and A.F.'s requests for ABA therapy coverage. A.P. and A.F. both submitted first-level appeals, which Providence denied. Dkt. 27-4 at 1; Dkt. 62-4 at 1. On February 5, 2013, A.P. submitted a second first-level appeal, which Providence denied later that month. Dkt. 27-1 at 1; Dkt. 27-16 at 1. On March 11, 2013, A.F.

---

[3] The Federal Parity Act requires that for group health plans, financial requirements and treatment limitations to mental health benefits must be "no more restrictive" than the predominant requirements or limitations applied to substantially all medical and surgical benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). The Oregon Mental Health Parity Act requires parity among the services and treatment covered for medical conditions and the services and treatment covered for mental health and chemical dependency related conditions. ORS § 743A.168. The Oregon Mandatory Coverage for Minors with Pervasive Developmental Disorders Act requires health benefit plans to cover treatment of pervasive developmental disorders for children. ORS § 743A.190.

[4] From September 2011 through July 2012, A.P. paid $3,675.00 for ABA therapy; from June 2012 through May 2013, A.F. paid $3,512.50 for ABA therapy; from May 2013 through September 2013, S.W. paid $5,087.00 for ABA therapy; and from July 2012 through December 2013, I.F. paid $12,912.00 for ABA therapy. Dkt. 106-1. Each of these Plaintiffs seek full reimbursement for these expenses in their motion for summary judgment except for A.P., who seeks $1,740.00 in relief. Dkt. 105 at 6; Dkt. 125 at 2.

PAGE 6 – OPINION AND ORDER

filed a second-level appeal, which Providence also denied. Dkt. 62-5; Dkt. 62-6. Providence

denied each of A.P. and A.F.'s appeals under the Developmental Disability Exclusion.

Until 2014, Providence also denied ABA therapy coverage under the Experimental

Exclusion. For example, Providence denied a request for pre-authorization submitted by A.P. on

April 12, 2012, stating that ABA therapy was not covered under A.P.'s plan because it is

"considered experimental and investigational." Dkt. 27-2 at 1. On appeal, Providence "decided

neither to overturn nor to affirm the decision on that basis, reserving Providence's rights under

that policy but focusing on a different issue," and denied coverage based on the Developmental

Disability Exclusion. Dkt. 27-4 at 1.

Claims denied under the Experimental Exclusion were subject to review by an

independent review organization ("IRO"). The only time that Providence ever approved a claim

and paid for ABA services before January 2014 was when it was obligated to do so by an IRO

that overturned a denial of benefits. Dkt. 119-2 at 13. Mark Jenson, Providence's Senior Director

of Service Operations, testified that Providence eventually stopped using the Experimental

Exclusion to deny ABA therapy coverage in order to avoid IRO review. Dkt. 119-1 at 5. By

denying claims solely on the basis of the Developmental Disability Exclusion, the decision

would not be subject to IRO review. *Id.* at 9.

Jensen also testified that after A.P. and A.F. filed this lawsuit in May 2013, Providence

again began denying claims for ABA therapy on the dual bases of its Experimental Exclusion

and its Developmental Disability Exclusion, again allowing appeals to be reviewed by an IRO.

*Id.* at 13. Thus, in December 2013, Providence denied S.W. and I.F.'s first-level appeals under

both the Experimental Exclusion and the Developmental Disability Exclusion. Dkt. 109-2 at 6-7;

Dkt. 110-2 at 8-11.

On January 2, 2014, S.W. and I.F. each submitted a second-level appeal. Dkt. 109-2 at 13; Dkt. 110-2 at 15. On February 14, 2014, Providence notified S.W. and I.F. that it was reversing its denial of ABA therapy coverage in their cases retroactive to January 1, 2014, and changing its policy regarding ABA therapy coverage for children with autism. Dkt. 109-2 at 27-29; Dkt. 110-2 at 28-30. Two events led to Providence's decision. First, in 2013, the Oregon Legislature passed Oregon Senate Bill 365 ("SB 365"), which requires insurance companies in Oregon to provide ABA therapy coverage to children eight years of age and younger for up to 25 hours per week, effective January 1, 2016. In fall 2013, Providence decided to implement SB 365 sooner than required, on January 1, 2015. Second, on January 15, 2014, the United States Department of Health and Human Services Agency for Healthcare Research and Quality ("AHRQ") issued a draft report finding that considerable evidence suggests that early behavioral intervention based upon the principles of ABA therapy significantly improved the development of children with autism spectrum disorder.

Based upon the AHRQ draft report and because Providence had already decided to start covering ABA therapy beginning in 2015, Providence approved ABA therapy for individuals who met the standard of SB 365 retroactive to January 1, 2014. Providence concluded that ABA therapy was no longer experimental and investigational with respect to children eight years of age and younger and modified its application of the Developmental Disability Exclusion to permit coverage of ABA therapy consistent with SB 365's standards. Because S.W. and I.F. were both younger than eight at the time that Providence made this determination, Providence reversed its denial of ABA therapy coverage "in its entirety" in their cases. Dkt. 109-2 at 29; Dkt. 110-2 at 30.

**B.  Motion to Dismiss (Second Claim)**

In the second amended class action complaint, Plaintiffs allege that Providence established and carried out a deliberate company-wide policy to deny all claims for ABA treatment in violation of federal and state law, thus dissuading parents from seeking treatment for their children. Dkt. 102 ¶¶ 8-9. Plaintiffs assert that Providence has advertised and represented that its health plans include coverage for mental health services and that autism is a covered mental health diagnosis under the plans. *Id.* ¶¶ 58-63. Additionally, Providence represented that its plans "'will cover medical services necessitated by autism.'" *Id.* ¶ 61. Plaintiffs assert that by denying coverage for ABA therapy, "Providence systemically and uniformly failed to properly process claims and administer the Plans it insured and administered." *Id.* ¶ 7. Thus, Plaintiffs allege that the plans "fail[ed] to receive all of the benefits of the coverage which has been purchased from Providence for the purpose of providing benefits to the beneficiaries, and the beneficiaries [did] not receive the benefits they [were] entitled to under the Plans." *Id.*

Plaintiffs allege that Providence initially denied claims for ABA therapy in bad faith on the basis that ABA is experimental or investigative "despite a multitude of studies showing the efficacy of ABA treatment, [and] despite repeated rulings by State Insurance Commissioners that ABA is a reasonable, safe, necessary, and mainstream treatment for children with autism." *Id.* ¶ 130. Additionally, Providence continued to deny ABA therapy coverage under the Experimental Exclusion even after a January 5, 2010 decision by a court in this District that held "'that the weight of the evidence demonstrates that ABA therapy is firmly supported by decades of research and application and is a well-established treatment modality of autism . . . . It is not an experimental or investigational procedure.'" *Id.* ¶ 39 (quoting *McHenry v. PacificSource Health Plans*, 679 F. Supp. 2d 1226, 1237 (D. Or. 2010)).

Plaintiffs allege that Providence "failed to provide any unbiased explanation or evidence in support of its claim that ABA treatment is experimental or investigative." *Id.* ¶ 31. Instead, in finding that ABA therapy is experimental or investigational, Plaintiffs assert, Providence wrongfully relied upon a 2010 report from an independent organization called Hayes, even though the report contains a disclaimer stating that it "'is intended to provide research assistance and general information only. It is not intended to be used as the sole basis for determining coverage policy.'" *Id.*

After medical doctors conducting IRO reviews ruled that ABA therapy was not experimental or investigative, Providence began to deny claims based upon the Developmental Disability Exclusion. *Id.* ¶¶ 132, 154. Plaintiffs assert that Providence knew that autistic children's parents would no longer be entitled to IRO review and would instead have to hire an attorney to litigate the Developmental Disability Exclusion. *Id.* ¶ 132. Plaintiffs allege that Providence followed this course of conduct in order to discourage parents from pursuing their claims. *Id.* Plaintiffs assert that Providence additionally knew that litigating the Developmental Disability Exclusion would be a slow process and that any order would come long after an IRO would have issued a decision, thereby shortening the time period for which Providence would have to provide coverage for the treatment. *Id.*

Plaintiffs also allege that in October 2013, Providence decided that because A.F. and A.P.'s parents had initiated litigation, Providence would resort to using the Experimental Exclusion in conjunction with the Developmental Disability Exclusion in a deliberate move to again trigger IRO review. *Id.* ¶ 137. At about this same time, Providence's medical staff evaluated the literature regarding the efficacy of ABA therapy and concluded that ABA was not experimental or investigational. *Id.* ¶ 138. Plaintiffs allege that despite coming to this conclusion

in the fall of 2013, Providence continued to deny ABA therapy coverage on the basis that it was experimental and investigational until January 2014. Providence did not notify Plaintiffs that it would approve coverage for ABA therapy until February 2014.

Plaintiffs also allege that A.F., A.P., S.W., and I.F. were able to obtain only a fraction of the ABA therapy they needed, and S.S. was unable to obtain any ABA therapy at all, because of Providence's improper denial of coverage for ABA therapy before 2014. Plaintiffs assert that they have been forced to pay out-of-pocket for treatment and forego necessary care because they and their plans have not received all of the benefits owed to them by Providence. *Id.* ¶ 122. Plaintiffs state that because ABA therapy is especially helpful for children who receive early intervention and the positive benefits of ABA therapy are less likely to occur if a child does not receive early intervention, they have suffered permanent and irreparable harm by not receiving ABA therapy at a time when it would have been most beneficial to them. *Id.* ¶¶ 30-32. Plaintiffs additionally allege that Providence wrongfully and inequitable retained and reinvested funds that it should have paid for ABA therapy coverage and thus profited by denying Plaintiffs the care they needed and were lawfully entitled to under their plans. *Id.* ¶ 156.

## DISCUSSION

ERISA protects employee pensions and other benefits by providing insurance to protect pension plans, specifying certain plan characteristics, and by establishing general fiduciary duties applicable to the management of both pension and nonpension benefits. *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). In 29 U.S.C. § 1132(a), Congress provided plan participants and beneficiaries with civil enforcement provisions to remedy the improper processing of a claim for benefits. *Gabriel v. Ala. Pension Fund*, 773 F.3d 945, 953 (9th Cir. 2014). Under Section 1132(a)(1)(B), a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to

clarify his rights to future benefits under the terms of the plan." Under Section 1132(a)(3), a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan[.]"

The Court first addresses Plaintiffs' motion for summary judgment on their Third Claim, brought under Section 1132(a)(1)(B). The Court then discusses Providence's motion to dismiss Plaintiffs' Second Claim, brought under Section 1132(a)(3).

## A.  Motion for Summary Judgment

Plaintiffs' Third Claim seeks recovery of benefits due, plus prejudgment interest, and a declaration of future benefits on behalf of Plaintiffs A.F., A.P., S.W., and I.F., pursuant to Section 1132(a)(1)(B).[5] Under Section 1132(a)(1)(B), a beneficiary may seek reimbursement for out-of-pocket expenses for medical treatment following a wrongful claim denial. *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 211-12 (2004). Plaintiffs argue that they are entitled to reimbursement for out-of-pocket expenses for ABA therapy because of this Court's prior ruling that Providence's Developmental Disability Exclusion violated ERISA, the Federal Parity Act, and Oregon law. S.W. and I.F. additionally argue that they are entitled to reimbursement because Providence reversed its denial of ABA therapy coverage on the basis of the Experimental Exclusion in their cases.

Providence opposes Plaintiffs' motion for summary judgment to the extent that it relies upon the Court's prior ruling that Providence's use of the Developmental Disability Exclusion is unlawful, which Providence asserts was error. Dkt. 113 at 2. Providence has not filed a motion

---

[5] S.S. does not join in Plaintiffs' Third Claim because S.S. did not incur any out-of-pocket expenses for ABA therapy.

for reconsideration of the Court's August 8, 2014 Opinion and Order (Dkt. 91), so Providence's assertion that the Court has erred need not be addressed. Providence's argument is preserved for appeal. In addition to Providence's continuing objection to the Court's previous holding, Providence does not oppose A.F.'s motion for summary judgment. Thus, the Court grants A.F.'s motion for summary judgment, in which A.F. seeks $3,512.50 in relief. Dkt. 105 at 6.

Providence, however, opposes A.P., S.W., and I.F.'s motion for summary judgment. Providence argues that A.P.'s failure to exhaust all available internal remedies precludes review by the Court and that S.W. and I.F. are not entitled to full summary judgment in their favor because they improperly seek reimbursement for services for which they never submitted claims. Each argument is addressed in turn.

### 1. A.P.

Although ERISA does not require a participant or beneficiary to exhaust administrative remedies before bringing an action under Section 1132(a), the Ninth Circuit has "consistently held that before bringing suit under [Section 1132(a)], an ERISA plaintiff claiming a denial of benefits 'must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.'" *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)). A plaintiff's demonstration of the futility of a plan's internal review procedures, however, constitutes an exception to the exhaustion requirement. *Id.* at 626-27. The futility exception is "designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail." *Diaz v. United Agr. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995). "[B]are assertions of futility" are not sufficient to invoke the exception, *id.*, and "a Plan's refusal to pay does not, by itself, show futility." *Foster v. BlueShield of Ca.*, 2009 WL 1586039, at *5 (C.D. Cal. June 3, 2009).

A.P.'s plan provided for two levels of internal review. Dkt. 27-16 at 3-4. Although A.P. filed two first-level appeals of Providence's denial of his claims, each of which were denied on the basis of the Developmental Disability Exclusion, A.P. did not file any second-level appeals. A.P. asserts that any second-level appeal would have been futile. The Court agrees, for three reasons.

First, A.P. can demonstrate futility because A.P. sought coverage for services received in 2012 and 2013, and Providence has not identified any instance in which it willingly paid for ABA therapy before January 1, 2014. *See Potter v. Blue Cross Blue Shield*, 2011 WL 9378789, at *3 (E.D. Mich. July 14, 2011) (finding that a plaintiff successfully demonstrated futility where the defendant "has not identified one instance in which it has voluntarily paid benefits for ABA treatment"). Mark Jensen, Providence's Chief Service Operation Officer, testified on behalf of Providence in 2013 that Providence always denies claims for ABA therapy coverage on the basis of the Developmental Disability Exclusion. Dkt. 63-1 at 3, 14-15. This was because Providence interpreted Autism Spectrum Disorder as a developmental disability or involving developmental delay in all cases in which a member sought ABA treatment. *Id.* at 14; *see also* Dkt. 119-2 at 7-8 (admitting that Providence applied the Developmental Disability Exclusion "across the board as to all of its members who have autism"). The only time that Providence knowingly paid a claim for ABA therapy was when it was obligated to do so by an IRO. Dkt. 119-2 at 13.

Second, A.P. can demonstrate futility by pointing to A.F., "a similarly situated plaintiff who exhausted administrative remedies to no avail." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 1110, 1179 (C.D. Cal. 2015) (quotation marks omitted). The basis for Providence's denial of coverage for A.F.'s case was exactly the same as the basis for Providence's denial of coverage in A.P.'s case. Dkt. 119-2 at 10. Providence denied A.F.'s

second-level appeal on April 30, 2013, which is later than A.P. would have received a decision

from a second-level appeal of his February 26, 2013 denial. *See* Dkt. 27-16 at 3 ("All grievances

and appeals . . . [will be] resolved within 30 days, or sooner depending on the clinical urgency.").

Providence denied A.F.'s second-level appeal after it would have considered A.P.'s appeal, thus

demonstrating that any second-level appeal by A.P. would also have been denied.

Third, A.P. can demonstrate futility because Jensen testified on behalf of Providence that

A.F. and A.P. "had exhausted all of their internal remedies that the plan offered. . . . [M]y belief

would be, if they wanted to take a next step, it would be to have to file a claim in court."

Dkt. 119-1 at 4, 12. Thus, the Court finds that A.P. has successfully demonstrated the futility of

any second-level appeal. A.P.'s motion for summary judgment, in which A.P. seeks $1,740 in

relief, is granted. Dkt. 125 at 2.

### 2.  S.W. and I.F.

Providence initially argued that S.W. and I.F. were not entitled to summary judgment in

their favor because Providence's denial of their claims under the Experimental Exclusion was a

lawful exercise of its discretionary authority under their plans.[6] At oral argument, S.W. and I.F.

argued that Providence waived the right to oppose I.F. and S.W.'s motions for summary

judgment on the basis of the Experimental Exclusion because in its February 14, 2014 letters to

S.W. and I.F., Providence reversed its previous denials of coverage on that basis. *See* Dkt. 109

at 29; Dkt. 110-2 at 30 ("[T]he denial on the basis that ABA therapy is 'experimental and

investigational' is therefore reversed *in its entirety* in [your son's] case. We believe that this

---

[6] S.W. and I.F.'s plans contained a discretionary clause as follows: "The Employer gives Providence Health Plan, acting for the 'Plan Administrator,' the discretionary authority to interpret the terms of the related ERISA plan, to make factual determinations relevant to benefit determinations and to otherwise decide all questions regarding eligibility for benefits under the plan." Dkt. 114-1 at 5.

reversal *completely resolves* your appeal[.]") (emphasis added). After supplemental briefing on the issue, Providence no longer opposes S.W. and I.F.'s motion for summary judgment for the claims that S.W. and I.F. timely submitted to Providence and that were at issue in their administrative appeal. Dkt. 127.

Providence now argues, however, that S.W. and I.F. seek additional reimbursement for ABA therapy services for which they never timely submitted a claim to Providence. Specifically, Providence asserts that S.W. only submitted claims for reimbursement for expenses totaling $2,264, and that I.F. only submitted claims for reimbursement for expenses totaling $5,357.[7] Providence argues that for the remainder of the expenses for which S.W. and I.F. seek reimbursement, S.W. and I.F. have put forth no evidence that they ever submitted benefit claims to Providence in the first place. Section 1132(a)(1)(B) entitles a plaintiff to "benefits due to him under the terms of the plan." S.W. and I.F.'s plans did not entitle them to compensation for services for which no claim was timely made.[8] *See also Hamann v. Independence Blue Cross*, 543 Fed. App'x 355, 357 (5th Cir. 2013) ("While § 502(a)(1)(B) allows beneficiaries and plan participants to recover benefits to which they are entitled, it does not provide that beneficiaries can recover benefits they did not, and now cannot, receive.").

### a.   S.W.'s claims

Providence asserts that it only received claims for coverage for ABA therapy that S.W. received from August 1, 2013 through October 31, 2013.[9] Dkt. 127-1 at 40-41. On November 27,

---

[7] In Plaintiffs' motion for summary judgment, S.W. seeks $5,087 in relief and I.F. seeks $12,912 in relief.

[8] Under the plans applicable to each Plaintiff in this action, Providence "will make no payments for claims received more than 365 days after the date of Service." Dkt. 27-1 at 52.

[9] Providence's response to Plaintiffs' supplemental brief states that S.W. only timely submitted claims for expenses incurred from May through July 2013. Dkt. 127 at 6. The records

2013, however, Providence confirmed receipt of S.W.'s first-level appeal, stating: "Thank you for contacting Providence Health Plans with your concerns regarding the claims submitted for the services your son . . . received at Building Bridges beginning May 15, 2013 through July 31, 2013." Dkt. 130-2 at 1. Additionally, S.W. has produced explanations of benefits for services received on those dates. Dkt. 131-1 at 1-3. Thus, Providence's argument that it did not timely receive claims for ABA therapy treatment that S.W. received from May 2013 through July 2013 is unavailing. From May 15, 2013 through October 31, 2013, S.W. incurred $3,703 in out-of-pocket expenses for ABA therapy. Dkt. 127-1 at 40. S.W. has produced evidence that he timely submitted claims for reimbursement for these expenses.

S.W. also asserts that he submitted claims to Providence for ABA therapy services received from November 2, 2013 through December 31, 2013, totaling $1,384. S.W. has provided the Court with completed claim forms for those dates as well as a declaration stating that the claim forms were timely submitted. Dkt. 131. S.W. has not, however, produced any evidence that Providence ever received these claim forms. Thus, a triable issue of fact exists as to whether these are "benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). The Court grants S.W.'s motion for summary judgment in part, in the amount of $3,703. S.W.'s claim for the balance sought of $1,384 must be tried, if that portion of the dispute is not otherwise resolved.[10]

---

Providence submitted in support of their response demonstrate, however, that Providence timely received claims for S.W.'s expenses incurred from August 2013 through October 2013, totaling $2,264. Dkt. 127-1 at 40-41.

[10] The Court notes that the Ninth Circuit applies the mailbox rule to ERISA plans where the receipt of a document is a factual issue in dispute. *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 962 (9th Cir. 2001). "The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Id.* at 961. The Ninth Circuit also has held that "a sworn statement is credible evidence of mailing for purposes of the mailbox rule." *Id.* at 964.

**b. I.F.'s claims**

Providence asserts that it only received claims for coverage for ABA therapy I.F. received from April 22, 2013 through December 2013.[11] Dkt. 127-1 at 38-39. Providence, however, sent I.F. several explanations of benefits reflecting its receipt of timely claims submissions for ABA therapy services provided from September 1, 2012 through February 25, 2013. Dkt. 130-1. Thus, Providence's argument that it did not timely receive claims for ABA therapy treatment that I.F. received from September 1, 2012 through February 25, 2013 is unavailing. From September 1, 2012 through February 25, 2013, I.F. incurred $4,828 in out-of-pocket expenses for ABA therapy. Dkt. 127-1 at 38. From April 22, 2013 through January 2014, I.F. incurred an additional $5,357 in out-of-pocket expenses for ABA treatment. I.F. has produced evidence that he timely submitted claims for reimbursement for these expenses.

I.F. also asserts that he submitted claims to Providence for additional ABA therapy services received from July 5, 2012 through April 19, 2013, as well as on May 6, 13, and 20, 2013. I.F. provided the Court with completed claim forms for those dates as well as a declaration stating that the claim forms were timely submitted. Dkt. 132. I.F. has not, however, produced any evidence that Providence ever received these claim forms. Thus, a triable issue of fact exists as to whether these are "benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

---

Because S.W. did not raise the mailbox rule, Providence did not have the opportunity to rebut the presumption. If S.W. would like to file a new motion for summary judgment on this remaining point, S.W. has leave to do so. If, however, a triable issue of fact persists, the parties are directed to contact the Courtroom Deputy to set a bifurcated trial date on this issue, under Fed. R. Civ. P. 42(b).

[11] Providence's response to Plaintiffs' supplemental brief states that I.F. only timely submitted claims for expenses incurred from September 2012 through February 2013. Dkt. 127 at 6. The records Providence submitted in support of their response demonstrate, however, that Providence timely received claims for I.F.'s expenses incurred from April 22, 2013 through December 23, 2013, totaling $5,357. Dkt. 127-1 at 38-39. Providence's records do not show that it received claims for services rendered on May 6, 13, and 20, 2013. Dkt. 127-1 at 38.

The Court grants I.F.'s motion for summary judgment in part, in the amount of $10,185. I.F.'s claim for the balance sought of $2,727 must be tried, if that portion of the dispute is not otherwise resolved.[12]

## B.  Motion to Dismiss

Plaintiffs' Second Claim seeks "appropriate equitable relief" under Section 1132(a)(3) including, but not limited to, restoration of funds allegedly improperly in Providence's possession as a result of Providence's improper denial of claims for ABA therapy to Plaintiffs, unjust enrichment, disgorgement, restitution, reparation, surcharge, and estoppel. In the alternative, Plaintiffs seek an amount equal to the amount that Providence should have paid for ABA therapy. Plaintiffs allege that Providence carried out a deliberate company-wide policy to deny all claims for ABA therapy treatment for autistic children in violation of federal and state law, thus dissuading and preventing parents from seeking treatment for their children at the time during which it would be most beneficial to them. Plaintiffs also allege that Providence was unjustly enriched by its arbitrary and unlawful application of the Developmental Disability Exclusion and the Experimental Exclusion.

Under Section 1132(a)(3), a plaintiff must prove "both: (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan;" and "(2) that the relief sought is 'appropriate equitable relief.'" *Gabriel*, 773 F.3d at 954. "A claim fails if the plaintiff cannot establish the second prong . . . regardless of whether 'a remediable wrong has been alleged.'" *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)). Providence does not dispute that Plaintiffs have adequately alleged a breach of fiduciary duty, which is a remediable wrong; rather, Providence moves to dismiss Plaintiffs'

---

[12] The Court treats the issue regarding I.F.'s claim for the remaining balance the same as S.W.'s claim for the remaining balance. *See* n.10, *supra*.

Section 1132(a)(3) claim on the grounds that the relief Plaintiffs seek is not "appropriate equitable relief" within the meaning of this subsection.

The Supreme Court has interpreted the term "appropriate equitable relief" to refer to "those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity." *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011) (quotation marks omitted). In *Mertens v. Hewitt Associates*, the Supreme Court denied recovery under Section 1132(a)(3) to plaintiffs who sought money damages to remedy alleged breaches of fiduciary duty by a third party, explaining that compensatory damages are "the classic form of *legal* relief." 508 U.S. at 255, 262-63 (emphasis in original). In contrast, the Court held in *Varity Corp. v. Howe* that reinstatement was an appropriate equitable remedy under Section 1132(a)(3) for beneficiaries who were deceived into withdrawing from their plan and forfeiting benefits. 516 U.S. at 482.

Providence asserts that Plaintiffs are, in essence, seeking compensatory damages for Providence's allegedly wrongful denial of coverage for ABA therapy and that such an award is not an equitable remedy within the meaning of Section 1132(a)(3). Providence makes two interrelated arguments in support of this assertion. First, Providence argues that the Ninth Circuit's ruling in *Bast v. Prudential Insurance Co. of America*, 150 F.3d 1003 (9th Cir. 1998), illustrates the principle that a plaintiff may not recover money damages under Section 1132(a)(3) for a benefit he or she never received and controls the outcome of this case.

Second, Providence argues that the *Bast* decision is representative of the fact that in crafting ERISA, Congress made a deliberate policy choice to limit the remedy for the wrongful denial of benefits to a claim brought under Section 1132(a)(1)(B). "Courts may not 'infer [additional] causes of action in the ERISA context, since that statute's carefully crafted and

detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Gabriel*, 773 F.3d at 954 (quoting *Mertens*, 508 U.S. at 254) (alteration and emphasis in original). Thus, "[u]nder ERISA, the issue is not whether the statute bars a particular cause of action, but rather 'whether the statute affirmatively *authorizes* such a suit.'" *Id.* (quoting *Mertens*, 508 U.S. at 255 n.5) (emphasis in original). Providence argues that Plaintiffs' Second Claim essentially repackages their Third Claim under Section 1132(a)(1)(B) for the wrongful denial of benefits, and that to allow Plaintiffs to recover under Section 1132(a)(3) for injury resulting from the improper processing of benefits would be inappropriate. The Court addresses each of Providence's arguments in turn.

### 1.  *Bast v. Prudential Insurance Co. of America*

Because the Ninth Circuit's decision in *Bast* relied heavily upon the Supreme Court's opinion in *Mertens*, the Court first discusses the latter case. In *Mertens*, the petitioners represented a class of former steel corporation employees who participated in the corporation's retirement plan. 508 U.S. at 250. The nonfiduciary respondent was the plan's actuary when the corporation began to phase out some of its operations, which caused a large number of plan participants to retire. *Id.* at 250-51. The respondent failed to change the plan's actuarial assumptions to reflect the additional costs caused by the retirements, resulting in the corporation's inadequate funding of the plan and, ultimately, the plan's termination. *Id.* at 250. The termination of the plan left the petitioners only with the benefits guaranteed them by ERISA, which were lower than the pensions due them under the plan. *Id.* The petitioners sought money damages against the respondent and alleged that it knowingly participated in the fiduciary's breach of duty. *Id.* at 250-51. The Court considered "whether ERISA authorizes suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty." *Id.* at 251.

PAGE 21 – OPINION AND ORDER

The Court began by noting that "while ERISA contains various provisions that can be read as imposing obligations upon nonfiduciaries, including actuaries, no provision explicitly requires them to avoid participation (knowing or unknowing) in a fiduciary's breach of fiduciary duty." *Id.* at 253-54 (footnote omitted). The respondent, however, did not rely upon an argument that the respondent's alleged action, as a nonfiduciary, did not constitute a breach of fiduciary duty. *Id.* at 254. Thus, the Court "acknowledge[d] the oddity of resolving a dispute over remedies where it is unclear that a remediable wrong has been alleged," but proceeded to determine whether petitioners could recover monetary relief against the nonfiduciary under Section 1132(a)(3). *Id.* at 254-55.

The Court noted that petitioners did not "seek a remedy traditionally viewed as 'equitable,' such as injunction or restitution." *Id.* at 255. Rather, the Court stated, what the petitioners "in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of *legal* relief." *Id.* (emphasis in original). The Court acknowledged that at common law, beneficiaries could seek monetary damages against a trustee for a breach of trust, as well as against third parties who knowingly participated in the trustee's breach. *Id.* at 256. The Court reasoned, however, that because "*all* relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to 'equitable relief' in the sense of 'whatever relief a common-law court of equity could provide in such a case' would limit the relief *not at all*." *Id.* at 257 (emphasis in original). This would, the Court explained, "render the modifier superfluous," as well as "give the term a different meaning there than it bears elsewhere in ERISA." *Id.* at 258.

Five years later, the Ninth Circuit considered in *Bast* whether the plaintiffs could recover for an insurance plan administrator's alleged bad faith denial of coverage for a potentially life-saving procedure. 150 F.3d at 1005-06. In 1991, Prudential denied Rhonda Bast coverage for a bone marrow transplant. *Id.* at 1005. Bast challenged the denial, and upon review, Prudential determined that the transplant was covered by the plan. *Id.* at 1005-06. At that point, however, Bast was no longer medically eligible for the life-saving procedure. *Id.* at 1006. After her death, Bast's husband and minor son filed suit against Prudential, seeking, in part, equitable restitution under Section 1132(a)(3). *Id.* at 1010. The district court stated that "the only conceivable remedy that [the district court] could forsee would be the cost of the procedure which the plaintiff was not given at a time when it would have hopefully provided some relief for her," a remedy that the court considered equivalent to the legal recovery of cost. *Id.* The Ninth Circuit agreed with this reasoning and upheld the district court's conclusion that providing the plaintiffs with restitution would be the same as awarding them money damages, which, under *Mertens*, was not an appropriate equitable remedy under Section 1132(a)(3). *Id.* ("The Supreme Court [in *Mertens*] held that the language 'appropriate equitable relief' does not authorize suits for money damages for breach of fiduciary duty.").

Plaintiffs respond that the Ninth Circuit's ruling in *Bast* does not control this case after the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), a case that has "significantly altered the understanding of equitable relief available under section 1132(a)(3)." *Kenseth v. Dean Health Plan*, 722 F.3d 869, 876 (7th Cir. 2013). In *CIGNA*, the Supreme Court indicated that a plaintiff could recover "an award of make-whole relief" under Section 1132(a)(3) for a breach of fiduciary duty where the defendant is analogous to a trustee. 563 U.S. at 442. Plaintiffs argue that *CIGNA* effectively overruled the *Bast* court's interpretation

of "appropriate equitable relief" and that they thus may recover for such relief in their Second Claim.

In *CIGNA*, the respondents were beneficiaries of a pension plan administered by CIGNA Corporation. *Id.* at 424. In 1998, CIGNA changed the nature of the plan such that its beneficiaries received less generous benefits in certain respects. *Id.* The respondents challenged CIGNA's adoption of the new plan, claiming that CIGNA failed to give them proper notice of the changes. *Id.* The district court held that the disclosures made by CIGNA were insufficient and that CIGNA violated its obligations under ERISA. *Id.* at 425. The district court then reformed the new plan and ordered CIGNA to pay benefits accordingly, citing Section 1132(a)(1)(B) as its legal authority. *Id.* The district court implied that it would have based its relief upon Section 1132(a)(3) in part, but for the fact that Supreme Court case law, including *Mertens*, had narrowed the application of the term "appropriate equitable relief." *Id.* at 438. The Second Circuit affirmed. *Id.* at 434-35.

The Supreme Court, however, vacated and remanded, holding that Section 1132(a)(1)(B) did not authorize the district court to reform CIGNA's plan. *Id.* at 445, 438. In dictum, however, the Court stated that the district court's reformation of the plan and order for CIGNA to pay benefits closely resembled three traditional equitable remedies: (1) contract reformation; (2) equitable estoppel; and (3) surcharge. *Id.* at 440-41. The Court stated that under appropriate circumstances, each of these remedies may fall within the scope of "appropriate equitable relief" under Section 1132(a)(3). *Id.* The Court stated the following with respect to surcharge:

> [T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary

> remedy against a trustee, sometimes called a "surcharge," was
> "exclusively equitable[]" . . . . The surcharge remedy extended to a
> breach of trust committed by a fiduciary encompassing any
> violation of a duty imposed upon that fiduciary.

*Id.* at 441-42 (citations omitted). The Court distinguished the holding in *Mertens* by stating that

"insofar as an award of make-whole relief is concerned, the fact that the defendant in this case,

unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference." *Id.* at 442.

After *CIGNA*, courts have recognized that "[m]onetary compensation is not automatically

considered 'legal' rather than 'equitable.' The identity of the defendant as a fiduciary, the breach

of a fiduciary duty, and the nature of the harm are important in characterizing the relief."

*Kenseth*, 722 F.3d at 880. For example, in *Gabriel v. Alaska Pension Fund*, the Ninth Circuit

remanded a case back to the district court to consider whether monetary compensation in the

form of surcharge would be an appropriate remedy under Section 1132(a)(3). 773 F.3d at 949.

The district court had held in part that the plaintiff's claims for equitable relief including

disgorgement of profits, equitable restitution, and imposition of a constructive trust were in

essence claims for compensatory damages that, under *Mertens*, were not available under

Section 1132(a)(3). *Id.* at 952-53. The Ninth Circuit indicated that the district court's rationale,

pre-*CIGNA*, that *Mertens* foreclosed the availability of monetary relief under Section 1132(a)(3)

was no longer valid because "it did not consider whether [the plaintiff's] action was 'a suit by a

beneficiary against a plan fiduciary,' . . . for 'a loss resulting from a trustee's breach of duty, or

to prevent the trustee's unjust enrichment,' . . . and thus constituted 'appropriate equitable relief'

for purposes of" Section 1132(a)(3). *Id.* at 963 (citations omitted) (quoting *CIGNA*, 563 U.S.

at 439-41); *see also Kenseth*, 722 F.3d at 882 ("[Under *CIGNA*, [the plaintiff] may seek make-

whole money damages as an equitable remedy under section 1132(a)(3) if she can in fact

demonstrate that [the defendant plan administrator] breached its fiduciary duty to her and that the breach caused her damages.").

Thus, to the extent that the *Bast* court's holding that plaintiffs could not recover restitution under Section 1132(a)(3) was dependent upon *Mertens*, the holding is no longer the state of the law. In *Bast*—unlike in *Mertens*—plaintiffs sought recovery against a fiduciary, who is "analogous to a trustee." *CIGNA*, 563 U.S. at 442. Thus, *CIGNA* would indicate that the Basts could recover for "make-whole relief." *Id.* Similarly, here Plaintiffs seek recovery against their fiduciary, Providence, for losses resulting from Providence's breach of fiduciary duty, and to prevent Providence's unjust enrichment. Plaintiffs argue that after *CIGNA*, they may recover under Section 1132(a)(3) for "an award of make-whole relief." *Id.* Providence agrees that after *CIGNA*, a beneficiary may recover "make-whole relief" against a fiduciary under Section 1132(a)(3).

Providence argues, however, that *CIGNA* does not expressly or impliedly overrule *Bast* because the basis for Basts' claim was the wrongful denial of benefits, which is a claim for legal damages that may only be brought under Section 1132(a)(1)(B). Providence asserts that as in *Bast*, Plaintiffs' Section 1132(a)(3) claim is based on the wrongful denial of benefits, and that a Section 1132(a)(3) claim must be founded on injuries separate and distinct from the improper processing of benefits claims. The Court addresses this argument next.

### 2. The Scope of Remediable Harm Under Section 1132(a)(3)

Providence argues in crafting ERISA, Congress made a deliberate policy choice to limit the remedy for the wrongful denial of a claim for benefits to a Section 1132(a)(1)(B) claim, and that Plaintiffs attempt to avoid this limitation by recasting a denial of benefits claim as a claim for equitable relief. Providence relies on the Supreme Court's decision in *Massachusetts Mutual*

*Life Insurance Co. v. Russell*, 473 U.S. 134 (1985), which held that Section 1109(a) of ERISA[13] did not provide a beneficiary with a cause of action for extracontractual damages caused by the improper processing of benefit claims. *Id.* at 148. The respondent had received plan benefits for disability until they were terminated by the plan administrator. *Id.* at 136. After an internal review of the termination decision, the plan administrator reinstated her benefits and paid them retroactively in full. *Id.* The respondent argued that she was injured by the plan administrator's improper refusal to pay benefits in the interim. *Id.* The Ninth Circuit had found that the plan administrator had violated its fiduciary "obligation to process claims in good faith and in a fair and diligent manner" and concluded that the violation gave rise to a cause of action under Section 1109(a) of ERISA that could be asserted by an individual plan beneficiary pursuant to Section 1132(a)(2). *Id.* at 137-38.

The Supreme Court reversed, concluding that Section 1109 did not expressly authorize a beneficiary to recover extracontractual damages, and nor could such a private remedy be inferred. *Id.* at 138, 144 ("[T]he entire text of [Section 1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself. In short, unlike the Court of

---

[13] Section 1109(a) of ERISA provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Section 1132(a)(3) permits a participant, beneficiary, or fiduciary to bring a civil action for "appropriate relief" under Section 1109(a). *See* 29 U.S.C. § 1132(a)(2).

Appeals, we do not find in [Section 1109] express authority for an award of extracontractual damages to a beneficiary."). In dicta, the *Russell* Court added that:

> Significantly, the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan— § 502(a)(1)(B) . . . says nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim. Thus, there really is nothing at all in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief.

*Id.* at 144. Providence reads the above passage as instructing that Congress created a specific remedy to address harm arising from the improper processing of an individual's claim for benefits—recovery under Section 1132(a)(1)(B)—and that this remedy is limited to contractual damages, or to benefits due under a plan. Thus, Providence argues, Plaintiffs may not recover under Section 1132(a)(3) for alleged harm caused by the improper processing of their claims for ABA treatment and that such recovery would be extracontractual in nature.

The Court agrees with Providence insofar as Providence asserts that a Section 1132(a)(1)(B) claim does not permit an award that exceeds the amount of benefits due under a plan. To the extent that Providence argues that a beneficiary may not recover extracontractual damages under Section 1132(a)(3), however, Providence is reading *Russell* too broadly. In Justice Brennan's concurring opinion, he clarified that the Court's majority opinion "does not resolve, . . . whether and to what extent extracontractual damages are available under [Section 1132(a)(3)]. This question was not addressed by the courts below and was not briefed by the parties and *amici*." *Id.* at 150. Justice Brennan stated that the *Russell* Court "expressly reserve[d] the question whether extracontractual damages might be one form of 'other appropriate relief' under [Section 1132(a)(3)]." *Id.* at 157. Thus, *Russell*'s holding that extracontractual damages are not a proper remedy for the improper processing of benefit claims

is limited to actions brought under Section 1109(a). *See id.* at 150-51 (Brennan, J., concurring) ("[T]he Court takes care to limit the binding effect of its decision to the terms of [Section 1109].").

Providence additionally argues that the Supreme Court's decision in *Varity* illustrates that relief under Section 1132(a)(3) is unavailable to a plaintiff whose injury consists in substance of a denial of benefits. In *Varity*, beneficiaries of a welfare benefit plan sued their plan's administrator, alleging that the administrator deceived them into withdrawing from the plan and forfeiting their benefits. 516 U.S. at 492. The beneficiaries sought reinstatement, among other remedies. *Id.* The Court held that the beneficiaries could bring an action under Section 1132(a)(3) seeking individualized relief to remedy the plan administrator's breach of fiduciary duty. *Id.*

*Amici* supporting the defendant had argued that permitting individuals to recover for a breach of fiduciary duty would increase the cost of welfare benefit plans and thus discourage employers from offering such benefits. *Id.* at 513. As an example, the *amici* asked the Court to consider a case in which a beneficiary "repackage[ed] his or her 'denial of benefits' claim as a claim for 'breach of fiduciary' duty," which would, *amici* argued, create "'incompatible legal standards for courts hearing benefit claim disputes' depending upon whether the beneficiary claims simply 'denial of benefits,' or a virtually identical 'breach of fiduciary duty.'" *Id.* at 513-14. The Court explained that this concern was "unlikely to materialize" because, in part:

> We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefits plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." *Pilot Life Ins. Co.*, 481 U.S., at 54, 107 S.Ct., at 1556. See also *Russell*, 473 U.S., at 147, 105 S.Ct. at 3092-3093; *Mertens*, 508 U.S., at 263-264, 113 S.Ct., at 2072. Thus, we should expect that where Congress elsewhere provided adequate relief for a

> beneficiary's injury, there will likely be no need for further
> equitable relief, in which case such relief normally would not be
> "appropriate." Cf. *Russell*, *supra*, at 144, 105 S.Ct., at 3091.

*Id.* at 514-15. In support of the last sentence, the *Varity* Court cited to the same page of the

*Russell* opinion in which the passage concerning the limited statutory remedies for wrongfully

denied benefits appeared. Thus, Providence argues, *Varity* stands for the legal principle that

Section 1132(a)(1)(B) provides the exclusive—and therefore "adequate"—remedy for injuries

arising from an allegedly wrongful benefits denial.

A recent Second Circuit decision, *New York State Psychiatric Association, Inc. v.*

*UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015), however, provides guidance on the meaning

of "adequate relief" in *Varity*.[14] The plaintiff in *NYSPA* alleged that the defendant improperly

administered a health insurance plan by treating medical claims more favorably than mental

health claims in violation of the Federal Parity Act and the terms of the plan. *Id.* at 130. For this

alleged breach of fiduciary duty, the plaintiff brought claims under both Section 1132(a)(3) and

Section 1132(a)(1)(B). *Id.* at 129. The defendant plan administrator argued that the plaintiff's

Section 1132(a)(3) claim should be dismissed because "adequate relief" for the alleged breach of

fiduciary duty was available under Section 1132(a)(1)(b). *Id.* at 133.

The Second Circuit disagreed, stated that "it is important to distinguish between a cause

of action and a remedy under § 502(a)(3)" because "'*Varity Corp.* did not eliminate a private

*cause of action* for breach of fiduciary duty when another potential remedy is available.'" *Id.*

---

[14] The Court notes that the *Bast* decision does not provide guidance on this issue. In finding that restitution was not "appropriate equitable relief" in that case, the Ninth Circuit relied solely on *Mertens*'s holding that "the language 'appropriate equitable relief' does not authorize suits for money damages for breach of fiduciary duty." 150 F.3d at 1010 (citing *Mertens*, 508 U.S. at 257-58). As discussed above, the Supreme Court in *CIGNA* clarified that a plaintiff may recover make-whole relief against a fiduciary and thus distinguished *Mertens*, in which the plaintiff sought relief against a nonfiduciary defendant. *See* 563 U.S. at 442.

at 134 (quoting *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001))

(emphasis in original); *see also Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014)

("[W]e believe *Varity* only bars duplicate recovery and does not address pleading alternate

theories of liability."). Rather, "if a plaintiff succeed[s] on both [Section 1132(a)(1)(B) and

Section 1132(a)(3)] claims . . . the district court's *remedy* is limited to such equitable relief as is

considered appropriate." *NYSPA*, 798 F.3d at 134 (emphasis in original) (quotation marks

omitted).

The Second Circuit explained that because the plaintiff had not yet succeeded on his

Section 1132(a)(1)(B) claim, "it is not clear at the motion-to-dismiss stage of the litigation that

monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy. In other

words, it is too early to tell if his claims under § 502(a)(3) are in effect repackaged claims under

§ 502(a)(1)(B)." *Id.* Thus, the district court's dismissal of the plaintiff's Section 1132(a)(3) claim

was premature. *Id.* The Second Circuit directed that if the plaintiff was successful on both his

Section 1132(a)(3) and Section 1132(a)(1)(B) claims, the district court "should then determine

whether equitable relief under § 502(a)(3) is appropriate."[15] *Id.*

---

[15] The District of Colorado reached a similar result in *O'Dowd v. Anthem Health Plans, Inc.*, 2015 WL 5728814 (D. Co. Sept. 30, 2015). There, the plaintiff asserted Section 1132(a)(1)(B) and Section 1132(a)(3) claims against the defendant plan administrator relating to reimbursement for psychiatric care under her medical insurance policy. *Id.* at *1. The plaintiff alleged that the defendant's "system of reimbursement results in different rates being applied to substantially identical services when performed by a primary care physician or a psychiatrist." *Id.* (quotation marks omitted). The plaintiff sought injunctive relief and surcharge under Section 1132(a)(3) and a payment of benefits due under Section 1132(a)(1)(B). *Id.* at *4. The District of Colorado reasoned that under *CIGNA*, "a request for surcharge is essentially an unjust enrichment claim," and that it could not "conclude that Plaintiff's second and third claims seek the same relief for the same injury despite the fact that they are based on the same alleged actions" because "Plaintiff's second claim seeks equitable relief in the form of recovery of amounts Defendant may have improperly gained from the alleged breach of fiduciary duty, while Plaintiff's third claim seeks payment of benefits." *Id.*

### 3. Analysis

Here, similar to the plaintiff in *NYSPA*, Plaintiffs allege that Providence improperly administered their plans by unlawfully treating medical claims more favorably than mental health claims. Plaintiffs allege—and this Court previously held—that Providence's use of the Developmental Disability Exclusion violated the Federal Parity Act and Oregon state law. Plaintiffs allege that they have suffered permanent harm because of Providence's unlawful application of the Developmental Disability Exclusion and arbitrary and bad faith use of the Experimental Exclusion that is not remediable solely through their Section 1132(a)(1)(B) claim. Plaintiffs assert that they received only a fraction of the treatment that they needed—and S.S. did not receive any treatment at all—because of Providence's unlawful and bad faith denial of ABA therapy coverage, which resulted in Providence's unjust enrichment.

Section 1132(a)(3) is "a 'catchall' or 'safety net' designed to 'offer[] appropriate equitable relief for injuries caused by violations that [Section 1132] does not elsewhere adequately remedy.'" *Wise v. Verizon Comm'n Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (quoting *Varity*, 516 U.S. at 489) (alterations in original). In Plaintiffs' Third Claim, brought under Section 1132(a)(1)(B), they seek reimbursement for out-of-pocket expenses for the limited ABA treatment they were able to afford. Plaintiffs may not recover under Section 1132(a)(1)(B) for make-whole relief to remedy losses caused by Providence's alleged breach of its fiduciary

---

Providence agrees that the *NYSPA* and *O'Dowd* cases stand for the proposition that a plaintiff may seek relief for the improper processing of benefits claims under Section 1132(a)(3) while simultaneously seeking relief under Section 1132(a)(1)(B). Providence asserts, however, that *NYSPA* and *O'Dowd* represent a minority view of the issue at hand, and that the Second Circuit's decision in *NYSPA* is "wrong . . . because Congress decided in (a)(1)(B) what the remedy for denial of benefits would be. . . . [and] made a deliberate choice to include some remedies and exclude others." Dkt. 126 at 44 (October 30, 2015 Oral Argument Transcript). Providence, however, has not cited any post-*CIGNA* decision by the Ninth Circuit that holds contrary to *NYSPA*, nor is the Court aware of any.

duties, nor may they remedy Providence's alleged unjust enrichment under that subsection. Accordingly, Plaintiffs assert, they do not have an adequate remedy under Section 1132(a)(1)(B) and seek equitable relief including surcharge to redress Providence's past breaches of fiduciary duty under Section 1132(a)(3). Thus, Plaintiffs' Second and Third Claims do not "seek the same relief for the same injury," although "they are based on the same alleged actions." *See O'Dowd*, 2015 WL 5728814, at *4.

Because Providence is in a position analogous to a trustee, the fact that Plaintiffs seek monetary compensation does not make the relief sought legal rather than equitable; rather, such recovery is "appropriate equitable relief" under Section 1132(a)(3). *See NYSPA*, 798 F.3d at 135 ("[W]here, as here, a plan participant bring suit against a 'plan fiduciary (whom ERISA typically treats as a trustee)' for breach of fiduciary duty relating to the terms of a plan, . . . 'surcharge'— 'monetary compensation for a resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment'—constitutes equitable relief under" Section 1132(a)(3)) (third and fourth alterations in original) (quoting *CIGNA*, 563 U.S. at 422). Additionally. Plaintiffs have sufficiently pled that reimbursement under Section 1132(a)(1)(B) does not provide them with "adequate relief" to remedy Providence's breach of fiduciary duty. *Varity*, 516 U.S. at 515. Although Plaintiffs may not simply "repackage" their Section 1132(a)(1)(B) claim and thus obtain duplicative relief, the Court cannot conclude at the motion to dismiss stage that the two claims are indeed duplicative.[16] Thus, Plaintiffs have stated a claim for "appropriate equitable relief" under Section 1132(a)(3). Providence's motion to dismiss is denied.

---

[16] Because Providence's motion against Plaintiffs' Second Claim is a motion to dismiss and not a motion for summary judgment, the Court does not consider at this time whether the fact that partial summary judgment has now been granted to Plaintiffs on their Third Claim for Relief, brought under Section 1132(a)(1)(B), has any bearing on the proper resolution of Plaintiffs' Second Claim for Relief, brought under Section 1132(a)(3).

**CONCLUSION**

Plaintiffs' motion for summary judgment (Dkt. 105) is GRANTED IN PART and

DENIED IN PART, and Providence's motion to dismiss (Dkt. 111) is DENIED.

**IT IS SO ORDERED**.

DATED this 7th day of January, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge