IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| A.F., by and through his parents and guardians, Brenna Legaard and Scott Fournier; A.P., by and through his parents and guardians, Lucia Alonso and Luis Partida; S.W., by and through his parents and guardians, Kody Whipple and Jamie Whipple; S.S., by and through his parents and guardians, David Smith and Brooke Kennelley; I.F., by and through his parents and guardians, Bryan Fowler and Susan Rogers Fowler; and on behalf of similarly situated individuals, | Case No. 3:13-cv-00776-SI<br><br>**OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| **Providence Health Plan**, | |
| Defendant. | |

Keith S. Dubanevich, Joshua L. Ross, and Nadine A. Gartner, STOLL STOLL BERNE LOKTING & SCHLACHTER P.C., 209 S.W. Oak Street, Fifth Floor, Portland, OR 97204; Megan E. Glor, MEGAN E. GLOR ATTORNEYS AT LAW, 621 S.W. Morrison Street, Suite 900, Portland, OR 97205. Of Attorneys for Plaintiffs.

William F. Gary, Arden J. Olson, J. Aaron Landau, and Jens Schmidt, HARRANG LONG GARY RUDNICK P.C., 360 E. Tenth Avenue, Suite 300, Eugene, OR 97401. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiffs A.F., A.P., S.W., S.S., and I.F. (collectively, "Plaintiffs") bring this action against Defendant Providence Health Plan ("Providence") alleging claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Before the Court is Plaintiffs' Motion to Compel pursuant to Federal Rule of Civil Procedure 37(a). For the reasons stated below, Plaintiffs' motion is granted in part.

## STANDARDS

Federal Rule of Civil Procedure 26(b)(1) provides in relevant part as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Civil Procedure 37(a) provides that a party may move for an order compelling discovery if the movant, in good faith, has "conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

## BACKGROUND

### A.  The Parties

Plaintiffs are insured as dependent-beneficiaries under group health plans in Oregon issued by Providence. Plaintiffs have been diagnosed with Autism Spectrum Disorder and prescribed Applied Behavioral Analysis ("ABA therapy") by their treating physicians. Autism Spectrum Disorder is a pervasive developmental disorder that begins to appear during early childhood and is characterized by impairments in communication and social skills, severely restricted interests, and repetitive behavior. ABA therapy is an intensive behavior therapy that,

among other things, measures and evaluates observable behaviors. Evidence shows that ABA therapy may help autistic children with cognitive function, language skills, and adaptive behavior. Evidence also suggests that the benefits of ABA are significantly greater with early intervention for young autistic children.

Between January 2007 and January 2014, Providence denied requests for coverage for ABA therapy on the basis that its Plans exclude mental health services "related to developmental disabilities, developmental delays, or learning disabilities" from coverage (the "Developmental Disability Exclusion"). Providence did so regardless of whether the member sought reimbursement for payments for ABA therapy or pre-authorization of coverage. Until 2014, Providence also denied Plan beneficiaries ABA therapy coverage on the basis that it was experimental and investigational (the "Experimental Exclusion"). These Exclusions are listed in the member handbook given to all members that describe the governing terms of their Plans.

**B.  Procedural History**

On May 8, 2013, A.F. and A.P. filed this class action lawsuit alleging that Providence's denial of ABA therapy coverage violated federal and state law. A.F. and A.P. moved to certify an injunctive class, which the Court granted. On August 8, 2014, the Court held that Providence's use of the Developmental Disability Exclusion violated the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act (the "Federal Parity Act"), 29 U.S.C. § 1185a; the Oregon Mental Health Parity Act, Or. Rev. Stat. ("ORS") § 743A.168; and the Oregon Mandatory Coverage for Minors with Pervasive Developmental Disorders Act, ORS § 743A.190; and was therefore prohibited under 29 U.S.C. § 1132(a)(3) ("Section 1132(a)(3)") of ERISA.[1]

---

[1] The Federal Parity Act requires that for group health plans, financial requirements and treatment limitations to mental health benefits must be "no more restrictive" than the

On June 29, 2015, A.F. and A.P. filed a second amended class action complaint, naming S.W., S.S., and I.F. as additional plaintiffs. Plaintiffs' second amended class action complaint alleges three claims under ERISA: (1) injunctive relief under Section 1132(a)(3), prohibiting Providence from continuing to process and pay claims under its insured Plans in a manner that is inconsistent with the Federal Parity Act and Oregon law and requiring Providence to provide the class with corrective notice and information, on behalf of all named Plaintiffs and all members of the class ("First Claim"); (2) equitable relief under Section 1132(a)(3) sufficient to redress Providence's violations of its fiduciary duties, on behalf of all named Plaintiffs ("Second Claim"); and (3) recovery of benefits due and declaration of future benefits under 29 U.S.C. § 1132(a)(1)(B) ("Section 1132(a)(1)(B)") on behalf of named Plaintiffs A.F., A.P., S.W., and I.F. ("Third Claim").[2]

In the second amended class action complaint, Plaintiffs allege that Providence established and carried out a deliberate company-wide policy to deny all claims for ABA treatment in violation of federal and state law, thus dissuading parents from seeking treatment for their children. Dkt. 102 ¶¶ 8-9. Plaintiffs assert that Providence has advertised and represented that its health Plans include coverage for mental health services and that autism is a covered mental health diagnosis under the Plans. *Id.* ¶¶ 58-63. Additionally, Providence represented that its Plans "will cover medical services necessitated by autism." *Id.* ¶ 61 (quotation marks

predominant requirements or limitations applied to substantially all medical and surgical benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). The Oregon Mental Health Parity Act requires parity among the services and treatment covered for medical conditions and the services and treatment covered for mental health and chemical dependency related conditions. ORS § 743A.168. The Oregon Mandatory Coverage for Minors with Pervasive Developmental Disorders Act requires health benefit plans to cover treatment of pervasive developmental disorders for children. ORS § 743A.190.

[2] Named Plaintiff S.S. does not join in Plaintiffs' Third Claim because S.S. did not incur any out-of-pocket expenses for ABA therapy.

omitted). Plaintiffs assert that by denying coverage for ABA therapy, "Providence systemically and uniformly failed properly to process claims and administer the Plans it insured and administered." *Id.* ¶ 7. Thus, Plaintiffs allege that the Plans "fail[ed] to receive all of the benefits of the coverage which has been purchased from Providence for the purpose of providing benefits to the beneficiaries, and the beneficiaries [did] not receive the benefits they [were] entitled to under the Plans." *Id.*

Plaintiffs allege that Providence initially denied claims for ABA therapy in bad faith on the basis that ABA is experimental or investigative "despite a multitude of studies showing the efficacy of ABA treatment, [and] despite repeated rulings by State Insurance Commissioners that ABA is a reasonable, safe, necessary, and mainstream treatment for children with autism. . . ." *Id.* ¶ 130. Additionally, Providence continued to deny ABA therapy coverage under the Experimental Exclusion even after a January 5, 2010 decision by a court in this District that held "'that the weight of the evidence demonstrates that ABA therapy is firmly supported by decades of research and application and is a well-established treatment modality of autism . . . . It is not an experimental or investigational procedure.'" *Id.* ¶ 39 (quoting *McHenry v. PacificSource Health Plans*, 679 F. Supp. 2d 1226, 1237 (D. Or. 2010)).

Plaintiffs allege that Providence "failed to provide any unbiased explanation or evidence in support of its claim that ABA treatment is experimental or investigative." *Id.* ¶ 131. Instead, in finding that ABA therapy is experimental or investigational, Plaintiffs assert, Providence wrongfully relied upon a 2010 report from an independent organization called Hayes, even though the report contains a disclaimer stating that it "is intended to provide research assistance and general information only. It is not intended to be used as the sole basis for determining coverage policy." *Id.* (quotation marks omitted).

PAGE 5 – OPINION AND ORDER

After medical doctors conducting Internal Review Organization ("IRO") reviews ruled that ABA therapy was not experimental or investigative, Providence began to deny claims based upon the Developmental Disability Exclusion. *Id.* ¶¶ 132, 154. Plaintiffs assert that Providence knew that autistic children's parents would no longer be entitled to IRO review and would instead have to hire an attorney to litigate the Developmental Disability Exclusion. *Id.* ¶ 132. Plaintiffs allege that Providence followed this course of conduct in order to discourage parents from pursuing their claims. *Id.* Plaintiffs assert that Providence additionally knew that litigating the Developmental Disability Exclusion would be a slow process and that any judicial order would come long after an IRO would have issued a decision, thereby shortening the time period for which Providence would have to provide coverage for the treatment. *Id.*

Plaintiffs also allege that in October 2013, Providence decided that because A.F. and A.P.'s parents had initiated litigation, Providence would resort to using the Experimental Exclusion in conjunction with the Developmental Disability Exclusion in a deliberate move to again trigger IRO review. *Id.* ¶ 137. At about this same time, Providence's medical staff evaluated the literature regarding the efficacy of ABA therapy and concluded that ABA was not experimental or investigational. *Id.* ¶ 138. Plaintiffs allege that despite coming to this conclusion in fall 2013, Providence continued to deny ABA therapy coverage on the basis that it was experimental and investigational until January 2014. Providence did not notify Plaintiffs that it would approve coverage for ABA therapy until February 2014.

Plaintiffs assert that they have been forced to pay out-of-pocket for treatment and forego necessary care because they and their Plans have not received all of the benefits owed to them by Providence. *Id.* ¶ 122. Plaintiffs state that because ABA therapy is especially helpful for children who receive early intervention and the positive benefits of ABA therapy are less likely to occur if

a child does not receive early intervention, they have suffered permanent and irreparable harm by not receiving ABA therapy at a time when it would have been most beneficial to them. *Id.* ¶¶ 30-32. Plaintiffs additionally allege that Providence wrongfully and inequitably retained and reinvested funds that it should have paid for ABA therapy coverage and thus profited by denying Plaintiffs the care they needed and were lawfully entitled to under their Plans. *Id.* ¶ 156.

On January 7, 2016, the Court granted in part and denied in part Plaintiffs' motion for summary judgment on their Third Claim under Section 1132(a)(1)(B). Section 1132(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Under Section 1132(a)(1)(B), a beneficiary may seek reimbursement for out-of-pocket expenses for medical treatment following a wrongful claim denial. *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 211-12 (2004). Plaintiffs argued that they are entitled to reimbursement for out-of-pocket expenses for ABA therapy because of this Court's prior ruling that Providence's Developmental Disability Exclusion violated the Federal Parity Act, Oregon law, and ERISA. S.W. and I.F. additionally argued that they are entitled to reimbursement for out-of-pocket expenses because Providence reversed its denial of ABA therapy coverage on the basis of the Experimental Exclusion in their cases. The Court held that Plaintiffs are entitled to reimbursement to the extent that Plaintiffs provided evidence that Providence timely received their claims for ABA therapy.

Also on January 7, 2016, the Court denied Providence's motion to dismiss Plaintiffs' Second Claim under Section 1132(a)(3). Section 1132(a)(3) provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations

PAGE 7 – OPINION AND ORDER

or . . . to enforce any provisions of this subchapter or the terms of the plan[.]" Plaintiffs' Second Claim seeks "appropriate equitable relief" under Section 1132(a)(3) including, but not limited to, restoration of funds allegedly improperly in Providence's possession as a result of Providence's wrongful denial of ABA therapy coverage, unjust enrichment, disgorgement, restitution, reparation, surcharge, and estoppel. In the alternative, Plaintiffs seek an amount equal to the amount that Providence should have paid for ABA therapy. Plaintiffs allege that they have suffered permanent harm because of Providence's unlawful application of the Developmental Disability Exclusion and arbitrary and bad faith use of the Experimental Exclusion that is not remediable solely through their Third Claim for reimbursement for out-of-pocket expenses. Plaintiffs assert that they received only a fraction of the treatment that they needed—and S.S. did not receive any treatment at all—because of Providence's unlawful and bad faith denial of ABA therapy coverage, which resulted in Providence's unjust enrichment.

Section 1132(a)(3) is "a 'catchall' or 'safety net' designed to 'offer[] appropriate equitable relief for injuries caused by violations that [Section 1132] does not elsewhere adequately remedy.'" *Wise v. Verizon Commc'n Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). The Court denied Providence's motion to dismiss Plaintiffs' Second Claim, holding that Plaintiffs sufficiently pled that reimbursement under Section 1132(a)(1)(B) does not provide them with "adequate relief" to remedy Providence's unlawful use of the Developmental Disability Exclusion and alleged breach of its fiduciary duties. *See Varity*, 516 U.S. at 515.

## C.  Discovery

Plaintiffs' counsel deposed Providence's Senior Director of Service Operations, Mark Jensen ("Jensen"), on August 29, 2013.[3] Dkt. 135-2 at 1-10. Jensen refused to answer questions regarding Providence's use of the Developmental Disability Exclusion during the deposition. Dkt. 135-2 at 4-5. Although he referenced conversations with counsel about the Developmental Disability Exclusion, he did not reveal the substance of those conversations. *Id.*

On September 18, 2014, Plaintiffs served Providence with their Third Request for Production of Documents for Electronically Stored Information. Dkt. 135 ¶ 10. Plaintiffs requested, among other information, documents relating to Providence's decision to draft, implement, and apply the Developmental Disability Exclusion and Providence's decision to cease denying coverage for ABA therapy on the basis of the Experimental Exclusion. Dkt. 135-4. In Providence's January 19, 2015 response to these requests, Providence stated: "There are certain minutes of meetings between Providence executives and their legal counsel in which . . . [those subjects were] discussed; a privilege log of those documents is being prepared." *Id.*

On January 22, 2015, Providence submitted a privilege log to Plaintiffs that claimed the attorney-client privilege for meeting minutes of Providence's Ethics & Risk Management Committee ("ERMC"). Dkt. 135-5. The log also claimed lack of relevance as a reason for refusing to produce the documents. On April 23, 2015, Providence submitted an amended privilege log which provided more detail about the contents of the documents. Dkt. 135-1 at 1-5.

On June 2, 2015, Plaintiffs' counsel again deposed Jensen. Dkt. 135-2 at 11-20. During the second deposition, Jensen mentioned several discussions that he and other Providence

---

[3] Jensen testified under Federal Rule of Civil Procedure 30(b)(6) on behalf of Providence in this action, and his testimony is that of Providence's. *See* Dkt. 135-2 at 1, 2 (August 29, 2013 Jensen Deposition); *id.* at 11-12 (June 2, 2015 Jensen Deposition).

employees had with Providence's counsel regarding Providence's use of the Developmental

Disability Exclusion. *Id.* at 13-15, 18-20. According to Plaintiffs, Plaintiffs' counsel did not ask

for details about these discussions because prior to the June 2, 2015 deposition, Providence's

counsel stated that it considered the discussions to be protected by the attorney-client privilege.

Dkt. 135 ¶ 11.

In July and August 2015, Providence produced additional documents to Plaintiffs in

response to Plaintiffs' requests for production. *Id.* ¶ 6. Many of these documents were email

strings among Providence, its counsel, and Optum. Dkt. 135-3. Providence outsources behavioral

health and mental health services to Optum, and Optum processes behavioral and mental health

claims on behalf of Providence. Dkt. 135-2 at 17 (June 2, 2015 Jensen Deposition). Providence

redacted portions of the email strings, citing attorney-client privilege. Dkt. 135-3. On August 13,

2015, Providence produced a privilege log of only emails, again citing attorney-client privilege

as the reason for not disclosing the documents. Dkt. 135-1 at 6-29.

## DISCUSSION

Plaintiffs move the Court pursuant to Federal Rule of Civil Procedure 37(a) for an Order

compelling Providence to produce the following:

> **Request Number One:** Documents listed in Providence's April 23,
> 2015 Amended Privilege Log, and documents listed in Providence's
> August 13, 2015 Emails Privilege Log, with exceptions for documents
> described as "AF Lawsuit Discussion" and "Lawsuit RFPs;"[4]

> **Request Number Two:** Documents and communications of any type
> relating to Providence's conversations with counsel about
> Providence's use of the Developmental Disability Exclusion not

---

[4] In Providence's response to Plaintiffs' motion to compel, Providence states that its
assertion of the attorney-client privilege as to the following documents was in error:
PHP007513-26, PHP007531-38, PHP007541-47, PHP007554-55, PHP007559-61, and
PHP007566-71. Dkt. 139 at 17 n.4. Provides states that it has provided these documents to
Plaintiffs. *Id.*

related to litigation, as referred to in the August 29, 2013, and June 2,
2015, Jensen depositions;

**Request Number Three:** Testimony from deponents, including
Jensen and witnesses whom Plaintiffs plan to depose after the Court
rules on this Motion, relating to Providence's conversations with
counsel about Providence's use of the Developmental Disability
Exclusion not related to litigation; and

**Request Number Four:** Redacted portions of email strings previously
produced by Providence and Bates labeled PHP005857, PHP005859,
PHP005861, PHP005862, PHP006316, PHP006342-44, PHP006374,
PHP006378, PHP006387, PHP006896-8, PHP006906, PHP006919,
PHP006923, PHP006927, PHP006929, PHP007725, PHP007799-800,
PHP7806-09, PHP007814-15, PHP007820-23, PHP007828,
PHP007834-36, PHP007846-49, PHP007859-62, PHP007867,
PHP007871-73, PHP007878-80, PHP007884-85, PHP007889,
PHP007893-94, PHP007899-901, PHP007906-08, PHP007919-20,
and PHP007924.

Providence refuses to produce the requested documents and testimony. Providence asserts that

the documents and testimony are not discoverable for two alternative and independent reasons:

(1) they are not relevant to any claim nor calculated to lead to the discovery of relevant evidence;

and (2) they are protected under the attorney-client privilege.

Plaintiffs argue that the documents and testimony are relevant to the resolution of their

Second Claim, and that documents and testimony are discoverable because they fall within the

fiduciary exception to attorney-client privilege. Under the fiduciary exception, one "acting in the

capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan

beneficiaries on matters of plan administration." *United States v. Mett*, 178 F.3d 1058, 1063

(9th Cir. 1999). Plaintiffs assert that the requested documents and testimony relate to plan

administration because they concern Providence's consideration and use of the Developmental

Disability Exclusion and the Experimental Exclusion to deny coverage for ABA therapy.

Plaintiffs alternatively argue that Providence has waived the attorney-client privilege with

respect to the requested documents and testimony because Providence shared its written

communications with counsel regarding the Developmental Disability Exclusion and the Experimental Exclusion with Optum, a third party. *See Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (stating that "it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.").

First, the Court considers whether the documents and testimony Plaintiffs seek are relevant to their Second Claim. Second, the Court considers whether the fiduciary exception to attorney-client privilege applies to the requested documents and testimony. Third, the Court considers whether Providence waived the attorney-client privilege with respect to the requested documents and testimony.

## A.  Whether the Requested Documents and Testimony Are Relevant

### 1.  The Parties' Arguments

Plaintiffs argue that the requested discovery is relevant to determining the following issues central to resolution of their Second Claim:

1. Did Providence breach its fiduciary duty to Plaintiffs?

2. Are Plaintiffs entitled to "other appropriate equitable relief" under Section 1132(a)(3)?

3. If Plaintiffs are entitled to "other appropriate equitable relief" under Section 1132(a)(3), which specific remedies are they entitled to and what are the possible monetary values of those remedies?

Plaintiffs argue that in determining what, if any, "other appropriate equitable relief" should be awarded, the Court will have to examine the actions and decisions made by Providence relating to its consideration and use of the Developmental Disability and Experimental Exclusions.

Providence argues that to the extent that any questions of fact still remain at issue on Plaintiffs' Second Claim for relief, the discovery Plaintiffs request is neither relevant to those

PAGE 12 – OPINION AND ORDER

questions nor calculated to lead to the discovery of relevant evidence. Providence asserts that the documents and testimony Plaintiffs seek bear on Providence's motive, which is irrelevant in an ERISA claim for breach of fiduciary duty because the duties that ERISA imposes on plan administrators are judged under an objective standard. In support of this assertion, Providence cites *Washington v. Bert Bell/Pete Rozelle NFL Retirement Plan*, 504 F.3d 818 (9th Cir. 2007), in which the Ninth Circuit discussed the duty of loyalty as "one of the common law trust principles that apply to ERISA fiduciaries . . . [and that] encompasses a duty to disclose." *Id.* at 823 (citation omitted). Under the duty of disclosure, "[t]rustees must 'deal fairly' and 'communicate to the beneficiary all material facts the trustee knows or should know in connection with the transaction." *Id.* (quoting *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1070 n.7 (9th Cir. 2005)). The Ninth Circuit described the test of whether a fiduciary violates the duty of loyalty as "objective." *Id.* at 824. Thus, Providence argues, the duties imposed upon fiduciaries under ERISA concern plan administrators' objective conduct and not their subject motives.

### 2. Analysis

Plaintiffs' Second Claim seeks "appropriate equitable relief" under Section 1132(a)(3) including, but not limited to, restoration of funds allegedly improperly in Providence's possession as a result of Providence's improper denial of claims for ABA therapy, unjust enrichment, disgorgement, restitution, reparation, surcharge, and estoppel. Under Section 1132(a)(3), a plaintiff must prove "both: (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan;" and "(2) that the relief sought is 'appropriate equitable relief.'" *Gabriel v. Ala. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993), and quoting 29 U.S.C. § 1132(a)(3)(B)).

PAGE 13 – OPINION AND ORDER

The Court has already held, on cross-motions for summary judgment on Plaintiff's First Claim, that Providence's use of the Developmental Disability Exclusion violated the Federal Parity Act and Oregon law and is thus prohibited under Section 1132(a)(3). The Court has not yet ruled, however, on what, if any, remediable wrong Plaintiffs have established under their Second Claim. Although this wrong may include Providence's unlawful application of the Developmental Disability Exclusion, Plaintiffs allege additional violations of Providence's fiduciary duties relating to Providence's consideration and use of the Developmental Disability and Experimental Exclusions in their second amended class action complaint, such as Providence's use of the Experimental Exclusion after it knew or should have known that ABA therapy is not an experimental or investigative treatment.

ERISA describes the duties of a fiduciary as follows:

> (a) Prudent man standard of care
>
> > (1) Subject to [other sections of ERISA], a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and—
> >
> > > (A) for the exclusive purpose of:
> > >
> > > > (i) providing benefits to participants and their beneficiaries; and
> > > >
> > > > (ii) defraying reasonable expenses of administering the plan;
> > >
> > > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

29 U.S.C. § 1104 ("Section 1104"). Section 1104(a)(1)(A), or the "Exclusive Benefit Rule," is based on the trust law duty of loyalty. Peter J. Wiedenbeck, *ERISA in the Courts* 155 (Federal Judicial Center 2008). As Providence points out, the trust law duty of loyalty is governed by an

objective test. *See Washington*, 504 F.3d at 824. Unlike the trust duty of loyalty, however, the Exclusive Benefit Rule looks to the fiduciary's subjective motivation in determining whether the fiduciary is in compliance with the rule. Wiedenbeck, at 156; *see also id.* at 165 ("In making the fiduciary's 'exclusive purpose' the touchstone, ERISA demands assessment of a conflicted decisionmaker's state of mind. Subjective purpose, of course, is necessarily inferred from objective facts.").[5] Thus, following Wiedenbeck, Providence's motivation regarding its consideration and use of the Developmental Disability Exclusion and the Experimental Exclusion is relevant to a determination of whether it breached its fiduciary duties under the Exclusive Benefit Rule.

The extent to which Providence may have breached its fiduciary duties or otherwise violated ERISA, however, is only the first prong of Plaintiff's Second Claim. Plaintiffs must also establish that they are entitled to "appropriate equitable relief." The Supreme Court interprets "appropriate equitable relief" as referring to "those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity." *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011) (emphasis in original) (quotation marks omitted). "Equitable relief may take the form of a surcharge, or monetary compensation for loss resulting from a fiduciary's breach of duty or to prevent the fiduciary's unjust enrichment." *Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*, 2016 WL 107838, at *4 (D. Ariz. Jan. 11, 2016) (citing *Gabriel*, 773 F.3d at 957). "To obtain relief by way of surcharge, a beneficiary must show a breach of fiduciary duties by an ERISA trustee, that the violation

---

[5] Providence additionally cites *Byrne v. Calastro*, 205 Fed. App'x 10 (3d Cir. 2006) (unpublished), and *Bauer-Ramazani v. Teachers Insurance & Annuity Ass'n of America-College Retirement & Equities Fund*, 2013 WL 6189802 (D. Vt. Nov. 27, 2013), in support of its argument that motive is irrelevant in an ERISA claim for breach of fiduciary duty. In discussing the objective standard of care, however, both cases referred to 29 U.S.C. § 1104(a)(1)(B). *Byrne*, 205 Fed. App'x at 15; *Bauer-Ramazani*, 2013 WL 6189802, at *5.

injured her or him, and that the remedy of surcharge is available for the claimed injury by

reference to traditional equitable principles." *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1185

(W.D. Wash. 2015) (citing *Gabriel*, 773 F.3d at 958). The Supreme Court explains that an

ERISA fiduciary "can be surcharged under [Section 1132(a)(3)] only upon a showing of actual

harm—proved (under the default rule for civil cases) by a preponderance of the evidence."

*CIGNA*, 563 U.S. at 444.

The *Restatement (Third) of Trusts* instructs as follows with regard to surcharge:

> In determining whether and to what extent to grant a trustee relief
> from surcharge, it would be appropriate for the court to consider all
> circumstances of the breach and of the trustee, such as: . . . the
> sincerity of the trustee's efforts to understand and perform the
> responsibilities in question; and whether the trustee reasonably
> relied on guidance from legal or other advisers[.][6]

*Id.* § 95 cmt. d (2012). Thus, evidence of the sincerity of Providence's efforts to understand and

perform its responsibilities, as well as its actions and decisions, is relevant in determining

whether and to what extent to award Plaintiffs make-whole relief in the form of surcharge.

The documents and testimony Plaintiffs seek concern the sincerity of Providence's efforts

to understand and perform its responsibilities regarding ABA therapy coverage and its

consideration and use of the Developmental Disability Exclusion and the Experimental

Exclusion. The requested documents and testimony, therefore, are relevant to determining

whether there is a remediable wrong for which "other appropriate equitable relief" is warranted

---

[6] "Ordinarily, the fiduciary's good faith is not a defense to a claim of breach of fiduciary
liability." Ronald J. Cooke, 2 *ERISA Practice and Procedure* § 6:79. The *Restatement (Third) of
Trusts* suggests, however, that the extent to which the fiduciary reasonably—or, in good faith—
relied on legal or other authoritative guidance may be relevant to fashioning the equitable relief
of surcharge for a breach of fiduciary duty. *See id.* § 95 cmt. d. Both the Supreme Court and the
Ninth Circuit have relied upon the *Restatement (Third) of Trusts* in interpreting the remedy of
surcharge under Section 1132(a)(3). *CIGNA*, 563 U.S. at 441-42; *Skinner v. Northrop Grumman
Ret. Plan B.*, 673 F.3d 1162, 1167 (9th Cir. 2012).

and, if so, what form that relief should take. Thus, the Court finds that the discovery Plaintiffs

seek is relevant to their Second Claim.

**B.  Whether the Fiduciary Exception Applies**

The party asserting attorney-client privilege bears the burden of proving each element of

an eight-part test used to determine whether information is covered by the attorney-client

privilege:

> (1) Where legal advice of any kind is sought (2) from a
> professional legal adviser in his capacity as such, (3) the
> communications relating to that purpose, (4) made in confidence
> (5) by the client, (6) are at his insistence permanently protected (7)
> from disclosure by himself or by the legal adviser, (8) unless the
> protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury*

*Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)). In Providence's response, Providence

states that Plaintiffs do not dispute that the materials they seek would ordinarily be protected

from disclosure by attorney-client privilege. The Court has reviewed Plaintiffs' opening brief

and agrees that Plaintiffs did not challenge the presumptive test of attorney-client privilege. In

Plaintiffs' reply, however, Plaintiffs assert that Providence has failed to meet its burden of

proving that the attorney-client privilege applies to the requested documents and testimony. In

light of the fact that Plaintiffs did not challenge that the attorney-client privilege applies in their

opening brief, the Court finds that Providence's initial burden is satisfied.

**1.  The Fiduciary Exception Generally**

The Ninth Circuit instructs that "'the attorney-client privilege is, perhaps, the most sacred

of all legally recognized privileges.'" *Mett*, 178 F.3d at 1062 (quoting *United States v. Bauer*,

132 F.3d 504, 510 (9th Cir. 1997)). The Supreme Court explains the justification for attorney-

client privilege as follows:

> Its purpose is to encourage full and frank communication between
> attorneys and their clients and thereby promote broader public
> interests in the observance of law and administration of justice.
> The privilege recognizes that sound legal advice or advocacy
> serves public ends and that such advice or advocacy depends upon
> the lawyer's being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege, however, is strictly

construed "[b]ecause it impedes full and free discovery of the truth." *Weil*, 647 F.2d at 24.

The Ninth Circuit recognizes a fiduciary exception to attorney-client privilege. *Mett*,

178 F.3d at 1062. "As applied in the ERISA context, the fiduciary exception provides that 'an

employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client

privilege against plan beneficiaries on matters of plan administration.'" *Id.* at 1063 (quoting

*Becher v. Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997)). The fiduciary exception

applies to insurance companies serving as ERISA fiduciaries. *Stephan v. Unum Life Ins. Co. of

Am.*, 697 F.3d 917, 931-32 (9th Cir. 2012). *Cf. Wachtel v. Health Net, Inc.*, 482 F.3d 225, 236

(3d Cir. 2007) (stating that "we do not believe that Congress intended to impose upon insurance

companies doing business with ERISA-regulated plans the same disclosure obligations that have

been imposed upon trustees at common law").

The Ninth Circuit explains that the fiduciary exception has two distinct rationales. First,

some courts have characterized the exception as derived from an ERISA trustee's duty to

disclose all information regarding plan administration to plan beneficiaries. *Mett*, 178 F.3d

at 1063. Thus, "the fiduciary exception can be understood as an instance of the attorney-client

privilege giving way in the face of a competing legal principle." *Id.* Second, other courts "have

focused instead on the role of the trustee and have endorsed the notion that, 'as a representative

for the beneficiaries of the trust which he is administering, the trustee is not the real client in the

sense that he is being personally served.'" *Id.* (quoting *United States v. Evans*, 796 F.2d 264, 266

(9th Cir. 1986)). Thus, under the second rationale, the exception is not really an exception at all—"[r]ather, it merely reflects the fact that, at least as to advice regarding plan administration, a trustee is not 'the real client' and thus never enjoyed the privilege in the first place." *Id.*

The fiduciary exception to attorney-client privilege is limited. The Ninth Circuit explains that "while the fiduciary exception does apply to advice on matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains in an effort to protect herself from civil or criminal liability." *Id.* at 1066. The Ninth Circuit describes two ends of a spectrum:

> On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

*Id.* at 1064. A "communication-by-communication" analysis is required to determine where discovery falls on this spectrum. *Id.* at 1065.

Two Ninth Circuit cases, *United States v. Mett* and *Stephan v. Unum Life Insurance Co. of America*, illustrate the boundaries of the fiduciary exception in the ERISA context. In *Mett*, two criminal defendants, Mett and Wiseman, were officers and directors of Center Art Galleries ("CAG"), which established two pension benefit plans for its employees. *Id.* at 1060. Mett and Wiseman served as trustees for the plans, and CAG served as the plans' administrator. *Id.* After CAG fell upon difficult financial times, Mett and Wiseman withdrew about $1.6 million from the pension plans and deposited the money into CAG's general operating accounts without informing their employees of the transactions or disclosing the withdrawals to the IRS. *Id.* at 1061. A jury found Mett and Wiseman guilty of embezzling from their employees' pension

benefit plans, among other crimes. *Id.* Mett and Wiseman argued at trial that they did not possess the requisite specific intent when they withdrew the funds from the pension plans, and that they intended their actions to benefit their employees. *Id.*

On Mett and Wiseman's appeal of their convictions, the Ninth Circuit considered whether two legal memoranda that had been admitted at trial should have been excluded in light of the attorney-client privilege. *Id.* The two memoranda, which were prepared before the government took any legal action against Mett and Wiseman, related to potential civil and criminal consequences of the pension plan withdrawals. *Id.* at 1062. The memoranda described the potential civil and criminal exposure that Mett and Wiseman might face in light of the withdrawals and the civil and criminal penalties associated with the transactions. *Id.* The Ninth Circuit held that the fiduciary exception did not apply as "[b]oth the text and content of the . . . memoranda indicate that they ought to have been treated as privileged matter." *Id.* at 1064. The Ninth Circuit explained that although the memoranda were prepared before any legal action was taken against Mett and Wiseman, "[t]rouble was in the air" and the defendants had "good reason" to seek advice concerning potential liabilities arising from the withdrawals. *Id.* Additionally, the advice rendered in the memoranda "was not prepared for the benefit of the plan or the beneficiaries, nor was it advice regarding administration of the plan." *Id.* Rather, the memoranda served to advise Mett and Wiseman "regarding their own personal civil and criminal exposure in light of undocumented withdrawals that had already occurred." *Id.*

On the other end of the spectrum is the Ninth Circuit's decision in *Stephan*. In *Stephan*, the plaintiff was insured under his employer's long-term disability plan. 697 F.3d at 921. The defendant was the plan administrator. *Id.* The plaintiff disputed the defendant's calculation of his pre-disability earnings upon which his disability benefits were based. *Id.* The district court

denied the plaintiff's motion to compel discovery of a series of internal memoranda created by the defendant's in-house counsel regarding the plaintiff's claim, holding that the fiduciary exception did not apply because "the interests of the plaintiff and defendant had sufficiently diverged at the time the disputed memoranda were created." *Id.* at 923 (quotation marks omitted).

Upon review, the Ninth Circuit reversed, holding that the fiduciary exception did apply because "[u]nlike the memoranda in *Mett*, the disputed documents offer advice solely on how the Plan ought to be interpreted. They do not address any potential civil or criminal liability [the defendant] might face, nor is there any indication that they were prepared with such liability in mind." *Id.* at 932. Rather, "the documents here were prepared to advise [the defendant's] claims analysts about how best to interpret the Plan, and were communicated to the analysts before any final determination of [the plaintiff's] claim had been made." *Id.* at 933. The Ninth Circuit rejected the defendant's argument that the fiduciary exception should not apply because the documents were created after the defendant had been contacted by the plaintiff's counsel, and therefore "after there was an indication that the parties may become adverse." *Id.* at 932-33 (quotation marks omitted). The Ninth Circuit explained that the communications occurred in advance of the defendant's decision on the plaintiff's benefits appeal and that "[m]ost courts have held that it is not until after the final determination—that is, after the final administrative appeal—that the interests of the Plan fiduciary and the beneficiary diverge for purposes of application of the fiduciary exception," and that the Ninth Circuit agreed "with the weight of authority." *Id.* at 933. The Ninth Circuit concluded that the fiduciary exception applied to the documents because "advice on the amount of benefits [the plaintiff] was owed under the Plan,

given before [the defendant] had made any final determination on his claim, constitutes advice on plan administration." *Id.*

## 2. The Parties' Arguments

Plaintiffs argue that the attorney-client privilege does not protect the requested documents and testimony because the fiduciary exception applies. Providence responds that the fiduciary exception does not apply because most of the discovery Plaintiffs seek does not fall within the limited time periods during which Providence acted as a fiduciary with respect to each Plaintiff. Providence also asserts that to the extent that any of the discovery Plaintiffs seek falls within the relevant time periods, as defined by Providence, the materials contain no information concerning the administration of Plaintiffs' Plans.

Providence argues that unless and until a claim is made under an employer's benefit Plan, Providence's fiduciary duty to a particular individual is not triggered. According to Providence, this is because each of five ERISA Plans at issue in this lawsuit purchased health insurance from Providence under a one-year contract. Before each purchase, Providence created group health coverage products available for purchase. Providence asserts that when it created these products, it was acting solely on its own behalf and not on behalf of any employer-sponsored Plan because its product had not yet been purchased. Thus, Providence argues, attorney-client communications regarding benefit design and limitations are undertaken to further Providence's business interests and not to fulfill a fiduciary duty.

Providence argues that to the extent that it sought to protect its own interests as the insurer, as opposed to acting purely as a trustee for the interest of the beneficiaries, the basis for any fiduciary exception is absent. Providence cites to *Wachtel v. Health Net, Inc.*, in support of this argument. In *Wachtel,* the Third Circuit held that the fiduciary exception does not apply to insurance companies making benefits determinations in part because "an insurer which sells

insurance contracts to ERISA-regulated benefit plans is itself the sole and direct client of counsel retained by the insurer, not the mere representative of client-beneficiaries, and not a joint client with its beneficiaries." 482 F.3d at 235. Notably, the Ninth Circuit reached the opposite conclusion in *Stephan*, holding that the fiduciary exception *does* apply to insurance companies making benefits determinations. 697 F.3d at 931-32. The Ninth Circuit noted that ERISA has broad disclosure requirements and that neither ERISA nor its implementing regulations "provide any reason why the disclosure of information is any less important where an insurer, rather than a trustee or other ERISA fiduciary, is the decisionmaker." *Id.* at 932 (explaining that ERISA requires that "upon request, a claimant be provided all 'information relevant to the claimant's claim for benefits,' 29 C.F.R. § 2560.503-1(h)(2)(iii)"). The Ninth Circuit concluded that there is "no principled basis for excluding insurers from the fiduciary exception" because "the obligation that an ERISA fiduciary act in the interest of the plan beneficiary does not differ depending on whether that fiduciary is a trustee or an insurer." *Id.*

Plaintiffs argue that Providence was acting as a fiduciary to all Plaintiffs when it created the documents in question and held discussions about its policies regarding ABA therapy coverage. Accordingly, Plaintiffs state that Providence's fiduciary duties to each Plaintiff are not limited in scope and subject matter in the manner that Providence describes. The Court agrees. ERISA describes a "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Plans applicable to each Plaintiff state in relevant part:

To the extent this Group Contract relates to an employee benefit plan that is governed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, the Employer's responsibilities and Providence Health Plan responsibilities include the following:

- The Employer is responsible for furnishing summary plan descriptions, annual reports and summary annual reports to plan participants and to the government as required by ERISA.

- The Employer and not Providence Health Plan is the "Plan Administrator" as defined in ERISA. . . .

- The Employer gives Providence Health Plan, acting for the "Plan Administrator," the discretionary authority to interpret the terms of the related ERISA plan, to make factual determinations relevant to benefit determinations and to otherwise decide all questions regarding eligibility for benefits under the plan.

Benefits shall be payable to a Member under the ERISA plan and this Group Contract only if Providence Health Plan, in its discretion, determines that such benefits are payable.

Dkts. 114, 114-1. In addition, Providence has admitted that when carrying out its delegated authority, it has the responsibilities of a fiduciary under ERISA. Dkt. 144 ¶ 5 (Answer to Second Amended Complaint); *see also* Dkt. 143-2 at 6 (August 29, 2013 Jensen Deposition) (testifying that Providence serves a fiduciary to beneficiaries, and that Plan members are beneficiaries).

The evidence in this case reveals that Providence's decisions regarding ABA therapy coverage were made on a company-wide basis and not on an individual Plan beneficiary basis. First, the governing documents for Plaintiff's individual Plans are identical in all material respects. All of Providence's Oregon member handbooks and group contracts contain identical provisions regarding Mental Health Services, including the definition of Mental Health; and identical Exclusions specific to Mental Health Services, including the Developmental Disability Exclusion and Experimental Exclusion. Dkt. 143-3 at 4-7.

PAGE 24 – OPINION AND ORDER

Second, Jensen repeatedly testified on behalf of Providence that Providence made decisions regarding plan administration and ABA benefits determinations on a company-wide basis. *See, e.g.*, Dkt. 143-2 at 7-8 (August 29, 2013 Jensen Deposition) (testifying that Providence doesn't administer ERISA and non-ERISA Plans differently); *id.* at 9-10 (testifying that Providence has an obligation to apply Plan exclusions uniformly to all Plan members); Dkt. 143-4 at 9 (June 2, 2015 Jensen Deposition) (testifying that Providence made a company-wide decision to cover ABA therapy beginning January 2014).

Additionally, Jensen testified in 2013 that Providence always denies claims for ABA therapy on the basis of the Developmental Disability Exclusion. Dkt. 63-1 at 3, 14-15 (August 29, 2013 Jensen Deposition). This was because Providence interpreted Autism Spectrum Disorder as a developmental disability or involving developmental delay in all cases in which a member sought ABA treatment. *Id.* at 14; *see also* Dkt. 119-2 at 7-8 (August 29, 2013 Jensen Deposition) (testifying that Providence applied the Developmental Disability Exclusion "across the board as to all of its members who have autism"); *Id.* at 10 (testifying that the basis for Providence's denial of coverage for A.F.'s case was exactly the same as the basis for Providence's denial of coverage in A.P.'s case).

Thus, Providence made decisions "regarding eligibility for benefits" for ABA therapy and "interpret[ed] the terms of the [Plans]" relating to ABA therapy coverage and the Developmental Disability and Experimental Exclusions not on an individual member or Plan-by-Plan basis, but on a company-wide basis. Dkt. 114-1. Accordingly, Providence's argument that it only undertook a fiduciary duty with respect to each Plaintiff when they filed a claim for ABA therapy is unavailing. Providence acted as a fiduciary with respect to each Plaintiff's Plan when it made its company-wide decisions regarding ABA therapy coverage. *See Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (emphasis in original) (stating that in the ERISA

context, "one is a fiduciary to the extent he exercises *any* discretionary authority or control").

### 3. Application of the Exception to the Requested Discovery

#### a. Request Number One

In Request Number One, Plaintiffs seek to compel production of documents listed in

Providence's April 23, 2015 Amended Privilege Log, and documents listed in Providence's

August 13, 2015 Emails Privilege Log.[7]

The documents listed in Providence's April 23, 2015 Amended Privilege Log are minutes

of ERMC meetings dated January 12, 2009 through September 8, 2014. The Amended Privilege

Log indicates that ABA therapy was discussed at most of the meetings.[8] Providence asserts that

the fiduciary exception does not apply to the minutes from the ERMC meetings because the

ERMC is not an ERISA fiduciary. Dkt. 140 ¶ 5. This argument is unavailing. The ERMC is not

an entity that is separate from Providence; rather, the ERMC is a committee comprised of

Providence officers and employees, including Providence's Chief Operating Officer, Chief

Executive Officer, and Chief Medical Officer. Dkt. 143-4 at 10-13 (June 2, 2015 Jensen

Deposition); Dkt. 143-5 at 1. The ERMC engaged in discussions regarding ABA therapy

coverage for Plan participants, including discussions concerning the use of the Experimental

Exclusion. Dkt. 143-4 at 15 (June 2, 2015 Jensen Deposition) (testifying that the ERMC

repeatedly discussed ABA therapy); *id.* at 5-6 (testifying that the ERMC discussed ending the

---

[7] Plaintiffs do not seek production of documents that the August 13, 2015 Emails Privilege Log describes as "AF Lawsuit Discussion" and "Lawsuit RFPs."

[8] Plaintiffs state that to the extent that the topics discussed at the meetings do not relate to Autism Spectrum Disorder, ABA therapy, or the Developmental Disability Exclusion, Plaintiffs do not object to Providence redacting the minutes. Such redaction is appropriate.

practice of denying ABA therapy claims on the basis of the Experimental Exclusion in order to avoid IRO review).

The Court grants Request Number One in part, as follows: First, Providence must produce all requested documents to the extent that they concern plan administration, such as how the Plan or Plans ought to be interpreted or applied, and "do not address any potential [or actual] civil or criminal liability . . . [or] were prepared with such liability in mind." *Stephan*, 697 F.3d at 932. Second, this obligation by Providence is not limited to documents that provide advice regarding how the Plan or Plans ought to be applied to any specific or named participant or claimant, but also include advice regarding how the Plan or Plans are to be interpreted or applied in general. Third, the Court notes that the interests of the ERISA fiduciary and the beneficiary diverge for purposes of the fiduciary exception after the final administrative appeal, *id.* at 933, and that the earliest date of the final determination of any Plaintiff's final administrative appeal is April 30, 2013.[9] Thus, Providence need not produce otherwise responsive documents dated after April 30, 2013. If there is any uncertainty or continuing dispute regarding whether any particular document needs to be produced under this ruling, Providence shall provide such document or documents to the Court-Appointed Special Master for *in camera* review, subject to further review, if necessary and upon objection, by the Court.

---

[9] The Court additionally notes that this lawsuit was filed soon afterward, on May 8, 2013. The Court recognizes that the final determination of S.W. and I.F.'s claims did not occur until February 2014, and that S.W., S.S., and I.F. were not named as Plaintiffs in this action until the second amended class action complaint was filed on June 29, 2015. Plaintiffs, however, have not provided the Court with any authority or argument regarding how to distinguish between Plaintiffs' interests for purposes of the fiduciary exception. The interests of A.F. and Providence diverged on April 30, 2013, when Providence denied A.F.'s second-level appeal. A.F. and the rest of the Plaintiffs bring essentially the same claims and seek essentially the same remedies. Accordingly, the Court finds no reasoned basis for distinguishing among Plaintiffs' interests for purposes of the fiduciary exception.

### b.  Request Number Two

In Request Number Two, Plaintiffs seek to compel production of documents and communications of any type relating to Providence's conversations with counsel about Providence's use of the Developmental Disability Exclusion not related to litigation, as discussed in the August 29, 2013, and June 2, 2015, Jensen depositions.

The Court grants Request Number Two in part, as follows: First, Providence must produce all requested documents and communications to the extent that they concern plan administration, such as how the Plan or Plans ought to be interpreted or applied, and "do not address any potential [or actual] civil or criminal liability . . . [or] were prepared with such liability in mind." *Id.* at 932. Second, this obligation is not limited to documents or communications that provide advice regarding how the Plan or Plans ought to be applied to any specific or named participant or claimant, but also include advice regarding how the Plan or Plans are to be interpreted or applied in general. Third, the Court notes that the interests of the ERISA fiduciary and the beneficiary diverge for purposes of the fiduciary exception after the final administrative appeal, *id.* at 933, and that the earliest date of the final determination of any Plaintiff's final administrative appeal is April 30, 2013. Thus, Providence need not produce otherwise responsive documents or communications dated after April 30, 2013. If there is any uncertainty or dispute regarding whether any particular document or communication needs to be produced under this ruling, Providence shall provide such document or communication to the Court-Appointed Special Master for *in camera* review, subject to further review, if necessary and upon objection, by the Court.

### c.  Request Number Three

In Request Number Three, Plaintiffs seek to compel production of testimony from deponents, including Jensen and witnesses whom Plaintiffs plan to depose after the Court rules

on this Motion, relating to Providence's conversations with counsel about Providence's use of the Developmental Disability Exclusion not related to litigation.

The Court grants Request Number Three in part, as follows: First, Plaintiffs may depose witnesses regarding Providence's conversations with counsel about Providence's use of the Developmental Disability Exclusion to the extent that counsel offered advice concerning plan administration, such as how the Plan or Plans ought to be interpreted or applied, and "d[id] not address any potential [or actual] civil or criminal liability . . . ." *Id.* at 932. Second, this obligation is not limited to conversations with counsel that provide advice regarding how the Plan or Plans ought to be applied to any specific or named participant or claimant, but also include advice regarding how the Plan or Plans are to be interpreted or applied in general. Third, the Court notes that the interests of the ERISA fiduciary and the beneficiary diverge for purposes of the fiduciary exception after the final administrative appeal, *id.* at 933, and that the earliest date of the final determination of any Plaintiff's final administrative appeal is April 30, 2013. Thus, Providence's witnesses need not answer otherwise responsive questions regarding Providence's conversations with counsel that occurred after April 30, 2013. If there is any uncertainty or dispute regarding whether any particular deposition question needs to be answered under this ruling, Providence shall provide the question and the presumptive answer to the Court-Appointed Special Master for *in camera* review, subject to further review, if necessary and upon objection, by the Court.

### d.  Request Number Four

In Request Number Four, Plaintiffs seek to compel production of redacted portions of email strings previously produced by Providence and Bates labeled PHP005857, PHP005859, PHP005861, PHP005862, PHP006316, PHP006342-44, PHP006374, PHP006378, PHP006387, PHP006896-8, PHP006906, PHP006919, PHP006923, PHP006927, PHP006929, PHP007725,

PHP007799-800, PHP7806-09, PHP007814-15, PHP007820-23, PHP007828, PHP007834-36,

PHP007846-49, PHP007859-62, PHP007867, PHP007871-73, PHP007878-80, PHP007884-85,

PHP007889, PHP007893-94, PHP007899-901, PHP007906-08, PHP007919-20, and

PHP007924.

      The Court grants Request Number Four in part, as follows: First, Providence must

produce the redacted portions of the specified emails to the extent that they concern plan

administration, such as how the Plan or Plans ought to be interpreted or applied, and "do not

address any potential [or actual] civil or criminal liability . . . [or] were prepared with such

liability in mind." *Id.* at 932. Second, this obligation is not limited to redactions that provide

advice regarding how the Plan or Plans ought to be applied to any specific or named participant

or claimant, but also include advice regarding how the Plan or Plans are to be interpreted or

applied in general. Third, the Court notes that the interests of the ERISA fiduciary and the

beneficiary diverge for purposes of the fiduciary exception after the final administrative appeal,

*id.* at 933, and that the earliest date of the final determination of any Plaintiff's final

administrative appeal is April 30, 2013. Thus, Providence need not produce the redacted portions

of otherwise responsive emails dated after April 30, 2013. If there is any uncertainty or dispute

regarding whether any particular document (or portion of a document) needs to be produced

under this ruling, Providence shall provide such document or documents (or relevant portions

thereof) to the Court-Appointed Special Master for *in camera* review, subject to further review,

if necessary and upon objection, by the Court.

## C. Whether Providence Waived the Attorney-Client Privilege

      Plaintiffs alternatively argue that Providence waived the attorney-client privilege with

respect to the requested documents on the grounds that Providence voluntarily disclosed its

communications with counsel to Optum, a third-party corporate entity. A party may waive

attorney-client privilege by voluntary disclosure. *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990); *see also Weil*, 647 F.2d at 24 (stating that "it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."). Voluntary disclosure of a privileged attorney communication waives the privilege on all other communications on the same subject. *Plache*, 913 F.2d at 1380 (citing *Weil*, 647 F.2d at 25); *see also* Paul R. Rice, 2 *Attorney-Client Privilege in the United States* § 9:32 ("The voluntary disclosure of a privileged communication not only waives the privilege protection for that communication, it may also destroy the privilege that protects other communications relating to the same subject matter."). The party asserting attorney-client privilege bears the burden of proving that the privilege applies and that the privilege has not been waived. *See Ruehle*, 583 F.3d at 607-08.

Plaintiffs identify an email dated July 19, 2012, in which Jensen forwarded his communications with counsel to Optum. The email from Jensen to Optum reads as follows:

> Jack & Lisa—I need your help in changing the denial language in your letters for members who are seeking ABA services.
>
> Today PBH denies them as being "experimental/investigational". Our position on this has not changed, however when we deny them this way it makes them eligible for IRO (who is overturning them).
>
> We are no longer allowing them to go to the IRO, but need to have the language changed in your letter.
>
> How quickly can this be done?
>
> Mark

Dkt. 135-3 at 19-20 (Bates Numbers PHP006315-16). Below this text was the forwarded email from Providence's counsel, which Providence redacted when it produced the email string to Plaintiffs. Plaintiffs argue that by voluntarily disclosing the contents of counsel's email to

Optum, Providence waives attorney-client privilege "as to all other such communications on the same subject." *See Weil*, 647 F.2d at 24.

Plaintiffs also identify an email dated October 25, 2013 from Jensen to Optum in which Jensen describes this lawsuit and requests that Optum start denying ABA therapy coverage based on both the Developmental Disability Exclusion and the Experimental Exclusion. Dkt. 135-3 at 8 (Bates Number PHP006244). Jensen copied Providence's counsel in the October 25, 2013 email.

Providence responds that it did not waive the attorney-client privilege with respect to the requested documents and testimony by sending these two emails to Optum because the information Providence shared with Optum was not privileged attorney-client communication. "The disclosure of *nonprivileged communications* . . . does not affect the status of other related privileged communications." Rice, § 9:29 (emphasis in original). The October 25, 2013 email is not privileged. In addition, Providence already disclosed the entire email, without redactions, to Plaintiffs. Providence did not waive the attorney-client privilege with respected to the requested documents and testimony by sending the October 25, 2013 email to Optum or to Plaintiffs because this email was a nonprivileged communication.

Providence, however, asserts the attorney-client privilege with regard to the attachment to the email dated July 19, 2012, that Providence sent to Optum. Providence redacted the entirety of the forwarded message from counsel, citing the attorney-client privilege, when it disclosed the document to Plaintiffs. Dkt. 135-3 at 20 (Bates Number PHP006316). Thus, Providence voluntarily disclosed a privileged attorney-client communication when it forwarded an email from its counsel to Optum on July 19, 2012.

Providence argues that this voluntary disclosure does not result in waiver of the attorney-client privilege because Optum is Providence's agent and thus operates within the scope of

PAGE 32 – OPINION AND ORDER

Providence's attorney-client privilege. In support of this argument, Providence cites *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), where the Eighth Circuit held that communications between corporate counsel and the corporation's independent consultant were covered by attorney-client privilege. *Id.* at 937-38. The Eighth Circuit discussed John E. Sexton's article *A Post*-Upjohn *Consideration of the Corporate Attorney-Client Privilege* and Sexton's theory that, following *Upjohn*,[10] the attorney-client privilege extends to "'an employee, agent, or independent contractor with a significant relationship to the corporation and the corporation's involvement in the transaction that is the subject of legal services.'" *Id.* at 937 (quoting John E. Sexton, *A Post*-Upjohn *Consideration of the Corporate Attorney-Client Privilege*, 57 N.Y.U. L. Rev. 443, 487 (1982)); *see also* Rice, § 9:29 (stating that waiver by voluntary disclosure does not apply to "agents of either the attorney or the client").

The Eighth Circuit reasoned that "too narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely." *Id.* at 937-38. The independent consultant in *Bieter* was involved on a daily basis with the development company and was the company's "sole representative at meetings with potential tenants and local officials." *Id.* at 938. The Eighth Circuit explained that "his involvement in the subject of the litigation makes him precisely the sort of person with him a lawyer would wish to confer confidentially" and "he was in all relevant respects the functional

---

[10] In *Upjohn Co. v. United States*, the Supreme Court held that a corporation's attorney-client privilege "extends to communications between corporate employees and corporate counsel as long as the communications are 'made at the direction of corporate superiors in order to secure legal advice.'" *United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010) (quoting *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (citing *Upjohn*, 449 U.S. at 390-94)).

equivalent of an employee." *Id.* (citing *Upjohn*, 449 U.S. at 389; *McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D. Cal. 1990)).

In *ASU Students for Life v. Crow*, 2007 WL 2725252 (D. Ariz. Sept. 17, 2007), the court applied *Bieter* and held that the attorney-client privilege applied to communications between counsel and members of student groups who were not direct clients of the attorneys. *Id.* at *3. The court explained as follows:

> It is true that several others were copied with the communications from [the plaintiff] to [counsel]. However, all of those copied were either other attorneys or directly involved in the . . . project . . . . [the] communications were shared with those having a reasonable need to know about the content of the communications.

*Id.* (citing *Bieter*, 16 F.3d at 939). After *ASU Students* was decided, the Ninth Circuit adopted the principles announced in *Bieter* and held that an independent consultant was covered by a company's attorney-client privilege. *United States v. Graf*, 610 F.3d 1148, 1159 (9th Cir. 2010).

Although Optum is a separate company from Providence, Providence has a contract with Optum and Optum processes mental and behavioral health claims on behalf Providence. Dkt. 135-2 at 17 (August 29, 2013 Jensen Deposition) (testifying that "Providence contracts with Optum as a partner, vendor/partner, to provide all behavioral health and mental health services" and that Optum handles the claims for mental and behavioral health). On July 19, 2012, Providence forwarded an email from its counsel to Optum in the context of asking Optum to change its language regarding ABA therapy coverage in letters Optum sends to Plan members on behalf of Providence. Subsequent emails between Providence and Optum reveal that Providence was changing the denial language "based on an opinion of their legal consul [sic]". Dkt. 135-3 at 18 (Bates Number PHP006314). Thus, Optum had a "significant relationship to [Providence] and [Providence's] involvement in the transaction that is the subject of legal services," and Optum had a "reasonable need to know about the content of the communications." *See* Sexton,

PAGE 34 – OPINION AND ORDER

at 487; *ASU Students*, 2007 WL 2725252, at *3. Accordingly, the Court concludes that because Optum was acting as Providence's agent, Providence did not waive the attorney-client privilege when it forwarded the email from its counsel to Optum.

## CONCLUSION

Plaintiffs' Motion to Compel (Dkt. 134) is GRANTED IN PART, as described on pages 26-30 of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 24th day of March, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge