**Keith S. Dubanevich**, OSB No. 975200
Email: kdubanevich@stollberne.com
**Joshua L. Ross,** OSB No. 034387
Email:  jross@stollberne.com
STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.
209 SW Oak Street, 5th Floor
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:  (503) 227-6840

**Megan E. Glor**, OSB No. 930178
Email: megan@meganglor.com
MEGAN E. GLOR ATTORNEYS AT LAW
621 SW Morrison Street, Suite 900
Portland, OR 97205
Telephone:     (503) 223-7400
Facsimile:      (503) 227-2530

**Attorneys for Plaintiffs**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIVISION OF PORTLAND

| | |
|---|---|
| A.F., by and through his parents and guardians, Brenna Legaard and Scott Fournier; and A.P., by and through his parents and guardians, Lucia Alonso and Luis Partida, S.W., by and through his parents and guardians, Kody Whipple and Jamie Whipple; S.S., by and through his parents and guardians, David Smith and Brooke Kennelley; I.F., by and through his parents and guardians, Bryan Fowler and Susan Rogers Fowler, and on behalf of similarly situated individuals,<br><br>          Plaintiffs,<br><br>     v.<br><br>Providence Health Plan,<br><br>          Defendant. | Case No. 3:13-cv-00776-SI<br><br>**UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM** |

## LR 7-1 CERTIFICATION

In compliance with Local Rule 7-1(a), the parties, through their respective counsel, have conferred and are in agreement on the proposed disposition of this motion.

## I.   INTRODUCTION AND MOTION.

The Lead Class Plaintiffs and Class Counsel are pleased to request the Court's approval of the settlement of the Class (First) Claim asserted in this case.  That settlement was accomplished in conjunction with a global settlement of all claims asserted in the Second Amended Class Action Allegation Complaint.  Lead Class Plaintiffs and Class Counsel have achieved an excellent result for the Class.  As described in more detail below, the settlement obtains all relief sought on behalf of the class.  The Settlement is fair, adequate, and reasonable. By this Motion, Lead Class Plaintiffs ask the Court to approve the negotiated settlement of the Class (First) Claim, which is described in greater detail below and includes settlement of the Class (First) Claim for injunctive relief, payment of Class Representative Service Awards to the Lead Class Plaintiffs, and payment of attorney fees and costs to Class Counsel.

As the Court will recall, this case involves claims by children with autism against their health insurer, Providence Health Plan.  The case has been vigorously litigated by both sides for nearly four years, including extensive discovery, depositions, motion practice, and briefing of a still-pending motion for summary judgment.  The operative Complaint—the Second Amended Class Action Allegation Complaint—alleges three claims: a class claim brought by Lead Class Plaintiffs, A.F. and A.P., on behalf of a certified class and seeking injunctive relief (the "Class (First) Claim"); a claim brought by plaintiffs A.F., A.P., S.W., I.F., and S.S. seeking equitable

Page 1 **- UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

relief (the "Second Claim"); and a claim brought by plaintiffs A.F., A.P., S.W., and I.F. seeking recovery of benefits due and a declaration of future benefits (the "Third Claim").

In fall 2016, A.F. and A.P., on behalf of the class, the five individual parties, and Defendant agreed to mediate this case and retained Retired Oregon Supreme Court Chief Justice Paul De Muniz as mediator.  The parties negotiated in good faith over the course of two days and were able to reach an agreement on the key terms of the settlement in late November 2016.  Over the following months, the parties negotiated and prepared a comprehensive Settlement Agreement, including settlement of the Class (First) Claim, which was subsequently signed by all parties.

Accordingly the parties now request the Court's final approval of settlement of the Class (First) Claim as follows: (1) approving settlement of the Class (First) Claim as fair, adequate, and reasonable; (2) approving, as part of the settlement agreement, a class representative service award of $10,000 to Lead Class Plaintiff A.F. and a class representative service award of $10,000 to Lead Class Plaintiff  A.P.; (3) approving final settlement of the Class (First) Claim without notice to class members; (4) approving, as part of the resolution of the Class (First) Claim, payment of $638,244.25 in attorneys' fees and out-of-pocket costs to Class Counsel; and (5) entry of a final judgment and dismissal of the Class (First) Claim as to all class members, excluding Lead Class Plaintiffs, with prejudice as to the Class (First) Claim for injunctive relief only and without prejudice as to all other forms of relief, and as to all named Plaintiffs including the Lead Class Plaintiffs with prejudice in its entirety as to all forms of relief.

## II.    SUMMARY OF NEGOTIATIONS AND SETTLEMENT TERMS.

As noted, the parties attended a multi-day mediation with Justice De Muniz.  The parties negotiated settlement in a sequential manner, starting first with negotiation and resolution of the

Page 2 **- UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

Class (First) Claim and then, separately, negotiation and resolution of the two claims brought by the individual plaintiffs (the Second and Third Claims). Only after the parties had reached conditional agreement on the terms of settlement that would resolve the substantive claims did the parties begin negotiation of payment of attorneys' fees and costs to plaintiffs' counsel.

Regarding the Class (First) Claim, the operative terms of the settlement agreement include a prohibition against Defendant ever using the Developmental Disability Exclusion to deny claims for Applied Behavioral Analysis. The terms of that agreement are fully consistent with this Court's August 8, 2014, Order, Dkt. 91, and resolve the Class (First) Claim by securing all of the relief sought in the Class (First) Claim. In addition, Defendant further agreed to pay each Lead Class Plaintiff a $10,000 class representative service award.

The relevant terms of the settlement include the following:

1.     Class Claim.

      a.     <u>First Claim</u>. Upon Court approval of the terms of this Agreement and at all times thereafter, Providence is hereby contractually bound to refrain from invoking or relying on the Developmental Disability Exclusion as a basis for denying claims for ABA therapy or any other medically appropriate treatment for autism spectrum disorder ("Agreement re: Developmental Disability Exclusion").

      b.     Providence will pay $10,000 each to (1) Plaintiffs Brenna Legaard and Scott Fournier as parents and guardians of Aaron Fournier, and (2) Lucia Alonso and Luis Partida as parents and Guardians of Alexandro Partida, for their service as class representatives ("Class Representative Service Awards").

      c.     <u>No Notice To Class Members</u>. Because the Settlement Agreement releases only the rights of Class Members to seek injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) and requires no release of any monetary remedies or statutory damages by Class Members other than the named Plaintiffs, the Parties agree that notice of this settlement is not necessary. Plaintiffs agree to seek Court approval of the settlement without notice to Class Members.

Page 3 **- UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

In the event the Court requires issuance of notice for any purpose, Providence will be responsible for any such costs that must be incurred as a condition of Court approval of the settlement.

In exchange, A.F. and A.P. provide the following release relating to the Class (First) Claim, while preserving all claims for damages and monetary relief on behalf of absent class members:

In consideration of the agreement re: Developmental Disability Exclusion, and in consideration of the agreement regarding Attorney Fees and Costs, and other good and valuable consideration, on the Effective Date, Plaintiffs and the Class Members release Providence and its affiliates, officers, directors, managers, members, employees, agents, experts, consultants and attorneys from any claims for injunctive relief relating to Plaintiffs' First Claim. This release does not include any claims for damages or other monetary relief the Class Members, other than the named Plaintiffs, may have against Providence relating to the allegations and causes of action in the Complaint.

Further, A.F. and A.P., on behalf of the class, agree to dismissal of the Class (First) Claim as set forth below upon the Court's approval of the settlement:

a.    First Claim:

i.    As to Class Members, excluding the named Plaintiffs, with prejudice as to injunctive relief only and without prejudice as to all other forms of relief;

ii.    As to the named Plaintiffs, with prejudice in its entirety as to all forms of relief.

After reaching a conditional agreement to resolve the First, Second, and Third Claims for relief, the parties then negotiated an arms-length resolution of the claim for attorneys' fees and costs with the assistance of Justice De Muniz.  After extensive negotiations, the parties reached an agreement pursuant to which Providence will pay a sum certain to Stoll Berne.  Plaintiffs' counsel allocated $638,244.25 of the fee payment to the work performed and costs advanced on the Class (First) Claim.   Declaration of Joshua L. Ross in Support of Motion to Approve Settlement ("Ross Decl.") ¶ 6.  That apportionment is a result of an allocation of time and

**Page 4 - UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

expenses attributable to the Class (First) Claim and the individual claims.  The allocated amount

of attorney's fees and costs is consistent with, but not in excess of, plaintiffs' counsel's actual

lodestar and thus the settlement amount is fair and reasonable.  *Id* at ¶3.

## III.    LAW AND ARGUMENT.

### A.    Legal Standards.

When considering a motion for final approval of a class action settlement under Rule 23,

a court must determine whether the proposed settlement is "fair, adequate and reasonable."  Fed.

R. Civ. P. 23(e)(2); *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003).  A settlement merits

final approval when "the interests of the class are better served by the settlement than by further

litigation."  Manual for Complex Litigation (Fourth) § 21.61, (2015).  Although Rule 23 imposes

strict procedural requirements on the approval of a class settlement, a District Court's only role

in reviewing the substance of that settlement is to ensure that it is "fair, adequate, and free from

collusion."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998).

When reviewing a motion for approval of a class settlement, a court should give due

regard to "what is otherwise a private consensual agreement negotiated between the parties."

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F*., 688 F2d 615, 625 (9th Cir.

1982).  A court must therefore limit the inquiry "to the extent necessary to reach a reasoned

judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate

to all concerned."  *Id*.  "The involvement of experienced class action counsel and the fact that the

settlement agreement was reached in arm's length negotiations, after relevant discovery had

taken place create a presumption that the agreement is fair."  *Linney v. Cellular Alaska P'ship*,

1997 WL 450064, *5 (N.D.Cal. 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).  The Ninth Circuit

Page 5 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir 1992).

In deciding whether to grant approval to a class action settlement, courts consider several factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.* ("*In re Online DVD*"), 779 F.3d 934, 944 (9th Cir. 2015).  As explained below, after applying this criteria, final approval of the Settlement is appropriate.

**B.    Factual and Procedural Background.**

This case was filed on May 8, 2013.  Dkt. 1.  The Court is familiar with the facts and allegations as described in multiple Orders referenced below.  In response to the Original Complaint, the defendant filed a motion to strike the Complaint. Dkts. 5, 6.  On June 13, 2013, the Plaintiffs filed a First Amended Class Action Allegation Complaint.  Dkt. 9. Plaintiff A.P., moved for a preliminary injunction on August 2, 2013.  Dkts. 21, 22.  That motion was resolved by agreement of the parties.  The parties then engaged in discovery focused on class certification issues.

On December 24, 2013, this Court granted the Plaintiffs' motion for class certification. Dkt. 56.  The Class is defined as follows:

> All individuals: (a) who are, or will be up to the date of class certification, beneficiaries of an ERISA health benefit plan (i) that is subject to Oregon law, (ii)

**Page 6 - UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

that contains an Exclusion for services related to developmental disabilities, developmental delays, or learning disabilities, (iii) and that has been or will be issued for delivery, or renewed, on or after January 1, 2007 up to the date of class certification, in the state of Oregon, by Providence Health Plan or any affiliate of Providence Health Plan, its predecessors or successors and all subsidiaries or parent entities; (b) who either have been or will be diagnosed, up to the date of class certification, with any diagnosis code beginning with 299 contained in either the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR, Fourth Edition) or the International Classification of Diseases, Ninth Edition (ICD-9); and (c) who are not (i) a parent, subsidiary, affiliate, or control person of Defendant, (ii) an officer, director, agent, servant or employee of Defendant, (iii) the immediate family member of any such person, or (iv) a class member who has previously released a claim for benefits under a settlement agreement.

*Id.* At 7-8.

The parties then engaged in discovery relating to the Class (First) Claim.  On August 8, 2014, this Court granted the Plaintiffs' motion for partial summary judgment and found that Providence's Developmental Disability Exclusion violated both the Federal Parity Act and Oregon law.  Dkt. 91.  Thereafter, the parties engaged in mediation but were unable to settle their dispute.  Dkt. 96.

On June 29, 2015, the Plaintiffs filed their Second Amended Class Action Allegation Complaint adding as plaintiffs S.W., S.S., and I.F.  Dkt. 102.  Additional discovery ensued including depositions of five Plaintiffs and multiple Providence employees.  The parties, collectively, took over a dozen depositions during the course of the case.  On January 7, 2016, this Court granted the Plaintiffs' motion for partial summary judgment with respect to their Third Claim for Relief, in part, and denied Providence's motion to dismiss the Second Claim for Relief.  Dkt. 133.  On March 24, 2016, this Court granted in part the Plaintiffs' motion to compel. Dkt. 147.  During the course of discovery over 46,000 pages (constituting over 7,500 documents) were exchanged between the parties.

Page 7 **- UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

On September 29, 2016, Providence filed its motion for summary judgment with respect to the Plaintiffs' Second Claim for Relief.  Dkts. 157, 159, 163.  The Plaintiffs responded on November 3, 2016. Dkt. 169.  Mediation was scheduled while the motion for summary judgment was pending.

      **C.**      **Preparations for and Settlement at Mediation.**

During the summer of 2016, counsel for the parties discussed the possibility of settlement.  In November 2016, they agreed to mediate the case and Justice De Muniz agreed to act as mediator.

Pursuant to the Court's Civil Trial Case Management Order, the Plaintiffs conferred with and engaged multiple experts including: Dr. Robert Nickel, OHSU Professor of Developmental Pediatrics, to opine on the benefits of ABA and the harm to the Plaintiffs as a result of not obtaining timely and adequate ABA, and Dr. Fred Fox, a healthcare economist to opine on the remedies and relief phase of the case.

Recognizing the possibility of potential conflicts between and among the Plaintiffs, and between the Plaintiffs and their attorneys, Stoll Berne engaged attorney Roy Pulvers, Senior Partner with Holland & Knight LLP, to provide advice regarding the ethical ramifications of the mediation and potential group settlement.  Stoll Berne also engaged attorney Matt Malmsheimer, a Partner with Haglund Kelley LLP, to advise the Plaintiffs regarding the attorney fees negotiations.  Ross Decl. ¶ 17; Declaration of Matthew E. Malmsheimer in Support of Motion to Approve Settlement ("Malmsheimer Decl.").

Page 8 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Throughout the course of the litigation, and at the mediation, the Plaintiffs were thoroughly apprised of all aspects of the case, including the experts' opinions.  The Plaintiffs also conferred with and obtained counsel from Mr. Malmsheimer, prior to and at the mediation. Malmsheimer Decl. ¶2; Legaard Decl. ¶2; Alonso Decl. ¶2.

The parties negotiated in good faith and at arm's length.  At the end of the first day of mediation, the parties reached a conditional agreement on all aspects of the case except attorneys' fees.  Counsel for both sides then met in a second setting with Justice De Muniz a few weeks later, and reached final agreement to resolve the attorneys' fees portion of the case.  At that time, the parties reached agreement to settle the entire case.  Declaration of Hon. Paul J. De Muniz in Support of Plaintiffs' Motion for Approval Settlement Agreement ("De Muniz Decl.") ¶¶ 3-10.

In addition to Providence's agreement to never use the Developmental Disability Exclusion again, Providence agreed (as described in more detail below) to pay a sum certain for Class Counsels' fees and costs, of which Class Counsel allocated to the Class (First) Claim the amount of $638,244.25.   In exchange, the Lead Class Plaintiffs and all Class Members fully release Providence with regard to any claim for injunctive relief, but specifically reserve (and do not release) all claims for damages or other monetary relief for the Class Members, other than the Lead Class Plaintiffs, as quoted above.

> **D.** **Application of the *In re Online DVD* Criteria Demonstrate that the Settlement is Fair and Reasonable and the Court Should Approve it.**

As noted above, Courts in this Circuit generally consider eight factors in assessing whether a class settlement is fair and reasonable.  *In re Online DVD*, 779 F.3d at 944.  Each of those factors supports a conclusion that the settlement here is fair and reasonable:

**Page 9 - UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

1.    The Strength of Plaintiffs' Case.

The Plaintiffs, effectively, prevailed on the Class (First) Claim when the Court granted Summary Judgment and found that Providence's application of the Developmental Disabilities Exclusion violated state and federal law. Dkt. 91. The Court has not yet signed a formal injunction. While the class prevailed on the Class (First) Claim, the Plaintiffs faced ongoing risk, time, expense, and uncertainty because of the risk of appeal. Had the case gone to trial and a formal injunction entered, Providence would likely have appealed the Court's ruling. An appeal may have delayed implementation of the injunction and the Plaintiffs certainly would have faced the additional time and expense of fighting the appeal, and the inherent risk of a reversal. Through settlement, the Plaintiffs obtained for the class all of the relief sought in the Class (First) Claim, because Providence has contractually promised to never again apply the Developmental Disabilities Exclusion to deny coverage of ABA. Accordingly, this factor weighs in favor of approval.

While not directly relevant to the Court's evaluation of the settlement of the Class (First) Claim, this factor, as it relates to resolution of the remaining individual claims, also supports approval. Although the Plaintiffs thoroughly investigated the factual and legal bases for the claims and developed substantial evidence supporting the allegations, significant risks were present in continuing the litigation had settlement not occurred. While the Plaintiffs substantially prevailed on the Third Claim, there was substantial uncertainty regarding whether they would overcome summary judgment on the Second Claim and whether they would prevail at trial. Moreover, there was a substantial risk that a verdict at trial in favor of the Plaintiffs would have increased the likelihood, expense, and risks associated with an appeal.

Page 10 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

     2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

Another factor in assessing the fairness of the proposed Settlement is the complexity, expense, and likely duration of this lawsuit had settlement not been achieved.  *Officers for Justice*, 688 F.2d at 625.  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002); *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. 2014).

Throughout this case, Providence vigorously defended its position and expressed every intention of continuing a significant defense, absent a settlement, through trial and on appeal.  An appeal would involve not only the substantive question of whether the Developmental Disability Exclusion was invalid, but also whether a class should have been certified.  Thus, the Class faced a risk that the relief obtained in the District Court would be reversed on appeal.

The Plaintiffs' counsel invested considerable time and expense during the present litigation, all of which was at risk.[1]  Indeed, the Plaintiffs' counsel's time and expenses exceeded $1.3 million at the time of mediation.  Ross Decl. ¶ 3.  Trial and appeals would likely have taken years to complete and would require a significant additional investment of time and expense.  As noted, the settlement secures for the Class all of the relief sought in the Class (First) Claim.  This factor weighs in favor of approval.

---

[1] Pursuant to Plaintiffs' agreement with class counsel, they were under no obligation to pay any fees or costs to Stoll Berne, regardless of the outcome of the litigation.

Page 11 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

3.     The Risk of Maintaining Class Action Status Throughout the Trial.

The Plaintiffs do not perceive any risk that the class would be decertified at any time prior to final judgment.  However, Providence vigorously opposed class certification, objected throughout the litigation to the Court's decision certifying the class, and was certain to appeal the class certification order.  The Plaintiffs and the Class thus risked losing certification on appeal. This factor weighs in favor of approval.

4.     The Amount Offered in Settlement.

The operative complaint does not seek monetary relief in favor of the Class, nor was any money offered in settlement of the Class (First) Claim beyond the class representative service awards to A.F. and A.P.  At mediation, the parties memorialized the terms of an agreement that is fully consistent with the Court's order striking the Developmental Disability Exclusion, and obtains all of the relief sought by the class.  The parties did not negotiate any other aspect of the case until an agreement was reached on the settlement of the class claim.[2]  This factor weighs in favor of approval.

5.     The Extent of Discovery Completed and the Stage of the Proceedings.

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case."  5 *Moore's Federal Practice*, § 23.85[2][e]

---

[2] Counsel are cognizant that in assessing the consideration obtained for the class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Officers for Justice*, 688 F.2d at 628.  However, here no monetary relief was sought by the Class in the operative complaint and thus counsel do not believe that the terms of settlement of the remaining claims are directly pertinent to the Court's inquiry.  Nonetheless, counsel would be pleased to submit the Settlement Agreement to the Court under seal should the Court desire, and counsel will be prepared to address settlement of those claims with the Court at any hearing.

Page 12 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

(Matthew Bender 3d ed.).  "If all discovery has been completed and the case is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of settlement."  4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:45 at 129 (4th ed. 2002).  A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.  *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *see also New York v. Reebok Int'l Ltd.*, 903 F.Supp. 532, 535 (S.D.N.Y. 1995), *aff'd*, 96 F.3d 44 (2nd Cir. 1996).

This factor supports approval of the settlement because at the time of settlement significant document discovery and depositions had been taken, discovery was substantially completed, and a motion for summary judgment was pending.  Further, at the time of settlement trial was scheduled for April 2, 2017, and while the parties sought to modify some pretrial deadlines, they did not seek to move the trial date.  *See* Dkts. 152, 153.  As a consequence, counsel and the parties were thoroughly familiar with the facts and legal issues and fully aware of the risks and benefits of further litigation, and the case was moving toward trial.  This factor supports approval.

> 6.    The Experience and Views of Counsel.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  Consequently, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)(quoting *Boyd v. Bechtel Corp.*, 485 F. Supp.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

610, 622 (N.D. Cal. 1979)).  Where class counsel is qualified and well informed, their opinion

that a settlement is fair, reasonable, and adequate is entitled to significant weight.  *See Pelletz v.*

*Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009).

     Mr. Dubanevich is a senior member of the Bar with extensive experience handing

complex and class action litigation.  Lawyers and staff working on this matter from Stoll Berne,

and Megan E. Glor Attorneys at Law, are also experienced in class action litigation, complex

civil litigation, and ERISA litigation.  *See* Dkts. 50, 51, 52, 53, 56 at 15; *and see* Declaration of

Megan E. Glor ("Glor Decl.") ¶¶ 3-4.  Through this Motion, Plaintiffs' counsel affirm their belief

that the settlement of the class claim is fair, adequate, and just.

     Class Counsel's opinion on the Settlement is entitled to great weight, particularly

because: (1) Class Counsel are competent and experienced in class action litigation; (2) Class

Counsel engaged in extensive discovery and exhaustively evaluated the claims in the context of

settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations

by experienced counsel, after a full-day mediation session, and multiple follow-up conversations

and negotiations, before an experienced mediator and former judge, and after the parties

accepted the mediator's proposal.  *See* De Muniz Decl.  ¶¶ 3-10; *see also McKinnie v. JP*

*Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that

"counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by

a mediator. . . suggest that the settlement is fair and merits final approval."); *In re Mexico Money*

*Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the

unanimously strong endorsement of these settlements" by "well-respected attorneys").  This

factor further supports final approval of the Settlement.

Page 14 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND SUPPORTING MEMORANDUM**

7.      The Presence of a Government Participant.

There were no government participants in this case.

8.      The Reaction of the Class Members to the Proposed Settlement.

The Lead Plaintiffs fully support the settlement of the class claim.  Legaard Decl. ¶3;

Alonso Decl. ¶3.  Because the Class is not a damages class, however, members of the class have

no right to opt-out and all class members will obtain through the settlement the full relief sought

in the litigation.  As discussed below, this factor should not be considered by the Court under

these circumstances.

**E.      The Settlement is Fair, Reasonable, and Adequate.**

As demonstrated by the factors above, the settlement is fair, adequate, and reasonable and

should be approved by the Court.  The Ninth Circuit puts "a good deal of stock in the product of

an arms-length, non-collusive, negotiated resolution."  *Rodriguez*, 563 F.3d at 965.  The Court's

role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion

between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted); *see*

*also In re Online DVD*, 779 F.3d at 944 (noting settlements in class actions "'present unique due

process concerns for absent class members,'" including the risk that class counsel 'may collude

with the defendants'") (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946

(9th Cir. 2011)).

Here, as noted, the settlement obtains full relief for the Class because Providence has

agreed to never again use the Developmental Disability Exclusion to deny claims for ABA

therapy.  Moreover, the Class's success on the Class Claim has been profound and plaintiffs'

successes in this case have reached far beyond the members of the Class.

Page 15 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

For example, the vast majority of children in Oregon who now receive coverage of ABA have that coverage because of the Class's success on the Class (First) Claim, including thousands of children who will never be Providence beneficiaries. That is because this lawsuit dramatically changed the Oregon Insurance Division's understanding of mental health parity. As a result of that change, the Division wrote bulletins requiring coverage of ABA and also immediately rendered illegal dozens or even hundreds of policy limitations on mental health coverage for all Oregonians in the private insurance market. See http://dfr.oregon.gov/laws-rules/Documents/Bulletins/bulletin2014-01.pdf and http://dfr.oregon.gov/laws-rules/Documents/Bulletins/bulletin2014-02.pdf. In large part because of the Court's ruling in this case, the Division re-wrote its mental health parity rules and, in effect, eliminated an exclusion the carriers had cited to refuse to cover mental health care for individuals with intellectual disabilities. As a result, large corporations with self-insured plans began covering ABA for their employees.

While this case has had far reaching impact on coverage of ABA for autistic children and the insurance industry generally, the settlement achieves for the Class the same relief awarded by the Court on August 8, 2014, and the same relief the class would have received had the case proceeded to trial and a formal injunction entered. The result obtained, the experience of counsel, and the factors described above are *prima-facie* evidence of a settlement that is fair and reasonable. *See Hughes v. Microsoft Corp.*, 2001 WL 34089697, *7 (W.D. Wash. 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery."); *see also Pelletz*, 255 F.R.D. at 542–43 (approving settlement "reached after good faith, arms-length negotiations"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567(W.D.

**Page 16 - UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND SUPPORTING MEMORANDUM**

Wash. 2004) (approving settlement "entered into in good faith, following arms-length and non-collusive negotiations"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). Indeed, this Settlement exhibits none of the "warning" signs that indicate possible collusion. *See In re Bluetooth*, 654 F.3d at 946–47.

> **F.    The Resolution of Attorneys' Fees and Costs in the Settlement is Also Fair and Reasonable.**
>
> > 1.    Providence's Agreement to Pay Attorney Fees is Separate From Other Relief Achieved in the Settlement.

As a component of the negotiated settlement of the Class (First) Claim, Providence has agreed to pay a certain sum for attorneys' fees and costs to Class Counsel which fully compensates Class Counsel for the total value of the actual time spent by Class Counsel on the Class (First) Claim ($638,244.25).  The Class (First) Claim did not seek monetary compensation. Because there is no monetary compensation paid to the Class, Class Counsel could not be compensated as a percentage of a common fund and only sought attorney fees and costs payable by Defendant directly.

Where attorney fees are *not* awarded from a common fund created for the class, and the fee award does not reduce the class's recovery, "the danger of conflicts of interest between attorneys and class members is diminished" and the "Court's fiduciary role in overseeing the award is greatly reduced."  *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012)(internal citation omitted).  Accordingly, settlement of the attorneys' fees claim, which is not premised on or connected to any recovery for the class, has no impact on the Class;

Page 17 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

Providence has agreed to pay the attorneys' fees and costs separately to counsel, and no class member is responsible for any payment to counsel. For that reason alone, the Court should approve the settlement.[3]

        2.      The Amount Providence Agreed to Pay for Attorney Fees and Costs is Fair and Reasonable and Appropriately Compensates Class Counsel.

The negotiated fee attributable to work on the Class (First) Claim is also fair, reasonable, and adequate because it compensates class counsel in line with Class Counsel's actual investment in the case, or its "lodestar." Several considerations support that conclusion.

The total value of the actual time spent by Class Counsel through August 8, 2014, when the Court granted Summary Judgment, is $638,244.25. *See* Exhibit A to Ross Decl.; Exhibit A to Glor Decl. That actual value of the time spent on the matter was calculated based on the hourly rates of each lawyer and staff member who performed work on the matter. A summary of that time and each time-keeper's rates are attached to the Ross Declaration and the Glor Declaration.

The hourly rates used to calculate the lodestar are also reasonable. In determining a reasonable rate, the established standard is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Ott*, 2016 WL 54678, at *3 (D. Or. January 5, 2016)(*citing Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

---

[3] To be clear, plaintiffs do not seek an *award* of attorney fees and costs from the Court under Fed. R. Civ. Proc. 23(h) ("In a certified class action, the court *may award* reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement.") (emphasis added). Instead, Plaintiffs seek the Court's approval of the settlement resolving the Class (First) Claim. Under the settlement agreement, Providence agrees to pay a negotiated fee to class counsel. The parties' agreement does not require an award from the Court and, as noted, Providence has agreed to pay that portion of the settlement separate from any other relief obtained through the settlement of the claims in this case. Nonetheless, in the event the Court believes that Plaintiffs are required to submit a fee request under Rule 23(h), Plaintiffs request leave to do so.

**Page 18 - UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

2008)). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho, Id*. (*citing Barjon v. Dalton*, 132 F3d 496, 500 (9th Cir. 1997)). The "relevant community" for this case is Portland, Oregon, where this Court sits.

Class Counsel are experienced, highly regarded members of the Bar with extensive expertise in the area of class actions and complex litigation including ERISA claims. See Dkts. 50, 51, 52, 53. Class Counsel set their rates for attorneys and staff members based on a variety of factors, including, among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members. See Ross Decl. ¶¶ 7-15; Glor Decl. ¶¶ 3-5.

Counsels' rates are also within the parameters set forth in the Economic Survey conducted by the Oregon State Bar, despite that the rates reported in that survey are now over four years old. Ross Decl. ¶¶14-15. *See Ott*, 2016 WL 54678, *3; *citing Atlantic Recording Corp. v. Andersen*, 2008 WL 2536834, *14 (D. Or. June 24, 2008) and *Roberts v. Interstate Distrib. Co*., 242 F.Supp.2d 850, 857 (D. Or. 2002); also see U.S. Dist. Court., Dist. of Or., Message from the Court Regarding Fee Petitions, https://www.ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions (last updated March 2, 2017). Counsel's rates are also within the ranges reported in the recently published Morones Survey of Commercial Litigation Fees in Oregon, which shows that the average rate for non-contingent commercial litigation for lawyers in Portland with 30+ years of experience is $517, and the median is $525. Rates for other attorneys working on this matter are similarly in line with the Morones Survey. Ross Decl. ¶¶ 14-15.

**Page 19 - UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

Class Counsel's hourly rates are reasonable and appropriate for calculating the lodestar although for contingent fee cases Class Counsel would normally expect two to three times the hourly rates set for non-contingent cases. Ross Decl. ¶ 13.

Further, the number of hours spent on this matter is also reasonable. Class Counsel devoted over 1,700 hours, including attorney, paralegal, and law clerk time, up through August 8, 2014, in the investigation, litigation, and resolution of the Class (First) Claim. *See* Exh. A to Ross Decl.; Exh. A to Glor Decl.

Class Counsel spent extensive time analyzing factual and legal issues, briefing and arguing motions, reviewing and analyzing documents and data, consulting with experts, preparing for, taking, and defending depositions, attending multiple mediations, and negotiating and finalizing the settlement terms. *Id.* Providence presented significant defenses and was represented by experienced counsel. Class Counsel prosecuted the claims at issue efficiently and effectively, including through the use of collaborative analysis of the various complex issues presented during the litigation by seeking assistance from Megan Glor, whose expertise in ERISA matters was essential to the efficient prosecution of this case. In this regard, Class Counsel worked together to pursue this case, and drew from their collective experience in jointly handling ERISA and class action cases for many years.

Contemporaneous time records were maintained to document Class Counsel's work on this case, and a significant effort was made to prevent and eliminate duplicative work. Knowing it was possible they would never be paid for their work, Class Counsel had no incentive to act in a manner that was anything but economical. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency fee

Page 20 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee.").

Because the amount Providence has agreed to pay in settlement is in line with Class Counsel's lodestar, the resolution of the Attorney Fees and Costs is fair, reasonable, and adequate and the Court should approve the settlement.[4]

    3.    Class Counsel Also Advanced Significant Costs

Class Counsel has also incurred substantial out-of-pocket costs and expenses in prosecuting the litigation.  As set forth in the Ross Declaration, Class Counsel has advanced $95,722.09 in expenses.  Those expenses were necessarily incurred in prosecution of the action.  Ross Decl. ¶ 4.  Those expenses will be reimbursed by Providence as a part of its total payment to Stoll Berne.

---

[4] The Court also may consider that, had the case gone to judgment, Class Counsel would have sought and been entitled to recover a multiplier on their Attorney Fees.  For that reason, the amount Providence has agreed to pay in attorney fees and costs is a considerable discount on the fee potential Class Counsel could have sought had they pursued the case to judgment, particularly given that Plaintiffs had already effectively prevailed on the Class (First) Claim.  *See Lafferty v. Providence Health Plans*, 2011 WL 127489, at *4 (D. Or. Jan. 14, 2011) (in ERISA cases attorney fee awards are calculated using lodestar/multiplier method).  Multipliers are routinely allowed in ERISA cases, often times in excess of 2.0.  *See generally In re Colgate–Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (median lodestar multiplier of 2.1 in sampling of 96 ERISA cases); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (multiplier of 2.16 "falls comfortably within the range of lodestar multipliers").  Indeed, a recent study found that the median multiplier is approximately two. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993—2008*, 7 J. Empirical Legal Stud. 248, 272, Table 14 (2010).  A similar trend is found in Oregon courts for other types of complex civil litigation.  *See Moro v State of Oregon*, 360 Or 467, 484-485 (October 27, 2016) (approving hourly rate of $500 for attorney with experience similar to that of Lead Class Counsel, and approving 1.5 multiplier); *Beck v Metropolitan Property and Casualty Ins. Co.*, 2016 WL 4778411 (D. Or. Sept. 12, 2016) (allowing 2.0 multiplier and finding multipliers of "1 to 4 are commonly found to be appropriate in complex class action cases."); *Aboudi v. T-Mobile*, 2015 WL 4923602, *7 (S.D. Cal. Aug. 18, 2015) (2.24 multiplier); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n6 (finding that, in approximately 83% of the cases surveyed by the court, the multiplier was between 1.0 and 4.0 with a "bare majority ... 54% ... in the 1.5–3.0 range").

Page 21 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

### G.    The Service Awards are Reasonable and Justified.

Class Counsel negotiated for payment of $10,000 to each Lead Class Plaintiff, A.F., and A. P., as a Class Representative Service Award.  Those types of awards compensate and reward named plaintiffs for work done on behalf of the Class and in an attempt to account for financial or reputational risks associated with litigation, and promote the public policy of encouraging individual plaintiffs to undertake the responsibility of representative lawsuits. *See Rodriguez* 563 F.3d at 958-959 (9th Cir. 2009); ("Incentive awards are fairly typical in class action cases."); *Pelletz*, 592 F. Supp. 2d at 1329 ("The trial court has discretion to award incentives to the class representatives.").  Although discretionary, courts regularly approve service awards.  4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008).

In reviewing whether an incentive award is appropriate, the court should take into account "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions… [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Jones v. Agilysys, Inc*., 2014 WL 2090034, *3 (N.D. Cal. May 19, 2014) (quoting *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003)) (ellipses and internal marks in original).  The length and type of litigation is also pertinent.  *See Weeks v. Kelogg Co.*, 2013 WL 6531177, *36 (C.D. Cal. Nov. 23, 2013) ("When litigation has been particularly protracted, an incentive award is especially appropriate.").

The chief concern with service awards is the "danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Staton*, 327 F.3d at 976.  *See In re Online DVD-Rental*, 779 F.3d at 943 (critical inquiry on incentive payments is

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

"'whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation'"; *quoting Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir. 1978)).

The negotiated service awards here are appropriate.  First, the class claims were settled prior to any discussion of the individual Plaintiff's claims and all claims were negotiated at arms-length with an experienced jurist and mediator.  Second, this case was contentiously litigated for over three years.  Lead Class Plaintiffs A.F. and A.P., through their parents, remained involved and determined and represented the class's interests throughout.  Legaard Decl.; Alonso Decl.; Ross Decl. ¶ 16.

For example, A.F.'s and A.P.'s parents expended substantial time and effort to investigate this case and assisted in its prosecution.  Legaard Decl.; Alonso Decl.  Both Ms. Legaard and Ms. Alonso testified in deposition and both families produced extensive documents in response to requests for production.  Both families met regularly with counsel, reviewed pleadings and key filings, and were intimately involved in all aspects of the case including through mediation and settlement of the class claim.  *Id.*  The personal investment by A.F.'s and A.P.'s families in advancing this important case on behalf of the class cannot be overstated. Ross Decl. ¶ 16.

The requested $10,000 awards are reasonable under the circumstances, and in line with awards approved by federal courts in the Pacific Northwest and elsewhere. *See, e.g., Hetherington v Omaha Steaks*, 2016 WL 4374947 (D. Or. Aug. 12, 2016) (awarding $10,000); *Hughes v. Microsoft Corp.,* 2001 WL 34089697, *12–*13 (W.D. Wash. Mar. 26, 2001) (approving awards of $7,500, $25,000, and $40,000); *Razilov v. Nationwide Mut. Ins. Co.*, 2006

**Page 23 - UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

WL 3312024, *3–*4 (D. Or. Nov. 13, 2006) ($10,000 service awards); *Rausch v. Hartford Fin. Servs. Group,* 2007 WL 671334, *3 (D.Or. Feb.26, 2007) ($10,000); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) ($7,500 each to four named plaintiffs).

### H.    Notice to the Class is Not Required.

Federal Rule of Civil Procedure 23(e)(1) provides that the "Court must direct notice [of settlement, voluntary dismissal, or compromise] in a reasonable manner to all class members who would be bound by the proposal."  Here, notice is not required because class members will not be "bound by the proposal" in the way the rule contemplates and because, in injunctive class actions certified under Rule 23(b)(2), notice of class certification is not required and class members do not have the right to opt out.  *See* Fed. R. Civ. Proc. 23(c)(2)(A); *and In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litg.*, 2010 WL 5387793, *3-4 (N.D. Cal. Dec. 22, 2010).

Despite what appears to be mandatory language of Rule 23(e), "if the rights of the other class members could not possibly be prejudiced by a dismissal, notice of the proposed dismissal is unnecessary."  7B Charles Alan Wright, Arthur R. Miller et al., Federal Practice and Procedure §1797.6 (3rd ed. 2017) ("Wright & Miller"); *see also* 2 McLaughlin on Class Actions § 6:20 (13th ed. 2016) ("many courts have adopted a 'functional interpretation' of the Rule that permits courts to approve certain settlements without any notice to class members").[5]

Many courts have compellingly concluded that notice is unnecessary in this type of settlement, focusing on the type of relief sought, whether the absent class members could be prejudiced by the settlement (that is, whether class members would be "bound" in any

---

[5] *Compare* Newberg on Class Actions 8:13 (5th ed.); *and id.* at 8:16.  Curiously, those authorities do not directly address any of the cases described in this section.

Page 24 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

potentially-prejudicial fashion), whether the class has recovered all relief sought through the settlement, and whether the settlement was reached as a result of arms-length negotiations. *See, e.g., Lilly v. Jamba Juice Co.*, 2015 WL1248027 *8-*9 (N.D. Cal. Mar. 3, 2015) (approving preliminary settlement without notice); *J.S. v. Attica Central Schools*, 2012 WL 3062804; *4-*5 (W.D.N.Y. 2012)(granting final approval of settlement without notice); *Jerymn* 2012 WL 2505644 at *12-13 (S.D.N.Y. 2012) (same); *Green v. American Exp. Co.*, 200 F.R.D. 211 (2011) (S.D.N.Y.) (same); *Selby v. Principal Mut. Life Ins. Co.*, 2003 WL 22772330, *3-*5 (S.D.N.Y. 2003) (granting final approval without notice).  As Wright & Miller explain: "Since the purpose of Rule 23(e) is to ensure that any person whose rights would be affected by a dismissal or compromise has the opportunity to contest the proposed action, these decisions effectively find that that opportunity is not necessary given the lack of prejudice to absent class members." Wright & Miller at §1797.6.

That analysis is premised on the fact that the "Rule provides no opportunity for (b)(1) and (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361, 131 S. Ct. 2541, 3558 (2011); and *id.* at 362 ("mandatory notice, and the right to opt out – are missing from (b)(2)").  The decisions apply the same basic analytical approach: class members cannot opt-out, so as long as the injunctive class settlement is fair, there is no need for notice.

In *Jermyn*, the court noted that a key question in determining whether notice is required is whether the "rights of absent class members were compromised in any way."  2012 WL 2505644 *12.  There, as here, the settlement provides only for injunctive relief and specifically preserves claims for monetary damages to class members.  There, as here, "there is no hint of collusion in this settlement, as Class Counsel prosecuted this case to the verge of trial."  2015 WL 2505644 at

Page 25 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

*12-13.  In *Lily*, the court adopted *Jermyn*'s analysis and emphasized that the outcome of a settlement providing injunctive relief (and, specifically, settlements in class cases certified under Rule 23(b)(2)) does not "truly bind class members."  2012 WL 1248027 at *3.  That conclusion is supported by the flexibility the Rule provides courts in providing notice because a "Rule 23(b)(2) class is considered 'mandatory.'"  *Id.*  Where, as here, the class is mandatory because it seeks injunctive relief only, a settlement that provides for the very injunctive relief sought in the underlying claim does not "truly bind class members" such that notice is necessary.

Collectively, those courts which have found that notice is not required in circumstances similar to those presented here have applied a "functional approach" to Rule 23.  In *Attica Cent. Schools*, the court concluded that "when Rule 23 would not serve its intended purpose of ensuring that the settlement is fair, but would, in fact, jeopardize or unnecessarily prolong the settlement, a court may forego its requirements."  2012 WL 3062804 at *2 (quoting H. Newberg, Class Actions §2620 (1977) ("Rather than insist on a narrow, strict interpretation of Rule 23(e), the more enlightened approach adopted by courts avoids judicial time expenditure and relieves the parties of the expense of notice when it is appropriate.")).

The *Attica Cent. Schools* court outlined several scenarios under which that "functional approach" is appropriate.  Those scenarios include: "(1) when the terms of the settlement provide near complete relief to the plaintiffs; (2) when the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class; (3) when there is no evidence of any collusion between the parties; and (4) when the cost of notice would risk eviscerating the settlement agreement."  2012 WL 3062804 at *3. The court also noted that while the amount of any payment for attorney fees is relevant, where the amount of fees is "manifestly fair and reasonable," the risk of collusion is greatly diminished. *Id.*

**Page 26 - UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

The court similarly considered many of the same factors described above in analyzing whether the settlement was the product of collusion, such as "the state of the proceedings and the amount of discovery completed, the terms of the settlement, the costs and risks of continued litigation, and the likelihood of recovery." The "most significant" consideration, the court concluded, is "the strength of plaintiffs' case balanced against the settlement offer." *Id.; see also Selby v. Principal Mut. Life Ins. Co.*, 2003 WL 22772330, *4 (quoting 3 A. Conte & H. Newberg, Newberg on Class Actions §8:18, ¶8 (4th ed. 2003) ("each case must be examined on its own circumstances to determine whether dismissal with court approval but without notice may violate the purpose of Rule 23(e). If the court determines that dismissal of the class action will not benefit the individual representative to the detriment of the class or prejudice the class by effectively foreclosing its members from commencing a similar action, the court may dispense with notice."); *Doe by Doe v. Perales*, 782 F. Supp. 201, 206 (W.D.N.Y. 1991)(no notice required where settlement achieves full injunctive relief sought and no evidence of collusion); *Green*, 200 F.R.D. at 212-213 (applying functional approach)).

Here, for all of those reasons, the Court should approve the settlement without notice. First, as noted, the settlement provides full relief to the class because Providence has agreed to no longer apply the Developmental Disability Exclusion to deny class members' claims for ABA therapy. Second, the Class (First) Claim seeks only injunctive relief, and the settlement expressly preserves class members' claims for monetary damages, and, therefore, "there is no potential for the named plaintiffs to benefit at the expense of the rest of the class." Third, there is no evidence of collusion among the parties. To the contrary, the parties litigated the case extensively, and negotiated in good faith with the assistance of a respected mediator and jurist. Fourth, while the costs of notice may not "eviscerate" the settlement agreement, those costs will

Page 27 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

be unjustifiably high given that class members have no right to opt out—and would have no

reason to do so given that the settlement favorably provides for all of the relief sought.  Notice

would needlessly delay completion of the settlement at great cost, and with no class member

having any right to opt out of the settlement.  And, fifth, as described above, the amount

Providence agreed to pay in attorney fees and costs is "manifestly fair and reasonable" and does

not reduce or detract from the value of the settlement achieved for class members.[6]

     For all of the reasons noted, the Court should approve the settlement without notice.

## IV.    CONCLUSION.

     This long-standing litigation has reached a reasonable, fair, and just conclusion.  The

parties advanced their positions through difficult litigation, over nearly four years, and were

prepared to begin trial this spring.  With the assistance of a professional mediator, the parties

were able to reach an agreement that allows the important accomplishments achieved by

plaintiffs to be preserved, and allows the parties to resolve the dispute and move on.  For all of

the reasons outlined above, the Court should approve the settlement and enter a dismissal of the

lawsuit as follows:

    **A.**    <u>**Dismissal of First Claim**</u>:

        1.    As to Class Members, excluding the named Plaintiffs, with prejudice as to injunctive relief only and without prejudice as to all other forms of relief;

        2.    As to the named Plaintiffs, with prejudice in its entirety as to all forms of relief.

    **B.**    <u>**Dismissal of Second Claim**</u>: with prejudice in its entirety as to the named Plaintiffs;

---

[6] The Court should also consider that counsel for both parties agree that no notice should issue, as indicated by the above-cited passage of the settlement agreement.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**C.**    **Dismissal of Third Claim:** with prejudice in its entirety as to the named Plaintiffs.

DATED this 13th day of March, 2017.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By:   /s/Keith S. Dubanevich
        **Keith S. Dubanevich**, OSB No. 975200
        **Joshua L. Ross,** OSB No. 034387

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:     (503) 227-6840
Email:        kdubanevich@stollberne.com
           jross@stollberne.com
           ngartner@stollberne.com
-and-

**Megan E. Glor**, OSB No. 930178
MEGAN E. GLOR ATTORNEYS AT LAW
621 SW Morrison Street, Suite 900
Portland, OR 97205
Telephone:    (503) 223-7400
Facsimile:     (503) 227-2530
Email:        megan@meganglor.com

**Attorneys for Plaintiffs**

00627090

Page 29 - **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM**